**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Joel D. Smith (State Bar No. 244902)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: ltfisher@bursor.com
       jsmith@bursor.com

**BURSOR & FISHER, P.A.**
Sarah N. Westcot (State Bar No. 264916)
701 Brickell Avenue, Suite 1420
Miami, FL 33131-2800
Telephone: (305) 330-5512
Facsimile:  (305) 676-9006
E-Mail: swestcot@bursor.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STUDENT A, STUDENT B, and STUDENT C, individually and on behalf of all others similarly situated,<br><br>               Plaintiffs,<br><br>    v.<br><br>SANTA CLARA UNIVERSITY,<br><br>               Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs—referred to herein as Student A, Student B, and Student C—bring this action individually and on behalf of all others similarly situated against Defendant Santa Clara University (hereinafter, "SCU" or "Defendant").  Plaintiffs make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to the allegations specifically pertaining to themselves, which are based on personal knowledge.

<u>**NATURE OF THE ACTION**</u>

1.      This is a class action lawsuit on behalf of all people who paid tuition and fees for the Spring 2020 Semester at SCU, and who, because of Defendant's response to the Novel Coronavirus Disease 2019 ("COVID-19") pandemic, lost the benefit of the education for which they paid, and/or the services for which their fees were paid, without having their tuition and fees refunded to them.

2.      SCU is a private Jesuit university that offers over more than 50 majors, minors, and special programs for law, medicine, and teaching.  Its graduate programs span business, engineering, education, counseling psychology, law, theology, and pastoral ministries.

3.      SCU operates on an academic quarter system, except for the law school, which operates on a semester system.  For purposes of this Complaint, "semester" also encompasses "quarter" and means any academic period for which Plaintiffs and putative class members paid fees but experienced a loss of service because of COVID-19.

4.      Beginning March 10, 2020, SCU suspended in-person classes and moved "to a virtual format" (i.e., online classes).  On March 16, 2020, SCU announced that classes and exams would continue to be held online until the end of the spring quarter (or in the case of law students, the spring semester).  Shortly afterwards, SCU closed all residence halls, closed campus facilities, and cancelled all on-campus events.

5.      As a result of the closure of SCU's facilities, SCU has not delivered the educational services, facilities, access and/or opportunities that Plaintiffs and putative class members paid for. The online learning options being offered to SCU students are subpar in practically every aspect,

from the lack of facilities, materials, and access to faculty.  Students have been deprived of the opportunity for collaborative learning and in-person dialogue, feedback, and critique.

6.      SCU's decision to transition to online classes and to instruct students to leave campus were responsible decisions to make, but it is unfair and unlawful for SCU to retain fees and costs and to pass the losses on to the students and their families.  Other higher education institutions across the United States that switched to e-learning have recognized the upheaval and financial harm to students and/or their families from these decisions and have provided appropriate refunds.  That is the right thing to do.  SCU, unfortunately, has taken the opposite approach by failing to provide any tuition refunds, despite requests from students and families.

7.      Plaintiffs and putative class members are entitled to a refund of tuition and fees for in-person educational services, facilities, access and/or opportunities that SCU has not provided.  They seek a pro rata refund for the Spring 2020 semester, and for all future semesters impacted by the COVID-19 pandemic.  Even if SCU did not have a choice in cancelling in-person classes, it certainly has the choice to return funds for services it is not providing.  Because SCU has refused to do the right thing, Plaintiffs here have stepped-up and filed a class action on behalf of themselves and their fellow students.

**PARTIES**

8.      Plaintiff Student A is a California citizen, resides in San Jose, California, and is a full-time law student at SCU.  Plaintiff is concerned that involvement in this lawsuit could result in retaliation, and therefore brings this action under the pseudonym "Student A."  Plaintiff has paid substantial tuition for the Spring 2020 semester out of pocket.  Plaintiff did not choose to attend another institution of higher learning, or seek an online degree, but instead chose to attend SCU's institution and enroll on an in-person basis.

