**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Joel D. Smith (State Bar No. 244902)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: ltfisher@bursor.com
         jsmith@bursor.com

**BURSOR & FISHER, P.A.**
Sarah N. Westcot (State Bar No. 264916)
701 Brickell Ave., Suite 1420
Miami, FL 33131
Telephone: (305) 330-5512
Facsimile:  (305) 676-9006
E-Mail: swestcot@bursor.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LILAS ABUELHAWA, KELLY WYNNE, and LEONARDO KIM, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>  v.<br><br>SANTA CLARA UNIVERSITY,<br><br>        Defendant. | Case No. 5:20-cv-04045-LHK<br><br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT** |

# TABLE OF CONTENTS

PAGE(S)

I.     INTRODUCTION ............................................................................................1

II.    ARGUMENT ..................................................................................................2

       A.     Plaintiffs Do Not Allege Educational Malpractice .................................2

       B.     Plaintiffs State A Claim For Breach Of Contract ...................................5

              1.     Plaintiffs Have Sufficiently Pled A Specific Enforceable
                     Promise ........................................................................................5

              2.     The "Financial Responsibility Agreement" Is Not A Contract ....8

              3.     The "Refund Policy" Does Not Apply ......................................10

       C.     Plaintiffs State Claims Under the UCL's Unfair Prong .........................11

       D.     Plaintiffs State Claims for Unjust Enrichment .....................................13

III.   CONCLUSION .............................................................................................15

1

**TABLE OF AUTHORITIES**

**PAGE(S)**

2

**CASES**

3

*ASP Properties Group v. Fard, Inc.,*
 133 Cal. App. 4th 1257 (2005) ........................................................................................ 8

4

5

*Astiana v. Hain Celestial Grp., Inc.,*
 783 F.3d 753 (9th Cir. 2015) ..................................................................................... 13, 14

6

7

*Banks v. Dominican College,*
 35 Cal. App. 4th 1545 (1995) ...................................................................................... 5, 9

8

9

*Brodsky v. Apple Inc.,*
 445 F. Supp. 3d 110 (N.D. Cal. 2020) ........................................................................... 14

10

*Brodsky v. Apple Inc.,*
 2019 WL 4141936 (N.D. Cal. Aug. 30, 2019) ............................................................... 14

11

12

*Bruton v. Gerber Prods. Co.,*
 703 F. App'x 468 (9th Cir. 2017) ................................................................................... 13

13

14

*Bruton v. Gerber Prods. Co.,*
 2018 WL 4181903 (N.D. Cal. Aug. 31, 2018) .......................................................... 13, 14

15

16

*Bustamante v. Intuit, Inc.,*
 141 Cal. App. 4th 199, 45 Cal. Rptr. 3d 692 (2006)......................................................... 9

17

*Chong v. Northeastern University,*
 2020 WL 5847626 (D. Mass. Oct. 1, 2020) ................................................................ 9, 10

18

19

*Cross v. Univ. of Toledo,*
 2020 WL 4726814 (Ohio Ct. Cl. July 8, 2020) ........................................................... 1, 3

20

21

*Dang v. Samsung Elecs. Co. Ltd.,*
 2018 WL 6308738 (N.D. Cal. Dec. 3, 2018)................................................................... 13

22

23

*Deerpoint Grp., Inc. v. Agrigenix, LLC,*
 345 F. Supp. 3d 1207 (E.D. Cal. 2018) .......................................................................... 12

24

*Drum v. San Fernando Valley Bar Ass'n,*
 182 Cal. App. 4th 247 (2010) ......................................................................................... 12

25

26

*Gasser v. Kiss My Face, LLC,*
 2017 WL 4773426 (N.D. Cal. Oct. 23, 2017) ................................................................ 14

27

28

*Gibson v. Lynn Univ., Inc.*,
   2020 WL 7024463 (S.D. Fla. Nov. 29, 2020) ........................................ 1, 3, 11

*Harmston v. City & Cnty. of San Francisco*,
   627 F.3d 1273 (9th Cir. 2010) ........................................ 14

*Hartford Cas. Ins. Co. v. J.R. Mktg., LLC*,
   353 P.3d 319 (Cal. 2015) ........................................ 13, 14

*In re Bang Energy Drink Marketing Litig.*,
   2020 WL 4458916 (N.D. Cal. Feb. 6, 2020) ........................................ 14

*In re Carrier IQ, Inc.*,
   78 F. Supp. 3d 1051 (N.D. Cal. 2015) ........................................ 12

*Inamed Corp. v. Kuzmak*,
   275 F. Supp. 2d 1100 (C.D. Cal. 2002) ........................................ 9

*JLT Aerospace (N. Am.), Inc. v. Rockseth-Shipman*,
   2008 WL 11396804 (N.D. Cal. Mar. 10, 2008) ........................................ 8

*Kashmiri v. Regents of Univ. of California*,
   156 Cal. App. 4th 809 (2007) ........................................ 2, 5, 6

*Kishinevsky v. Bd. of Tr. of Metro. State Univ. of Denver*,
   2020 WL 7087313 (Colo. Dist. Ct. Nov. 23, 2020) ........................................ 1, 3

*Korea Supply Co. v. Lockheed Martin Corp.*,
   29 Cal. 4th 1134 (2003) ........................................ 11

*Makaeff v. Trump Univ., LLC*,
   2010 WL 3988684 (S.D. Cal. Oct. 12, 2010) ........................................ 3, 5

*Mattei v. Hopper*,
   51 Cal.2d 119 (1958) ........................................ 8

*McCalden v. Cal. Library Ass'n*,
   955 F.2d 1214 (9th Cir. 1990) ........................................ 14

*McDermott v. The Ohio State Univ.*,
   2020 WL 5239892 (Ohio Ct. Cl. Aug. 24, 2020) ........................................ 1, 3

*Mellowitz v. Ball State Univ.*,
   2020 WL 5524659 (Ind. Super. Ct. Aug. 14, 2020) ........................................ 1