9.      Plaintiff Student B is a California citizen, resides in San Jose, California, and is a full-time law student at SCU.  Plaintiff is concerned that involvement in this lawsuit could result in retaliation, and therefore brings this action under the pseudonym "Student B."  Plaintiff has paid substantial tuition for the Spring 2020 semester by utilizing student loan financing.  Plaintiff did not choose to attend another institution of higher learning, or seek an online degree, but instead

chose to attend SCU's institution and enroll on an in-person basis.

10.     Plaintiff Student C is a California citizen, resides in Santa Clara, California, and is a full-time law student at SCU.  Plaintiff is concerned that involvement in this lawsuit could result in retaliation, and therefore brings this action under the pseudonym "Student C."  Plaintiff has paid substantial tuition for the Spring 2020 semester either out of pocket or by utilizing student loan financing.  Plaintiff did not choose to attend another institution of higher learning, or seek an online degree, but instead chose to attend SCU's institution and enroll on an in-person basis.

11.     Defendant Santa Clara University is a private university with its principal place of business located at 500 El Camino Real, Santa Clara, CA 95053.

## JURISDICTION AND VENUE

12.     The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because at least one member of the Class, as defined below, is a citizen of a different state than Defendant, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interest and costs.

13.     This Court has personal jurisdiction over Defendant because Defendant maintains its principal place of business in this District.

14.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because many of the acts and transactions giving rise to this action occurred in this District, and because Defendant is a resident of this District.

## FACTUAL ALLEGATIONS

**I.      SCU Has Long Touted On-Campus Learning, Facilities, Events, and Social Opportunities as Key Benefits of Attendance At SCU.**

15.     There are hundreds, if not thousands, of institutions of higher learning in this country.

16.     Some institutions of higher learning provide curriculum and instruction that is offered on a remote basis through online programming which do not provide for physical attendance by the students.

17.    SCU's institution offers an in-person, hands-on curriculum.

18.    SCU's marketing heavily touts SCU's on-campus experience as a benefit and key component of enrollment.  For example, on its website, SCU touts its "connected & engaged faculty," while depicting students and faculty working closely together on campus.

19.    SCU tells prospective students that its "libraries are much more than book repositories; they're inspiring spaces for research, collaboration, and reflection."  In this regard, SCU describes its University Library as a "inspiring and groundbreaking place of research and learning," and touts the many facilities and services available at other libraries.  All of that was taken away when SCU closed its campus in March 2020.

20.    An entire portion of SCU's website is titled "Campus Life," and promises that "Santa Clara offers hundreds of opportunities to pursue your interests and encounter new perspectives."  SCU emphasizes the opportunity to connect and engage with people in-person, to "have a full social life and supportive network around you," and the ability to "make friends outside of the classroom."

21.    SCU's many clubs and organizations are pitched as key features of SCU's "campus life":

# Clubs & Organizations

Home › Campus Life › Clubs & Organizations

Almost every student at Santa Clara is involved in an organization on campus. Many are in two or three, or even more.

We have poet-programmers, scuba-diving mathematicians, aspiring ministers with great 3-point shots, and urban farmers with bright futures in politics.

Our student organizations give you the freedom to explore anything you're interested in, and to create a college experience that's uniquely yours:

- If student-run media is your thing—writing, reporting, reviewing, publishing—there are lots of groups you might check out, like our campus radio station, the student newspaper, and our annual literary magazine.
- If you like to exercise your body alongside your mind, you can find a recreational club or class that moves at your pace, whether you're a varsity-level athlete or just a beginner.
- Our Campus Ministry programs offer many opportunities for you to deepen your faith and connect with SCU's spiritual community.
- And if you're in a hurry to start making the world a better place, Santa Clara Community Action Program and our Thriving Neighbor's Initiative give you the chance to use your talents for good in the local community.

There are hundreds of ways to get involved at SCU, and your first stop should be the Center for Student Involvement, where you can find a group that's just right for you.