*Nava v. Kobe Steel, Ltd.*,
   2019 WL 5173767 (N.D. Cal. Oct. 8, 2019) ........................................ 14

*Nolte v. Cedars-Sinai Med. Ctr.*,
   236 Cal. App. 4th 1401 (2015) ................................................................................. 13

*Paulsen v. Golden Gate Univ.*,
   25 Cal. 3d 803 (1979) ........................................................................................... 4, 5

*Roney v. Miller*,
   705 F. App'x 670 (9th Cir. 2017) ........................................................................... 15

*Rosado v. Barry Univ. Inc.*,
   2020 WL 6438684 (S.D. Fla. Oct. 30, 2020) ............................................................ 1

*Ross v. Creighton Univ.*,
   957 F.2d 410 (7th Cir. 1992) .................................................................................... 2

*Salerno v. Fla. S. Coll.*,
   2020 WL 5583522 (M.D. Fla. Sept. 16, 2020) ................................................ 1, 3, 4, 7

*Salinas v. Palo Alto Univ.*,
   2017 WL 4237011 (N.D. Cal. Sept. 25 2017) ........................................................... 9

*Saroya v. University of the Pacific*,
   2020 WL 7013598 (N.D. Cal. Nov. 27, 2020) ...................................................Passim

*Sateriale v. R.J. Reynolds Tobacco Co.*,
   697 F.3d 777 (9th Cir. 2012) ................................................................................ 8, 9

*Searle v. Wyndham Int'l., Inc.*,
   102 Cal. App. 4th 1327 (2002) ............................................................................... 13

*Smith v. The Ohio State Univ.*,
   2020 WL 5694224 (Ohio Ct. Cl. Sept. 9, 2020) ................................................ 1, 3, 4

*Soo v. Lorex Corp.*,
   2020 WL 5408117 (N.D. Cal. Sept. 9, 2020) ...................................................... 11, 12

*Steiner v. Thexton*,
   48 Cal. 4th 411 (2010) ............................................................................................. 8

*Synopsys, Inc. v. Ubiquiti Networks, Inc.*,
   2017 WL 3485881 (N.D. Cal. Aug. 15, 2017) ........................................................ 14

*Vincent v. PNC Mortg., Inc.*,
   2014 WL 2766116 (E.D. Cal. June 18, 2014) ......................................................... 12

*Waitt v. Kent State Univ., Court of Claims of Ohio*,
   2020 WL 5894543 (Ohio Ct. Cl. Sept. 28, 2020) .................................................. 1, 3

*Wells v. One2One Learning Found.*,
  39 Cal. 4th 1164 (2006) ................................................................................ 3, 5

*Williams v. Facebook, Inc.*,
  384 F. Supp. 3d 1043 (N.D. Cal. 2018) ........................................................ 14

*Young v. Cree, Inc.*,
  2018 WL 1710181 (N.D. Cal. Apr. 9, 2018) ................................................ 14

*Zahn v. Ohio Univ.*,
  2020 WL 6163919 (Ohio Ct. Cl. Oct. 19, 2020) ........................................ 1, 3

*Zumbrun v. Univ. of S. California*,
  25 Cal. App. 3d 1 (Ct. App. 1972) ........................................................ 3, 5, 6, 7

**STATUTES**

Cal. Bus. & Prof. Code § 17205 ........................................................................ 12

**RULES**

Fed. R. Civ. P. 8 ................................................................................................ 13, 14

1

## I.    Introduction

2        There is no question that Santa Clara University's ("SCU's") decision to close its campus

3   and discontinue classes in March 2020 due to the COVID-19 pandemic was the responsible

4   decision to make.  This case has nothing to do with whether SCU's response to COVID-19 was

5   "inadequate," as SCU contends.  MTD, at 2:13.  Instead, the issue here is much simpler:  SCU

6   charged students for services SCU did not provide.  That has never been the right thing to do, and

7   COVID-19 did not change that.

8        Moreover, from a legal perspective, this case stands on well-trodden ground.  This case is

9   one of many class actions filed in the wake of school closures caused by the COVID-19 pandemic,

10   all making similar allegations and asserting similar claims as those alleged here.  In its motion to

11   dismiss, SCU fails to disclose that the vast majority of courts adjudicating these cases have rejected

12   the same arguments SCU makes here.[1]  Two recent decisions involving the University of the

13   Pacific ("UOP") and the University of San Francisco ("USF") are particularly instructive because

14   they apply California law, and provide a roadmap for deciding SCU's motion to dismiss.  *See*

15   *Saroya v. Univ. of the Pacific*, 2020 WL 7103598 (N.D. Cal. Nov. 27, 2020); *Verlanga v. Univ. of*

16   *San Francisco*, S.F. Superior Ct. Case No. CGC-20-584829, Nov. 12, 2020 Order on Demurrer

17   (Ex. 1 to RJN).  As argued more fully below, these and other authorities support denial of SCU's

18   motion to dismiss the breach of contract claim.  The motion to dismiss the UCL claim under the

19   "unfair" prong and the unjust enrichment claim should be denied too, but if the Court dismisses