22.     SCU is a Jesuit college, and emphasizes the many on-campus opportunities for students interested in religious or spiritual activities to connect with each other:

> Spiritual life on campus is something we all build together. When we bring our diverse experiences and beliefs into one place, we grow and learn together.
> Santa Clara is a Jesuit, Catholic university that welcomes and celebrates the religious diversity of its students. About half of our undergraduate students are Catholic, with the other half being Protestant, Hindu, Muslim, Jewish, agnostic, students with no religious preference, and more. No matter your religious or spiritual tradition, there's something for you at Santa Clara.
>
> **Getting Involved**
> Santa Clara students explore their questions and beliefs, as well as build community through popular religious studies courses, student religious clubs, programming in the residence halls, immersion programs, and a variety of Campus Ministry programs. Leadership in many of these activities provides students a space to develop professional skills and prepare for life beyond SCU.
>
> **Sacred Spaces**
> There are many special places on campus where you can pray, meditate, or quietly reflect on your day, alone or with others. Enjoy a quiet and tranquil moment in any of our various sacred spaces, including the Meditation Room, the historic Mission Church, the Multifaith Sanctuary, or the tucked away St. Clare Garden.

23.     In a similar vein, SCU emphasizes that part of being a SCU student is having access to music concerts and other performing arts events, dining options, sporting events, medical facilities, and top-notch recreational facilities that allow students to participate in "your sport of choice." Beginning in early March 2020, none of these features were available anymore.

## II.     SCU Refuses To Provide Reimbursements for Tuition and Other Costs After Moving To Inferior On-Line Learning, Cancelling Events, And Shutting Down Its Facilities

24.     In March 2020, SCU closed its facilities and cancelled all in-person classes and on-campus events due to the COVID-19 pandemic. SCU required all courses to immediately transfer to an on-line format.

25.     The sudden change to an online format, the cancellation of on-campus events, and the closure of the campus were not what SCU promised its students when it encouraged them to enroll. These changes also were not what students bargained for when they chose to accept SCU's offers of enrolment.

26.     From an academic perspective, SCU has acknowledged there is a significant difference between in-person education and online courses. Prior to the COVID-19 outbreak, SCU cautioned students who were considering voluntarily taking online courses to answer 20 questions

1    to "decide whether or not to enroll in an online course," and "whether your learning style is a good

2    fit for online."[1]

3              27.     The pitfalls of online learning were exacerbated by the COVID-19 outbreak.

4    Through no fault of their own, SCU's faculty who taught in-person courses had not prepared their

5    courses for an online format.  And while most faculty did their best under difficult circumstances,

6    the sudden and unexpected switch to an online format resulted in classes that were inferior to

7    classes that are regularly taught online.

8              28.     The transition to online learning has significantly reduced professor-student

9    interaction and discussion-based instruction.  Moreover, due to diminished capacity, some courses

10   have been cut short by up to three weeks.  Experiential courses, which are instrumental in students'

11   ability to acquire tangible skills, were negatively impacted by the switch to an online format.

12             29.     Student access to SCU facilities, campus offices, and employment used to finance

13   their education has reduced significantly.  Access to facilities such as Charney Hall, various

14   libraries, lockers and printers was cut off, and remains cut off today.

15             30.     Moreover, for many students, the COVID-19 outbreak has caused significant

16   financial hardship, making a partial tuition refund all the more important.  Many students have

17   been laid off from work or are unable to find summer employment, which is often used to finance

18   their education.  Some students are no longer able to support themselves and have been forced to

19   file for unemployment assistance.  Those who rely on family support are facing wider concerns

20   over their ability to afford basic necessities, such as food and housing.

21             31.     Students asked SCU to refund portions of their tuition in light of the transition to

22   online learning, noting that the closure of facilities and transition to online classes must have

23   reduced the cost of operations to the school.  They also pointed out that providing students with a

24   partial tuition credit or refund would enable students to redirect money to future courses while

25   minimizing additional student loan debt during the financial difficulties associated with the

26   pandemic.