20

21

---

22   [1] *E.g.*, *Gibson v. Lynn Univ., Inc.*, 2020 WL 7024463 (S.D. Fla. Nov. 29, 2020); *Kishinevsky v. Bd.*
*of Tr. of Metro. State Univ. of Denver*, 2020 WL 7087313 (Colo. Dist. Ct. Nov. 23, 2020); *Rosado*
23   *v. Barry Univ. Inc.*, 2020 WL 6438684 (S.D. Fla. Oct. 30, 2020); *Waitt v. Kent State Univ.*, Court
of Claims of Ohio, 2020 WL 5894543 (Ohio Ct. Cl. Sept. 28, 2020); *Zahn v. Ohio Univ.*, 2020 WL
24   6163919 (Ohio Ct. Cl. Oct. 19, 2020); *Salerno v. Fla. S. Coll.*, 2020 WL 5583522 (M.D. Fla. Sept.
16, 2020); *Garland v. Western Michigan Univ.*, State of Michigan Court of Claims, Case No. 20-
25   000063-MK, Sept. 15, 2020 Order on Motion for Summary Disposition (Ex. 2 to RJN); *Smith v.*
*The Ohio State Univ.*, 2020 WL 5694224 (Ohio Ct. Cl. Sept. 9, 2020); *McDermott v. The Ohio*
26   *State Univ.*, 2020 WL 5239892 (Ohio Ct. Cl. Aug. 24, 2020); *Mellowitz v. Ball State Univ.*, 2020
WL 5524659 (Ind. Super. Ct. Aug. 14, 2020); *Milanov v. Univ. of Michigan*, State of Michigan
27   Court of Claims, Case No. 20-000056-MK, July 27, 2020 Order on Motion for Summary
Disposition (Ex. 3 to RJN); *Cross v. Univ. of Toledo*, 2020 WL 4726814 (Ohio Ct. Cl. July 8,
28   2020).

---

1   either of those claims, it should do so with leave to amend.  Plaintiffs withdraw their third claim for

2   conversion and claim under the "unlawful" prong of the UCL.

3   **II.     Argument**

4   **A.  Plaintiffs Do Not Allege Educational Malpractice**

5   SCU attempts to repaint nearly all of Plaintiffs' allegations as claims of "educational

6   malpractice."  MTD at 7-9.  But every action by a student against a school is not an educational

7   malpractice claim. Where the breach of contract claim does not "require an inquiry into the

8   nuances of educational process or theories," but instead alleges failure to provide specified

9   services, the action may be properly maintained.  *Kashmiri v. Regents of Univ. of California*, 156

10  Cal. App. 4th 809, 826–27 (2007), as modified (Nov. 28, 2007) (quoting *Ross v. Creighton Univ.*,

11  957 F.2d 410, 417 (7th Cir. 1992).  Indeed, "Courts have not been hesitant to apply contract law

12  when the educational institution makes a specific promise to provide an educational service, such

13  as a failure to offer any classes or a failure to deliver a promised number of hours of instruction."

14  *Id.* at 826 (citing *Ross*, 957 F.2d 410 at 415-17).

15  *Verlanga v. University of San Francisco*, Case No. CGC-20-584829 (Nov. 12, 2020) is

16  instructive.  *See* Ex. 1 to RJN.  There, the court denied the university defendant's demurrer in a

17  substantially similar action alleging breach of contract based on USF's switch to online classes in

18  response to the COVID-19 pandemic.  *Id.*  In doing so, the court rejected USF's argument that the

19  plaintiffs were alleging educational malpractice.  *Id.* at 7.  Relying on *Kashmiri*, the court held that

20  "[t]his action, like *Kashmiri*, 'does not involve what is essentially an educational malpractice claim

21  or a decision that involves disciplinary discretion.  …. 'Ruling on this [fee dispute] would not

22  require an inquiry into the nuances of educational processes and theories, but rather an objective

23  assessment of the University's performance of its promise.'"  *Id.* at 7-8 (quoting *Kashmiri*, 156

24  Cal. App. 4th at 826-27).

25  Judge Davila's decision in *Saroya v. University of the Pacific*, 2020 WL 7013598 (N.D.

26  Cal. Nov. 27, 2020) is also instructive.  In *Saroya*, the court denied the university defendant's

27  motion to dismiss in a substantially similar action alleging breach of contract based on UOP's

28

switch to online classes in response to the COVID-19 pandemic. *Id.* at *5. In doing so, the court rejected UOP's argument that the plaintiff was alleging educational malpractice. *Id.* Instead, the court held that it did not "read Plaintiff's FAC as alleging a failure of the university to provide him with an education of a certain quality." *Id.* at *4. Instead, the court stated that plaintiff's "claim is not that UOP failed to provide students with adequate education, but that it failed to provide certain services as promised." *Id.* (citing *Wells v. One2One Learning Found.*, 39 Cal. 4th 1164, 1212 (2006)) (holding that educational malpractice does "not apply to claims where resolution 'does not require judgments about pedagogical methods or the quality of the school's classes, instructors, curriculum, textbooks, or learning aids,' nor 'require evaluation of individual students' educational progress or achievement, or the reasons for their success or failure.'").

As cited in the Introduction, numerous courts across the country have reached the same conclusion. *See, e.g.*, *Salerno*, 2020 WL 5583522, at *5 ("[T]his case is not about the quality of the [University's] education … . This case is simply about an alleged promise to provide in-person learning that was allegedly breached."); *see also Makaeff v. Trump Univ., LLC*, 2010 WL 3988684, at *3-4 (S.D. Cal. Oct. 12, 2010) (finding that "[plaintiffs'] claim is not that Defendant failed to provide them an adequate education, but that it did not provide an education in real estate investment *at all*."); *Zumbrun v. Univ. of S. California*, 25 Cal. App. 3d 1, 10 (Ct. App. 1972) (claim that university did not deliver promised Sociology 200 course due to a faculty strike was not educational malpractice, but rather valid breach of contract claim).