27   _____

28   [1] https://www.scu.edu/summer/schedule-of-classes/online-classes/

32.     On May 7, 2020, SCU sent a letter to students signed by Anna M Han, the Interim Dean of SCU's law school; Michael Flynn, the Associate Dean for Academic Affairs; Sandra Magliozzi, the Associate Dean for Experiential and Competency-based Learning; Susan Erwin, the Senior Assistant Dean for Student Services; and Ben Martin, the Senior Assistant Dean for Finance & Administration.  In that letter, SCU denied law students' requests for a partial refund of tuition, noting "we do appreciate all of the hardships that you have listed, including loss of employment, housing issues, and some loss of University Services."  But—as SCU administrators explained— SCU is "very much a tuition supported school," and thus no reimbursements would be provided despite the admitted hardship to students and loss of services.

33.     Notably, SCU did not deny in its May 7, 2020, letter that one of the consequences of the pandemic and ensuing campus closure was a reduction in overhead costs—a point that students had emphasized when requesting a partial tuition refund.  Nor did SCU deny that the students' educational experiences were far from those they had bargained for.

34.     To date, no students at SCU—whether at the law school or elsewhere—have been given any tuition refund for the admitted loss of services resulting from the COVID-19 pandemic.

35.     All students also have not received reimbursements for various costs, such as parking fees.

36.     Furthermore, as of the date of this complaint, SCU has advised that its policy in Fall 2020 will be to allow only first-year law students on campus.  Second- and third-year law students must stay at home, even though SCU requires them to pay the same tuition.

## CLASS ALLEGATIONS

37.     Plaintiffs seeks to represent a class defined as all people who paid SCU Spring 2020 Semester tuition and/or fees for in-person educational services that SCU failed to provide, and whose tuition and fees have not been refunded (the "Class").  Plaintiffs also seek to represent a subclass of SCU law students who paid SCU Spring 2020 Semester tuition and/or fees for in-person educational services that SCU failed to provide, and whose tuition and fees have not been refunded (the "Law Student Subclass").

38.     Specifically excluded from the Class are Defendant, Defendant's officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint ventures, or entities controlled by Defendant, and their heirs, successors, assigns, or other persons or entities related to or affiliated with Defendant and/or Defendant's officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

39.     Subject to additional information obtained through further investigation and discovery, the above-described Class and Law Student Subclass may be modified or narrowed as appropriate, including through the use of additional subclasses.

40.     **Numerosity.**  The members of the Class and Law Student Subclass are so numerous that individual joinder is impracticable, and in any event, the Class and Law Student Subclass include more than forty people.

41.     **Existence and predominance of common questions of law and fact.**  Common questions of law and fact exist as to all members of the Class and Law Student Subclass and predominate over any questions affecting only individual Class members.  These common legal and factual questions include, but are not limited to, the following:

(a)     whether Defendant accepted money from Class and Law Student Subclass members in exchange for the promise to provide services;

(b)     whether Defendant has provided the services for which Class and Law Student Subclass members contracted;

(c)     whether Class and Law Student Subclass members are entitled to a refund for that portion of the tuition and fees that was contracted for services that Defendant did not provide;

(d)     whether Defendant has unlawfully converted money from Plaintiffs, the Class and Law Student Subclass; and

(d)     whether Defendant is liable to Plaintiffs, the Class, and Law Student Subclass for unjust enrichment.

42.    **Typicality.**  Plaintiffs' claims are typical of the claims of the other members of the Class in that, among other things, all Class and Law Student Subclass members were similarly situated and were comparably injured through Defendant's wrongful conduct as set forth herein. Further, there are no defenses available to Defendant that are unique to Plaintiffs.

43.    **Adequacy of Representation.**  Plaintiffs will fairly and adequately protect the interests of the Class and Law Student Subclass.  Plaintiffs have retained counsel that is highly experienced in complex consumer class action litigation, and Plaintiffs intend to vigorously prosecute this action on behalf of the Class and Law Student Subclass.  Plaintiffs have no interests that are antagonistic to those of the Class or Law Student Subclass.