Just as in *Kashmiri*, *Verlanga*, *Saroya*, *Makaeff*, *Zumbrun*, and the various other COVID-19 tuition refund cases cited herein, Plaintiffs' claims do not allege educational malpractice. *See Salerno*, 2020 WL 5583522, at *8-9; *Milanov*, p. 5-6 (Ex. 3 to RJN).[2] Rather, Plaintiffs allege that they "entered into a contractual agreement where Plaintiffs would provide payment in the form of tuition and fees and Defendant, in exchange, would provide in-person educational services,

---

[2] *See also Gibson*, 2020 WL 7024463 at *4 (rejecting same educational malpractice argument SCU advances here); *Kishinevsky*, 2020 WL 7087313 at *3 (same); *Waitt*, 2020 WL 5894543 at *2 (same); *Zahn*, 2020 WL 6163919 at *2 (same); *Salerno v. Fla. S. Coll.*, 2020 WL 5583522 at *5 (same); *Garland*, at 4-5 (Ex. 2 to RJN) (same); *Smith*, 2020 WL 5694224 at *2 (same); *McDermott*, 2020 WL 5239892 at *2 (same); *Cross*, 2020 WL 4726814 at *2 (same).

experiences, opportunities, and other related services." FAC ¶ 16. Plaintiffs allege that such rights included access to campus buildings (including the buildings where classes were scheduled to meet), participation in on-campus activities, hands-on training and face-to-face instruction, and numerous other services and opportunities, as promised by Defendant. *Id.* ¶¶ 4-5; 18-27; 36-39. It is undisputed that Defendant failed to provide these promised benefits from at least March 10, 2020 through the end of the Spring Semester 2020, and instead provided Plaintiffs with online remote learning devoid of any in-person or on-campus experience. *Id.* ¶¶ 4-6. Indeed, the following allegation makes it abundantly clear that this is <u>not</u> an educational malpractice case:

> Although the move to an online format resulted in inferior learning experience for students (through no fault of the faculty), that is not the basis of Plaintiffs' action. The gravamen of this action is that Plaintiffs paid SCU for in-person classes and the availability of on-campus facilities and experiences, and did not receive what they paid for.

*Id.* ¶ 44. In short, Plaintiffs' allegations do not ask the Court to review the educational decisions made by Defendant. *See Salerno*, 2020 WL 5583522, at *5 ("[Plaintiff] also admits in her response that her claim is not about the College's *decision* to move to online learning. This case is simply about an alleged promise to provide in-person learning that was allegedly breached."); *Smith*, 2020 WL 5694224, at *2 ("The essence of plaintiff's breach of contract claim is that she contracted for in-person classes and received online classes instead. The mere mention of possible consequences to plaintiff's educational or professional future does not render plaintiff's complaint a claim for educational malpractice.").

The cases cited by SCU are distinguishable. SCU relies on *Paulsen v. Golden Gate Univ.*, 25 Cal. 3d 803 (1979), but *Paulsen* involved a dispute over the enforcement of a contract relating to a student's academic disqualification. *Id.* at 811. After the plaintiff in *Paulsen* was academically disqualified, the university allowed him to return to classes on the condition that he would not be eligible for a degree. *Id.* But when the university ultimately refused to issue plaintiff a degree he sued for breach of contract. *Id.* The *Paulsen* court held that the student's contract theory arguments were unpersuasive because "[a]ny contract between the parties would therefore have included that condition, and by its terms would have precluded awarding [the

student] a degree under any circumstances." *Id.*  Defendant also relies on *Banks v. Dominican College*, 35 Cal. App. 4th 1545 (1995), but *Banks* similarly involved a dispute over an educational institution's decision not to award a degree.  In *Banks*, the plaintiff "was not allowed to complete the graduate teaching program … because her clinical performance as a student teacher was highly unsatisfactory, in the professional opinion of numerous teachers and faculty members."  *Id.* at 1548-49.  Thus, *Banks* involved a challenge to "the academic decision of a private university regarding a student's qualifications for a degree" upon which California courts "exercise a highly deferential and limited standard of review."  *Id.* at 1551.  No such challenge is brought in this case.

In sum, the deference granted to educational institutions in certain matters is not as broad or all-encompassing as SCU contends.  Instead, such deference is granted only in cases involving highly specialized academic judgments.  SCU's opposition seems rooted in its incorrect understanding of Plaintiffs' claims.  Plaintiffs are not suing because they claim they received a lower quality education, although by all accounts, they did.  Instead, the FAC alleges that when students paid thousands of dollars to enroll in school perhaps hundreds or thousands of miles from their home, they were purchasing an on-campus educational experience with multiple appurtenant benefits, services, and opportunities.  FAC ¶¶ -5; 18-27; 36-39, 44.

The decision to retain monies paid for products and services that were never delivered is a standard commercial business decision, and one encountered by all market participants who take money in return for the promise to deliver services and/or products.  SCU's decision to retain such monies in this case was not academic in nature and does "not require an inquiry into pedagogical methods, the quality of Defendant's instructors and curriculum, or an evaluation of Plaintiffs' progress or achievement, or the reasons for their success or failure." *Makaeff*, 2010 WL 3988684, at *3 (internal quotations omitted) (citing *Wells v. One2One Learning Found.*, 39 Cal. 4th 1164, 1211 (2006), as modified (Oct. 25, 2006).  It was, however, illegal and unjust.

**B.  Plaintiffs State A Claim For Breach Of Contract**

**1.  Plaintiffs Have Sufficiently Pled A Specific Enforceable Promise**

"[T]he basic relationship between a student and a private university is contractual in nature." *Kashmiri,* 156 Cal. App. 4th at 824 (citing *Zumbrun,* 25 Cal. App. 3d at 10).  Under

California law, specific promises made in a university's "catalogues, bulletins, circulars, and regulations of the institution" form the basis of a contract between the university and its students. *Zumbrun*, 25 Cal. App. 3d at 10. Likewise, in the absence of a formal agreement between the student and a university, a student may nonetheless establish the existence of a contract which is implied-in-fact. *See Kashmiri*, 156 Cal. App. 4th at 827-28. Additionally, terms of an implied contract may also arise from the university's website and its promotional and recruitment materials. For example, in *Kashmiri* the court held that the "University breached its [implied] contracts with the professional students when it raised the professional educational fees for continuing students after promising on its website and in its catalogues that such fees would not be raised for the duration of the students' enrollment in the professional program." *Id*. at 815.