44.    **Superiority.**  A class action is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual Class and Law Student Subclass members are relatively small compared to the burden and expense of individual litigation of their claims against Defendant.  It would, thus, be virtually impossible for the Class or Law Student Subclass, to obtain effective redress for the wrongs committed against them on an individual basis.  Furthermore, even if Class or Law Student Subclass members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

45.    In the alternative, the Class and Law Student Subclass may also be certified because:

(a)    the prosecution of separate actions by individual Class and Law Student Subclass members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the Defendant;

(b)   the prosecution of separate actions by individual Class and Law Student Subclass members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

(c)   Defendant has acted or refused to act on grounds generally applicable to the Class and Law Student Subclass as a whole, thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class and Law Student Subclass as a whole.

<u>COUNT I</u>
**Breach Of Contract**

46.   Plaintiffs hereby incorporate by reference all allegations herein.

47.   Plaintiffs bring this claim individually and on behalf of the members of the Class and Law Student Subclass against Defendant.

48.   An implied-in-fact contract is created by the students' conduct when they accept Defendant's offer of enrollment.  Since a formal contract with all material terms is not prepared between the student and the institution of higher learning, the general nature and terms of the agreement are implied, with specific terms to be found in other publications promulgated by Defendant.  The implied contractual terms at issue here stand on equal footing with express terms.

49.   As part of the contract, and in exchange for the aforementioned consideration, Defendant promised to provide certain services, all as set forth above.  Plaintiffs, Class, and Law Student Subclass members fulfilled their end of the bargain when they paid monies due for Spring 2020 tuition and other fees.  Tuition and fees for Spring 2020 was intended to cover in-person educational services.  In exchange for monies paid, Class and Law Student Subclass members were entitled to in-person educational services through the end of the Spring Semester.

50.   Defendant has failed to provide the contracted for services and has otherwise not performed under the contract as set forth above.  Defendant has retained monies paid by Plaintiffs

and class members for their Spring 2020 tuition and fees, without providing them the benefit of their bargain.

51.     Plaintiffs and class members have suffered damage as a direct and proximate result of Defendant's breach, including but not limited to being deprived of the education, experience, and services to which they were promised and for which they have already paid.

52.     As a direct and proximate result of Defendant's breach, Plaintiffs and class members are entitled to damages, to be decided by the trier of fact in this action, to include but not be limited to reimbursement of certain tuition, fees, and other expenses that were collected by Defendant for services that Defendant failed to deliver.  Defendant should return the pro-rated portion of any Spring 2020 tuition and fees for education services not provided from the time that SCU discontinued in-person classes and shut down its facilities, as well as for later semesters.

53.     Defendant's performance under the contract is not excused due to COVID-19. Indeed, Defendant should have refunded the pro-rated portion of any education services not provided.  Even if performance was excused or impossible, Defendant would nevertheless be required to return the funds received for services it will not provide.

## COUNT II
### Unfair Business Practices in Violation of Business and Professions Code §§ 17200 et seq.

54.     Plaintiffs hereby incorporate by reference all allegations contained herein.

55.     Plaintiffs bring this claim individually and on behalf of the members of the Class and Law Student Subclass against Defendant.

56.     The conduct of Defendant, as herein alleged, constitutes an unfair business practice within the meaning of Bus. & Prof. Code §§ 17200, et seq. ("UCL")

57.     Defendant violated the "unfair" prong of the UCL by charging students full tuition and fees without providing the on-campus services and facilities Defendant was required to provide.  The utility of refusing tuition reimbursements is significantly outweighed by the gravity of the harm that policy imposes on students.  By refusing to reimburse students, Defendant has been unjustly enriched.  Defendant's refusal to provide partial tuition reimbursement also violates

the "unfair" prong of the UCL because it is oppressive, unscrupulous or substantially injurious to students.

58.     The first, third and fourth causes of action alleged in this complaint also serve as predicate violations under the "unlawful" prong of the UCL.