Here, Defendant conflates Plaintiffs' claims and argues that "[t]he allegation that SCU depicted an in-person 'campus life' that turned out to be different from what students experienced during the pandemic is not sufficient to allege that SCU made a concrete, judicially enforceable promise to provide Plaintiffs with a specified manner of education." MTD at 15. Again, Defendant misunderstands Plaintiffs' claims. Plaintiffs are not suing because they did not receive course registration, grades, a diploma, or even an enjoyable on-campus experience, but because they contracted for in-person classes for the entirety of the Spring Semester 2020, but didn't receive in-person classes for approximately half of the semester. FAC ¶¶ 34-36. Thus, Plaintiffs paid for benefits that they did not receive.

Defendant also fails to recognize any of the recent decisions allowing claims identical to Plaintiffs' breach of contract claim to proceed. *See generally* cases cited in Smith Decl. Tellingly, Defendant advances the same argument that failed in those cases here:

> The crux of the College's motion is that the amended complaint does not identify a specific contractual provision that establishes that the College had an obligation to provide "in-person educational services" for the entire Spring 2020 semester. The Court disagrees based on its careful review of the amended complaint. Throughout the amended complaint, **Murillo alleges that the College's publications clearly implied that courses would be conducted in-person. The College's materials also touted its many resources and facilities—all of which were located on the campus thereby**

> **implying in-person participation. These allegations are
> sufficient at this early stage**, especially because Florida law
> recognizes that the college/student contract is typically implied in
> the College's publications.

*Salerno*, 2020 WL 5583522, at *5 (emphasis added).

> Specifically, Plaintiff alleges that in consulting UOP's course
> catalogue, Plaintiff understood and believed that every course in
> which he enrolled would be taught in-person.  The course catalogues
> include information about the "days and times" and "the location" in
> which the courses would be held.  Plaintiff has also alleged that other
> UOP materials such as course syllabi and university policies
> reference the in-person nature of the spring semester and also tout
> "campus life."  Moreover, while it is true, that Plaintiff does not
> identify any express or specific promise that was breached, the FAC
> does allege that tuition and fees paid to UOP cover not just the
> academic instruction but encompass, face-to-face interaction with
> professors, mentors, and peers; access to facilities such as libraries,
> laboratories, computer labs, and study rooms; extra-curricular
> activities, groups, and intramural sports; hands on learning and
> experimentation; and networking and mentorship opportunities
> among other things.  The Court finds these allegations, at this stage,
> are sufficient to state a claim for breach of an implied-in-fact contract

*Saroya*, 2020 WL 7013598, at *5 (internal citations omitted).

As was the case in *Salerno* and *Saroya*, Plaintiffs here allege that they "entered into a contractual agreement where Plaintiffs would provide payment in the form of tuition and fees; and in exchange, SCU would provide in-person educational services, experiences, opportunities, and other related services," and that the terms were set forth in Defendant's Course Catalog.  FAC ¶ 16. Plaintiffs also allege that the Course Catalog provided information on "the days and times" and "the location" in which the courses would be held, and that "[o]ther publications refer to the in-person nature of the Spring Semester 2020 course offerings" and robust "campus life."  *Id.* ¶¶ 18-19; 21-27.  SCU even distinguished its online course offerings from its in-person course offerings, and cautioned students enrolling in online courses to consider "whether your learning style is a good fit for online."  *Id.* ¶ 29-32.  These allegations are more than sufficient to state a claim for breach of contract.  *Salerno*, 2020 WL 5583522, at *5; *Saroya*, 2020 WL 7013598, at *5; *see also Zumbrun*, 25 Cal. App. 3d at 10 (noting that "[i]t is obvious that plaintiff did not receive all that she

bargained for when she enrolled in 'Sociology 200[,]'" when the university failed to provide all of the promised lectures).

### 2.  The "Financial Responsibility Agreement" Is Not A Contract

SCU also argues that its "Financial Responsibility Agreement" governs the *entire* relationship between Plaintiffs and SCU.  MTD at 12.  That is wrong.  Judge Davila rejected a similar argument in *Saroya*, when he held the contract between UOP and its students goes beyond the "Financial Responsibility Agreement," and includes the university's publications as well.  2020 WL 7013598, at *5 ("However, while the Financial Agreement may lack a promise of in-person instruction, Plaintiff has sufficiently alleged that UOP's publications when considered together established a contractual agreement where students like Plaintiff would provide payment in the form of tuition and fees for the Spring 2020 semester and UOP, in exchange, would provide in-person educational services, experiences, opportunities, and other related services.").

Regardless, the Financial Responsibility Agreement cannot be a contract at all because it lacks mutual consideration.  Under California law, "[f]ormation of a contract require[s]…sufficient consideration."  *JLT Aerospace (N. Am.), Inc. v. Rockseth-Shipman*, 2008 WL 11396804, at *1 (N.D. Cal. Mar. 10, 2008) (quoting *ASP Properties Group v. Fard, Inc.*, 133 Cal. App. 4th 1257, 1268-69 (2005)).  "[W]here consideration for an agreement consists of an exchange of promises, that one party's promise is illusory generally means there is no consideration."  *Steiner v. Thexton*, 48 Cal. 4th 411, 423 (2010) (citing *Mattei v. Hopper*, 51 Cal.2d 119, 122 (1958)).

Here, the Financial Responsibility Agreement imposes no obligation on Defendant.  The Agreement reads, in pertinent part, "I accept full responsibility to pay all tuition, room and board, fees, and other associated costs as a result of enrollment at Santa Clara University."  Ex. 10 at 1.

Even if the student's promise to pay costs associated with enrollment actually obligates SCU to provide educational services, the document fails to address numerous material terms.  "To be enforceable under California law, a contract must be sufficiently definite 'for the court to ascertain the parties' obligations and to determine whether those obligations have been performed or breached.'"  *Sateriale v. R.J. Reynolds Tobacco Co.,* 697 F.3d 777, 789 (9th Cir. 2012) (quoting

*Bustamante v. Intuit, Inc.,* 141 Cal.App.4th 199, 45 Cal.Rptr.3d 692, 699 (2006)).  "The terms of a contract are reasonably certain if they provide a basis for determining the existence of a breach and for giving an appropriate remedy."  *Id*; *Inamed Corp. v. Kuzmak*, 275 F. Supp. 2d 1100, 1122 (C.D. Cal. 2002), *aff'd,* 64 F. App'x 241 (Fed. Cir. 2003) ("where there is no meeting of the minds upon the material terms of a contract, the agreement cannot be enforced").