59.     Plaintiffs do not allege a cause of action under the "fraud" prong of the UCL, though they reserve their right to do so in the future.

60.     Plaintiffs and class members have suffered an injury in fact resulting in the loss of money or property as a result, inter alia, of paying full tuition for SCU enrollment, and any related fees, without receiving the benefits of in-class learning, campus facilities, and on-campus events.

61.     Plaintiffs seek all available relief under the UCL.

## COUNT III
### Conversion

62.     Plaintiffs hereby incorporate by reference all allegations contained herein.

63.     Plaintiffs bring this claim individually and on behalf of the members of the Class and Law Student Subclass against Defendant.

64.     Plaintiffs and members of the Class have an ownership right to the in-person educational services they were supposed to be provided in exchange for their Spring Quarter and Semester 2020 tuition and fee payments to Defendant.

65.     Defendant intentionally interfered with the rights of Plaintiffs and the Class when it moved all classes to an online format and discontinued in-person educational services for which tuition and fees were intended to pay.

66.     Plaintiffs and members of the Class demand the return of the pro-rated portion of any Spring Quarter and Semester 2020 tuition and fees (or at minimum a portion thereof) for education services not provided since SCU shut down.

67.     Defendant's retention of the fees paid by Plaintiffs and members of the Class without providing the educational services for which they paid, deprived Plaintiffs and Class members of the benefits for which the tuition and fees paid.

68.     This interference with the services for which Plaintiffs and members of the Class paid damaged Plaintiffs and Class members in that they paid tuition and fees for services that will not be provided.

**COUNT IV**
**Unjust Enrichment**

69.     Plaintiffs hereby incorporate by reference all allegations contained herein.

70.     Plaintiffs bring this claim individually and on behalf of the members of the Class and Law Student Subclass against Defendant.

71.     To the extent required by law, this claim is alleged in the alternative pursuant to Federal Rule of Civil Procedure 8.

72.     Plaintiffs and members of the Class and Law Student Subclass conferred a benefit on Defendant in the form of monies paid for Spring 2020 tuition and other fees in exchange for certain service and promises, including in-person educational services and on campus events and facilities.  In exchange for tuition monies paid, Class members were entitled to in-person educational services, on-campus events, and school facilities through the end of the Spring Semester.

73.     Defendant voluntarily accepted and retained this benefit by accepting payment.

74.     Defendant has retained this benefit, even though Defendant has failed to provide the education, experience, and services for which the tuition and fees were collected, making Defendant's retention unjust under the circumstances.

75.     It would be unjust and inequitable for Defendant to retain the benefit, and Defendant should be required to disgorge this unjust enrichment.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

A.     For an order certifying the Class and the Law Student Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as the representatives for the Class and Law Student Subclass and Plaintiffs' attorneys as Class Counsel;

B.   For an order declaring the Defendant's conduct violates the statutes and common law claims referenced herein;

C.   For an order finding in favor of Plaintiffs, the Class, and the Law Student Subclass on all counts asserted herein;

D.   For compensatory damages and/or restitution in amounts to be determined by the Court and/or jury;

E.   For prejudgment interest on all amounts awarded;

F.   For injunctive relief as pleaded or as the Court may deem proper; and

G.   For an order awarding Plaintiffs and class members their reasonable attorneys' fees and expenses and costs of suit.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable of right.

Dated:  June 17, 2020                    **BURSOR & FISHER, P.A**.

By:   */s/ Joel D. Smith*
Joel D. Smith

L. Timothy Fisher (State Bar No. 191626)
Joel D. Smith (State Bar No. 244902)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: ltfisher@bursor.com
         jsmith@bursor.com

**BURSOR & FISHER, P.A.**
Sarah N. Westcot (State Bar No. 264916)
701 Brickell Avenue, Suite 1420
Miami, FL 33131-2800
Telephone: (305) 330-5512
Facsimile:  (305) 676-9006
E-Mail: swestcot@bursor.com

*Attorneys for Plaintiffs*