Here, the Financial Responsibility Agreement contains no material terms at all.  The document fails to address what (if any) services Defendant will provide or the duration that such services will be provided.  Furthermore, the document fails to even establish the price that will be paid for the undefined services.  Indeed, under a literal reading of the document, once a student enrolls, Defendant can provide *any* "service" no matter how small, and the student then becomes liable to pay *any* amount charged by Defendant as a result.

More troubling, the document fails to set forth the rights or remedies of either party with respect to the services rendered.  For example, the document does not even contemplate the conferral of a degree – an important reason students would seek educational services in the first instance.  According to Defendant, its students could show up to class every day for four years, follow all the rules, pass all required classes, and just prior to graduation, be denied a degree for no reason at all.  This is not only contrary to common sense and well-established contract law, it is contrary to public policy.  In California, "[a] university may not act maliciously by arbitrarily and capriciously dismissing or refusing to award a degree to a student on the ground of academic deficiencies if said student fulfills its degree requirements."  *Salinas,* 2017 WL 4237011, at *9 (quoting *Banks v. Dominican Coll.*, 35 Cal. App.4th 1545, 1552 (1995)).  For these reasons, the Financial Responsibility Agreement is not a contract at all.  Instead, it is a mere agreement to agree.  The student agrees that, once he/she reaches a future agreement with Defendant regarding what classes the student will take, and what tuition Defendant will charge, if the student takes the agreed upon classes, the student will pay the agreed upon tuition.

Finally, *Chong v. Northeastern University*, 2020 WL 5847626 (D. Mass. Oct. 1, 2020) and *Zwiker v. Lake Superior State Univ.*, Case No. 20-000070-MK, Opinion And Order ("Order") (Mich. Ct. Claims, Aug. 31, 2020) are distinguishable.  *Chong* has since been overturned.  *See* RJN

Ex. 4.  In *Chong*, the plaintiff conceded the existence and applicability of a Financial Responsibility Agreement and pled that the Financial Responsibility Agreement was the contract that gave rise to the entitlement for in-person instruction. *Chong*, 2020 WL 5847626 at *3.  Then, in opposing the Motion to Dismiss, the *Chong* plaintiff pivoted to an argument more akin to the arguments made here. However, the Court was not permitted to consider those arguments because they were not set forth in the Complaint.  *Id.* ("In their oppositional briefing, plaintiffs attempt to rectify their pleading deficiencies . . . The court cannot consider this evidence, however, because the [Second Amended Complaint] makes no mention [of it]." Importantly, the Court did not reject these arguments.  Instead, the dismissal was issued **without prejudice**.  The *Chong* Court ultimately denied a substantially similar motion to dismiss the amended complaint in that case.  See RJN Ex. 4.  In *Zwiker*, the plaintiffs conceded that a "Tuition Contract" was *the* valid, binding, and controlling agreement between the parties. *See Zwiker* at 9 ("In arguing for a different outcome, plaintiff has not disputed the existence of the Tuition Contract, nor has she disputed that the document controls the parties' relationship.").  Here, Plaintiffs concede neither point.  As such, *Chong* and *Zwinker* are not instructive to the present action where Plaintiffs' allegations differ dramatically.

### 3.  The "Refund Policy" Does Not Apply

Defendant next argues its "Refund Policies & Procedures" do not entitle Plaintiffs to any partial refund.  MTD at 13 (citing Ex. 11).  As stated in *Saroya*, this argument is premature at the motion to dismiss stage.  *Saroya*, 2020 WL 7013598, at *6 (finding that whether "tuition refund policy" warrants dismissal is "more appropriate at the dispositive motion stage").

Nonetheless, the cited policy simply does not apply to Plaintiffs' claims here.  The refund policy is *only* applicable in determining refunds of tuition and fees for students who "withdraw" from SCU or drop below full-time enrollment.  *See* Ex. 11 (addressing withdrawals).  The policy sets forth the method for calculating refunds due, and the procedure by which students are required to notify Defendant of their intention to withdraw.  *Id.*

The Refund Policies & Procedures contemplate a scenario where the student elects to break a contract with Defendant for the provision of educational services.  That is not the situation here.

The policy is inapplicable to the facts at hand, and Defendant's reliance on it in an attempt to dismiss Plaintiffs' breach of contract claims is misplaced.

Defendant also argues that a one-off sentence in the student bulletin, found in a section regarding "Financial Hardship" precludes Plaintiffs' claims. MTD at 16; Ex. 13 at 43. That sentences provides that "[n]o tuition refunds are made because of curtailed services resulting from strikes, acts of God, civil insurrection, riots or threats thereof, or other causes beyond the control of the University." Ex. 13 at 143. In *Gibson v. Lynn University*, 2020 WL 7024463, at *3 (S.D. Fla. Nov. 29, 2020) the court dealt with an almost identical clause. *See id.* ("There will be no refund of tuition, [or] fees … in the event the operation of the University is suspended at any time as a result of an act of God, strike, riot, disruption or for any other reasons beyond the control of the University."). There, the court held that "a determination of whether the *Force Majeure* Provision or other statements in Lynn's policies and publications foreclose Plaintiff's breach-of-contract claim is more appropriate at the summary judgment stage," because "the universe of terms and conditions governing the parties' relationship is a disputed matter to be resolved when the full factual record is before the Court—not on a motion to dismiss." *Id.* at *3-4. The same is true here.[3]

### C. Plaintiffs State Claims Under the UCL's Unfair Prong

Practices may be deemed unfair under the UCL "even if not specifically proscribed by some other law." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1143 (2003) (internal quotations and citation omitted). "Unfairness" is statutorily undefined; as such, courts apply three alternative tests under the UCL's unfair prong when evaluating a defendant's practices. *Soo v. Lorex Corp.*, 2020 WL 5408117, at *6 (N.D. Cal. Sept. 9, 2020) (describing alternative tests under the UCL's unfair prong). One of those tests, called the "balancing test," asks "whether the alleged business practice 'is immoral, unethical, oppressive, unscrupulous or substantially injurious

---

[3] Defendant also argues that "[w]ith the exception of those in the Jesuit School of Theology and the Law School, all SCU students (i.e., all other putative class members) are enrolled in classes on a quarter system." MTD at 17. But here, Plaintiffs were law students at SCU in the Spring 2020 Semester, and thus were on the semester system. FAC ¶¶ 6-8. Going forward, Plaintiffs' claims will only focus on those students on the semester system.

1    to consumers and requires the court to weigh the utility of the defendant's conduct against the

2    gravity of the harm to the alleged victim.'" *Soo*, 2020 WL 5408117 at *6 (quoting *Drum v. San*

3    *Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247, 257 (2010)).

4         Plaintiffs' theory of unfairness relies on the "balancing test." FAC, ¶ 67.  And, to be clear,

5    the issue is <u>not</u> whether SCU's response to COVID-19 was "unfair."  The issue is whether it was

6    unfair for SCU to charge for services SCU did not provide.  *See id.* at ¶¶ 40, 67.  And while SCU

7    may disagree that its conduct meets the criteria for the "unfair" prong, "the cost-benefit analysis the

8    unfairness prong calls for is 'not properly suited for resolution at the pleading stage.'"  *Soo*, 2020

9    WL 5408117 at *7 (quoting *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1117 (N.D. Cal. 2015)).

10   Further, even if the allegations were insufficient to support a claim under the unfair prong of the

11   UCL, the proper outcome would be dismissal with leave to amend.  *See Verlanga*, at 9-10 (Ex. 1 to

12   RJN) (sustaining demurrer to UCL claim with leave to amend).

13        SCU makes two, related arguments concerning the UCL "unfair" prong, but neither support

14   dismissal.  <u>First</u>, SCU repeats and relies on its arguments for dismissal of the breach of contract

15   claim.  *See* MTD, 19:10-12 ("Because Plaintiffs' claim that SCU committed an unfair practice is

16   entirely based on its (incorrect) theory that SCU made a specific, enforceable promise to provide

17   in-person services, if Plaintiffs' breach of contract claim is dismissed, its UCL claim should be

18   too").  Thus, SCU's arguments should be rejected for the same reasons set forth above.

19        <u>Second</u>, SCU argues the "claim under the unfair prong of the UCL should also be dismissed

20   because of the express contract between SCU and its students."  *Id.* at 19:18-19.  However, that is

21   not a legal basis to dismiss the UCL claim because the UCL expressly states that its remedies are

22   "cumulative to each other and to the remedies or penalties available under all other laws of this

23   state."  Cal. Bus. & Prof. Code § 17205.  Thus, plaintiffs may plead a claim under UCL's "unfair"

24   prong with a breach of contract claim.  *See Deerpoint Grp., Inc. v. Agrigenix, LLC*, 345 F. Supp. 3d

25   1207, 1235 (E.D. Cal. 2018) ("Because the duties of the UCL are statutory and independent of

26   contracts, this claim does not improperly attempt to obtain tort remedies for breaches of contract.");

27   *Vincent v. PNC Mortg., Inc.*, 2014 WL 2766116, at *8-9 (E.D. Cal. June 18, 2014) (denying

28   motion to dismiss breach of contract and UCL "unfair" claims).  The cases SCU cites did *not* hold

that a plaintiff can never plead a UCL and breach of contract claim in tandem; in fact, neither decision involved a breach of contract at all.  *See Nolte v. Cedars-Sinai Med. Ctr.*, 236 Cal. App. 4th 1401, 1405 (2015) (describing causes of action alleged by plaintiff); *Searle v. Wyndham Int'l., Inc.*, 102 Cal. App. 4th 1327, 1331 (2002) (same).  Finally, just like the unjust enrichment claim, even if a UCL "unfair" claim were inconsistent with a breach of contract claim, Federal Rule of Civil Procedure 8 permits both claims to be pled in the alternative.  *See* Fed. R. Civ. P. 8(d)(2)-(3) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically" and "may state as many separate claims or defenses as it has, regardless of consistency.").

### D.  Plaintiffs State Claims for Unjust Enrichment

SCU starts with two related arguments that have been rejected by this Court and the Ninth Circuit: (1) there is no "standalone cause of action for unjust enrichment," and (2) Plaintiffs should not be able to proceed on a quasi-contract theory in the alternative because a separate cause of action for restitution would be "superfluous."  MTD, 23:8-16.  The Ninth Circuit rejected the first argument in *Bruton v. Gerber Prods. Co.*, 703 F. App'x 468, 470 (9th Cir. 2017), when it reversed this Court's dismissal of an unjust enrichment claim based on a then-recent decision of the California Supreme Court in *Hartford Cas. Ins. Co. v. J.R. Mktg., LLC*, 353 P.3d 319 (Cal. 2015).  And by that time, the Ninth Circuit had already rejected SCU's second argument two years before in *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015), when it held, "[t]o the extent the district court concluded that the cause of action [for unjust enrichment] was nonsensical because it was duplicative of or superfluous to Astiana's other claims, this is not grounds for dismissal."  Many courts in this District have rejected the same arguments SCU advances here based on *Bruton*, *Astiana* and/or *Hartford*, including this Court.  *See Dang v. Samsung Elecs. Co. Ltd.*, 2018 WL 6308738, at *11 (N.D. Cal. Dec. 3, 2018) (Koh, J.) ("The Ninth Circuit has found [in *Bruton*] that California recognizes an independent cause of action for unjust enrichment."); *Bruton v. Gerber Prods. Co.*, 2018 WL 4181903, at *8 (N.D. Cal. Aug. 31, 2018) (Koh, J.) ("the Ninth Circuit in *Astiana* decided that the duplicative nature of an unjust enrichment/quasi-contract

1    claim is <u>not</u> a valid reason to dismiss it") (emphasis in original).[4]

2    Every decision SCU cites on these issues predate *Astiana*, *Bruton* and *Hartford*, with the

3    exception of this Court's decision in *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 132 (N.D. Cal.

4    2020), which adopted the argument that there is no separate cause of action for unjust enrichment.

5    A review of the briefing in that matter, however, shows that the plaintiffs in that case failed to cite

6    *Bruton* or this Court's earlier decision in *Dang* in their opposition brief. *See Brodsky v. Apple, Inc.*,

7    N.D. Cal. Case No. 5:19-cv-00712-LHK, Opp'n to Motion to Dismiss, p. 15 (Dkt. No. 47).

8    Plaintiffs respectfully submit that, as a result, the *Brodsky* decision is inconsistent with this Court's

9    earlier decision in *Dang*, the Ninth Circuit's decision in *Bruton* (cited in *Dang*), and the weight of

10   more recent authority in this District. *See supra* fn. 4.

11   SCU next argues for dismissal of the unjust enrichment claim because the parties already

12   have a contract covering the subject matter. MTD at 23:27. However, the FAC expressly states

13   that "to the extent required by law, this [unjust enrichment] claim is alleged in the alternative

14   pursuant to Federal Rule of Civil Procedure 8." FAC, ¶ 81. The unjust enrichment claim may

15   proceed in the alternative in the event the contract is unenforceable. The fact that Plaintiffs allege

16   the existence of an implied contract with SCU may not be treated as an admission supporting

17   dismissal of the unjust enrichment claim. *See McCalden v. Cal. Library Ass'n*, 955 F.2d 1214,

18   1219 (9th Cir. 1990) ("a pleading should not be construed as an admission against another

19   alternative or inconsistent pleading in the same case"), *superseded by rule on other grounds in*

20   *Harmston v. City & Cnty. of San Francisco*, 627 F.3d 1273 (9th Cir. 2010).

21   Finally, this Court's decision in *Brodsky v. Apple Inc.*, 2019 WL 4141936, at *10 (N.D.

22

23   [4] *See In re Bang Energy Drink Marketing Litig.*, 2020 WL 4458916, at *10 (N.D. Cal. Feb. 6,
     2020) (citing *Hartford* and other decisions when holding, "Plaintiffs have sufficiently established
     that unjust enrichment is an independent cause of action in California.") (Tigar, J.) (internal

24   quotation omitted); *Nava v. Kobe Steel, Ltd.*, 2019 WL 5173767, at *1 (N.D. Cal. Oct. 8, 2019)
     (Chhabria, J.) (citing *Bruton* and *Hartford* for the proposition that unjust enrichment "is an

25   independent cause of action in California"); *Williams v. Facebook, Inc.*, 384 F. Supp. 3d 1043,
     1057 (N.D. Cal. 2018) (Seeborg, J.) (following *Astiana* and *Bruton* when denying motion to

26   dismiss unjust enrichment claim); *accord Young v. Cree, Inc.*, 2018 WL 1710181, at *8 (N.D. Cal.
     Apr. 9, 2018) (Gonzalez Rogers, J.); *Gasser v. Kiss My Face, LLC*, 2017 WL 4773426, at *9 (N.D.

27   Cal. Oct. 23, 2017) (Corley, M.J.); *Synopsys, Inc. v. Ubiquiti Networks, Inc.*, 2017 WL 3485881, at
     *23 (N.D. Cal. Aug. 15, 2017) (Orrick, J.) (same).

28

1  Cal. Aug. 30, 2019), demonstrates that if a complaint does not include alternative allegations that a

2  contract may be unenforceable, the proper outcome is leave to amend.  Likewise, in a recent

3  California state court case alleging similar claims against the University of San Francisco, Judge

4  Schulman sustained a demurrer with leave to amend a cause of action for quasi-contract.  *See*

5  *Verlanga*, at 10 (Ex. 1 to RJN).  Therefore, to the extent this Court determines the unjust

6  enrichment allegations are insufficient to support an alternative theory of liability, Plaintiffs request

7  an opportunity to cure via amendment.  *See Roney v. Miller*, 705 F. App'x 670, 671 (9th Cir. 2017)

8  (lower court erred by denying leave to amend after dismissing amended complaint).

9  **III.     Conclusion**

10         For the foregoing reasons, the Court should deny SCU's motion in its entirety.  If the Court

11  determines that the pleadings are deficient in any respect, Plaintiffs request leave to amend to cure

12  any such deficiencies.

13  Dated:  December 14, 2020             **BURSOR & FISHER, P.A**.

14                                       By:  ___*/s/ Joel D. Smith*___

15                                              Joel D. Smith

16                                       L. Timothy Fisher (State Bar No. 191626)
                                         Joel D. Smith (State Bar No. 244902)
17                                       1990 North California Blvd., Suite 940
                                         Walnut Creek, CA 94596
18                                       Telephone: (925) 300-4455
                                         Facsimile:  (925) 407-2700
19                                       E-mail: ltfisher@bursor.com
                                                 jsmith@bursor.com
20
                                         **BURSOR & FISHER, P.A.**
21                                       Sarah N. Westcot (State Bar No. 264916)
                                         701 Brickell Ave., Suite 1420
22                                       Miami, FL 33131
                                         Telephone: (305) 330-5512
23                                       Facsimile:  (305) 676-9006
                                         E-Mail: swestcot@bursor.com
24
                                         *Attorneys for Plaintiffs*
25

26

27

28