1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| LILAS ABUELHAWA, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>SANTA CLARA UNIVERSITY,<br><br>Defendant. | Case No. 20-CV-04045-LHK<br><br>**ORDER GRANTING MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>Re: Dkt. No. 32 |

18    Plaintiffs, on behalf of themselves and others similarly situated, allege that Defendant

19  Santa Clara University ("SCU") violated California law by halting in-person education in response

20  to the COVID-19 pandemic. Plaintiffs specifically claim that SCU (1) breached an alleged

21  implied-in-fact contract; (2) violated the "unfair" prong of California's Unfair Competition Law,

22  Cal. Bus. & Profs. Code §§ 17200 *et seq.*; and (3) unjustly enriched itself. ECF No. 25. Before the

23  Court is SCU's motion to dismiss Plaintiffs' first amended complaint. ECF No. 32. Having

24  considered the parties' submissions, the relevant law, and the record in this case, the Court

25  GRANTS SCU's motion to dismiss.

26
27
28

I.     **BACKGROUND**

　　**A.  Factual Background**

　　On February 7, 2020, a woman in Santa Clara County died of COVID-19, becoming the first known COVID-19 death in the United States. *Tandon v. Newsom*, No. 20-CV-07108-LHK, 2021 WL 411375, at *1 (N.D. Cal. Feb. 5, 2021). On March 4, 2020, Governor Gavin declared a state of emergency in California. RJN No. 19, ECF No. 30.[1] Thus, on March 10, 2020, SCU temporarily suspended in-person classes and moved to online instruction. *See* First Am. Compl. ("FAC") ¶ 4, ECF No. 25.

　　Days later, on March 16, 2020, the Santa Clara County Health Officer issued a shelter-in-place order. RJN No. 20. Under the order, schools such as SCU could open only "for purposes of facilitating distance learning or performing essential functions," not in-person instruction. *Id.* at §10(f)(xi). To follow the order, SCU announced on March 16, 2020 that its educational experience would remain online for the Spring 2020 term. FAC ¶ 4. SCU's announcement preceded the March 30, 2020 start of SCU's Spring 2020 Quarter for all SCU schools except the Jesuit School of Theology and Law School. Those two schools operate on the semester system rather than the quarter system. Thus, except for students at the Jesuit School of Theology and Law School, SCU students had over two-weeks' notice that the Spring 2020 Quarter would be held remotely.

　　Plaintiffs are three SCU law students who bring a putative class action against SCU's

---

[1] SCU requests judicial notice of materials from SCU's website, government orders on the COVID-19 pandemic, and court filings. ECF No. 30 ("RJN"). Plaintiffs request judicial notice of court filings. ECF No. 34 ("Ps' RJN"). Both requests for judicial notice are unopposed. The Court may take judicial notice of matters that are either "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Moreover, courts may consider materials referenced in the complaint under the incorporation by reference doctrine, even if a plaintiff failed to attach those materials to the complaint. *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). Documents on "publicly available websites" and public records are proper subjects of judicial notice. *See, e.g.*, *Calhoun v. Google LLC*, No. 20-CV-05146-LHK, 2021 WL 1056532, at *5 (N.D. Cal. Mar. 17, 2021) (collecting cases). Accordingly, the Court GRANTS the parties' unopposed requests for judicial notice.

Case No. 20-CV-04045-LHK
ORDER GRANTING MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

United States District Court
Northern District of California

temporary suspension of in-person instruction. Specifically, Plaintiffs Lilas Abuelhawa, Kelly Wynne, and Leonardo Kim seek to represent the following class and subclass of students:

- The Class: "all people who paid SCU Spring 2020 Semester tuition and/or fees for in-person educational services that SCU failed to provide, and whose tuition and fees have not been refunded."[2]

- The Law Student Subclass: "SCU law students who paid SCU Spring 2020 Semester tuition and/or fees for in-person educational services that SCU failed to provide, and whose tuition and fees have not been refunded."

FAC ¶ 45. At first, Plaintiffs sought to represent all SCU students, not just those on the semester system. *See id.* ¶ 3 (defining "semester" to include "quarter" and "any academic period"). After SCU moved to dismiss the First Amended Complaint, however, Plaintiffs abandoned their claims on behalf of all SCU students. The putative classes now comprise only "those students on the semester system"—that is, students at the Law School and the Jesuit School of Theology. Opp'n at 11 n.3.

Plaintiffs do not challenge the allegedly "inferior learning experience" of online classes. FAC ¶ 44; *accord* Opp'n at 5 ("Plaintiffs are not suing because they claim they received a lower quality education . . . ."). The "gravamen of this action" is instead that Plaintiffs "paid SCU for in-person classes and the availability of on-campus facilities and experiences, and did not receive what they paid for." FAC ¶ 44. Under this theory of the case, Plaintiffs assert three claims: (1) breach of an alleged implied-in-fact contract; (2) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Profs. Code §§ 17200 *et seq.*, as the result of SCU's alleged "unfair" practices; and (3) unjust enrichment. *Id.* ¶¶ 54–71, 79–86. All three claims are based on SCU breaking its alleged promises to provide in-person instruction. *See id.* ¶¶ 57 (contract claim), 66

---

[2] "Specifically excluded from the Class are Defendant, Defendant's officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint ventures, or entities controlled by Defendant, and their heirs, successors, assigns, or other persons or entities related to or affiliated with Defendant and/or Defendant's officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family." FAC ¶ 46.

Case No. 20-CV-04045-LHK
ORDER GRANTING MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

United States District Court
Northern District of California

1   (UCL claim), 82 (unjust enrichment claim).

2         The FAC also pleads a claim for conversion (Count 3) and a UCL claim under the

3   "unlawful" prong. However, Plaintiffs withdraw these claims in their Opposition to the instant

4   motion to dismiss. Opp'n at 2. Thus, the Court DISMISSES with prejudice Plaintiffs' conversion

5   claim and UCL "unlawful" prong claim.

6         Plaintiffs allege that SCU promised in-person instruction in its course materials, student

7   bulletins, and website. *See id.* at ¶¶ 16, 21–33. Course materials allegedly promised in-person

8   instruction by distinguishing between in-person and online instruction. If SCU offered a course in

9   person, SCU allegedly identified the on-campus location of the course and sometimes required a

10  "mandatory in-person class session" to confirm a student's enrollment in the class. *Id.* ¶¶ 19, 28.

11        Student bulletins allegedly "refer to the in-person nature of the Spring 2020 semester." *Id.*

12  ¶ 21. Plaintiffs specifically cite certain statements in the law student bulletin. That bulletin notifies

13  students that they must complete 64 credit hours "at the law school" and that teachers "may utilize

14  class attendance" in grading. FAC ¶ 21. The law student bulletin also mentions certain on-campus

15  facilities. *Id.*

16         Lastly, SCU's website advertises SCU's on-campus experience. *Id.* ¶ 22. Specifically, the

17  website praises SCU's faculty, libraries, and campus life. As for faculty, the website touts SCU's

18  "connected & engaged faculty." *Id.* ¶ 22. As for libraries, SCU's website describes libraries as

19  "much more than book repositories; they're inspiring spaces for research, collaboration, and

20  reflection." *Id.* ¶ 23. As to campus life, the website advertises "special places on campus" and

21  "organization[s] on campus." *Id.* ¶¶ 24–27.

22        In sum, Plaintiffs' claims rely on these statements in course materials, student bulletins,

23  and SCU's website. Plaintiffs allege that these statements constitute SCU's promises to either

24  (1) hold in-person instruction despite the COVID-19 pandemic; or (2) to refund Plaintiffs' tuition.

25  FAC ¶¶ 33–44.

26        Yet Plaintiffs fail to mention other statements in SCU's course materials or student

27  bulletins. As for course materials, the "online course portal" that Plaintiffs allege viewing contains

28
                                                    4

financial terms and conditions. FAC ¶ 17. "Students are required to accept the financial terms and conditions outlined by the University in order to continue their enrollment at SCU." RJN No. 13. These terms and conditions specifically provide that SCU's hyperlinked "tuition refund schedule" governs refunds:

> I accept full responsibility to pay all tuition, room and board, fees, and other associated costs as a result of enrollment at Santa Clara University . . . . I have reviewed the published tuition refund schedule at www.scu.edu/bursar/refund and understand that if I drop or withdraw from some or all of the classes for which I enroll, *I will be responsible for paying all or a portion of tuition and fees in accordance with the University's tuition refund schedule*. . . . I have read the above and agree to assume all financial responsibility associated with my enrollment at Santa Clara University.

RJN No. 10 (emphasis added). As for student bulletins, all bulletins except the Jesuit School of Theology's state that "*[n]o tuition refunds* are made because of curtailed services resulting from strikes, *acts of God*, civil insurrection, riots or threats thereof, *or other causes beyond the control of the University*." RJN No. 14 (emphasis added).

### B. Procedural History

Plaintiffs filed their initial complaint on June 17, 2020. ECF No. 1. On September 28, 2020, SCU moved to dismiss that complaint. ECF No. 21. On October 12, 2020, Plaintiffs filed their operative First Amended Complaint. The parties then stipulated to SCU filing a new motion to dismiss the FAC, and on October 23, 2020, the Court granted that stipulation. ECF No. 27.

On November 9, 2020, SCU filed the instant motion to dismiss and an unopposed request for judicial notice. ECF Nos. 32 ("Mot."), 30–31 ("RJN"). On December 14, 2020, Plaintiffs filed (1) their opposition to the instant motion to dismiss, ECF No. 33 ("Opp'n"); and (2) their own request for judicial notice, ECF No. 34 ("Ps' RJN"). SCU filed its reply supporting the instant motion on January 8, 2021. ECF No. 35. Since then, the parties have altogether filed seven statements of recent decision. ECF Nos. 36 (Plaintiffs' statement), 40, 42–44, 47–48 (SCU's statements).

## II.     LEGAL STANDARD

### A.  Motion to Dismiss Under Rule 12(b)(6)

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). The United States Supreme Court has held that Rule 8(a) requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (internal quotation marks omitted). For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The Court, however, need not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (internal quotation marks omitted). Additionally, mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

### B.  Leave to Amend

If a court determines that a complaint should be dismissed, it must then decide whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations and internal quotation marks omitted). When dismissing a complaint for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1  pleading could not possibly be cured by the allegation of other facts." *Id.* at 1130 (internal
2  quotation marks omitted).

3      Accordingly, leave to amend generally shall be denied only if allowing amendment would
4  unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has
5  acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008). At the
6  same time, a court is justified in denying leave to amend when a plaintiff "repeated[ly] fail[s] to
7  cure deficiencies by amendments previously allowed." *See Carvalho v. Equifax Info. Servs., LLC*,
8  629 F.3d 876, 892 (9th Cir. 2010). Indeed, a "district court's discretion to deny leave to amend is
9  particularly broad where plaintiff has previously amended the complaint." *Cafasso, U.S. ex rel. v.*
10 *Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1058 (9th Cir. 2011) (quotation marks omitted).

## III.  DISCUSSION

12     Plaintiffs bring three claims against Santa Clara University ("SCU"): (1) breach of an
13 alleged implied-in-fact contract; (2) violation of California's Unfair Competition Law ("UCL"),
14 Cal. Bus. & Profs. Code §§ 17200 *et seq.*, as the result of SCU's alleged "unfair" practices; and
15 (3) unjust enrichment. SCU moves to dismiss all three claims. The Court addresses each claim in
16 turn. Ultimately, the Court dismisses the first two claims with leave to amend and the unjust
17 enrichment claim with prejudice.

### A.  Plaintiffs have inadequately plead a specific promise.

19     SCU moves to dismiss Plaintiffs' breach of implied-in-fact contract claim on two grounds.
20 SCU first argues that Plaintiffs have inadequately pled a specific promise. SCU then argues that
21 even if Plaintiffs pled a specific promise, Plaintiffs' implied contract claim is barred by financial
22 disclaimers in SCU's tuition refund schedule and student bulletins. The Court agrees with the first
23 ground for dismissal, and so need not reach the second. The Court analyzes that first ground
24 below.

25     The parties agree that Plaintiffs' implied contract claim must identify a *specific* promise
26 that SCU breached. *See* Opp'n at 5–7 (alleging "specific enforceable promise"); Reply at 2 (noting
27 Plaintiffs' lack of dispute). This specificity requirement stems from *Kashmiri v. Regents of Univ.*

28
Case No. 20-CV-04045-LHK
ORDER GRANTING MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

1  *of California*, a leading California Court of Appeal decision on contracts between students and

2  universities. 156 Cal. App. 4th 809 (2007), *as modified* (Nov. 15, 2007), *as modified* (Nov. 28,

3  2007). There, the Court of Appeal held that "general and vague declarations or promises in

4  university publications" fail to create contractual obligations. *Id.* at 832. "Universities frequently

5  publish numerous catalogues and bulletins, but not all statements in these publications amount to

6  contractual obligations." *Id.* at 829. Contractual obligations arise only "when the educational

7  institution makes a specific promise to provide an educational service." *Id.* at 826; *accord id.*

8  ("*specific* promises" (emphasis in original)).

9       Reinforcing this limitation on university-student contracts is the "widely accepted rule of

10  judicial nonintervention into the academic affairs of schools." *Paulsen v. Golden Gate Univ.*, 25

11  Cal. 3d 803, 808 (1979) (collecting cases). As the California Supreme Court has explained, "[t]he

12  attempt to use catalogues or similar published material to freeze the academic relationship into a

13  rigid mold would lead to a stifling of both individual attention and equitable arrangements in the

14  student's behalf." *Id.* at 812.

15       Here, Plaintiffs allege that statements in SCU's course catalog and "other publications"

16  constitute specific promises of "in-person educational services, experiences, opportunities, and

17  other related services." Opp'n at 7 (quoting FAC ¶ 16). Plaintiffs specifically cite three statements.

18  First, the course catalog stated the on-campus locations where courses would be held. *Id.* Second,

19  SCU's website advertised "campus life." *Id.* (quoting FAC ¶ 24). Lastly, the course catalog asked

20  students to consider "whether your learning style is a good fit for online." *Id.* (quoting FAC ¶ 31).

21       None of these statements constitutes a "definite[], specific[], or explicit" promise that SCU

22  would continue on-campus instruction despite a global pandemic. *Kashmiri*, 156 Cal. App. 4th at

23  832. At most, these statements are "general promises or expectations," which do not create

24  contractual obligations. *Id.* at 826. In other words, Plaintiffs' attempt to rely on these statements is

25  what the California Supreme Court cautioned against—an "attempt to use catalogues or similar

26  published material to freeze the academic relationship into a rigid mold." *Paulsen*, 25 Cal. 3d at

27  812.

28

United States District Court
Northern District of California

Three cases illustrate how the statements Plaintiffs cite are too general to impose contractual duties on SCU. The first case, *Kashmiri*, underscores how unequivocally specific a statement must be to create an implied-in-fact contract. There, as here, plaintiffs alleged that a university defendant had violated an implied contract with students. Specifically, the *Kashmiri* plaintiffs alleged that the University of California system had promised not to impose increases in a certain fee on continuing students. *Kashmiri*, 156 Cal. App. 4th at 815. Rather, fee increases would apply "to new students only." *Id.* at 816.

The *Kashmiri* plaintiffs found this promise in three formal and "unequivocal" publications. *Id.* at 833. The first was a declaration by the Regents of the University of California made contemporaneously with the Regents' approval of the fee policy. The Regents "declared that 'the level of the [challenged fee] *remain the same for each student for the duration of his or her enrollment* in the professional degree program, with *increases in the fee applicable to new students only.*" *Id.* at 816 (emphasis added). The second publication was the Office of the President of the University's "official guide for all University departments in the area of general University fees." *Id.* That official presidential guide repeated the same declaration: "*Increases in the Fee apply to new students only.* The Fee *will remain the same for each student for the duration of his or her enrollment* in the professional degree program." *Id.* (emphasis added). The last publication comprised several years of "the University's annual budget documents." *Id.* Those budget documents also announced that "the level of the [challenged fee] *remains the same for each student for the duration of his or her enrollment* in the professional degree program, with *increases in the fee applicable to new students only.*" *Id.* (emphasis added). Given these repeated "unequivocal" statements, the *Kashmiri* Court held that the University of California had made "a specific promise," not merely "a general statement or declaration." *Id.* at 833.

Here, by contrast, Plaintiffs fail to identify any similarly specific and repeated promises. Plaintiffs instead point to various statements about SCU's general expectation that in-person classes are the norm. Specifically, as discussed above, Plaintiffs point to (1) the on-campus classroom locations listed in SCU's course catalog; (2) SCU's website advertisements about

United States District Court
Northern District of California

"campus life," and (3) a questionnaire in the course catalog that tried to help students understand "whether [their] learning style is a good fit for online." Opp'n at 7 (quoting FAC ¶¶ 16, 24, 31). To ascribe contractual duties to these "catalogues or similar published material" would "freeze the academic relationship into a rigid mold." *Paulsen*, 25 Cal. 3d at 808. For instance, under Plaintiffs' contractual theory, "students would have a contractual claim if their course was later reassigned to a different classroom or building" than the one listed in the course catalog. Mot. at 16. Allowing Plaintiffs to assert an implied contractual right to in-person instruction during a pandemic would be even less sound.

In fact, another federal court applying California contract law has rejected an implied contract claim based on statements closely analogous to those here. In *Lindner v. Occidental College*, plaintiffs also brought a putative class action against a school's "transition from in-person to virtual instruction during the Spring 2020 semester in response to the Covid-19 global pandemic." No. 20-CV-08481-JFW, 2020 WL 7350212, at *1 (C.D. Cal. Dec. 11, 2020). Similarly, the *Lindner* plaintiffs argued that "they are entitled to a partial refund of tuition and fees for the Spring 2020 semester because [the school] promised students in-person instruction." *Id.* Like Plaintiffs here, the *Lindner* plaintiffs also cited statements in their school's course catalog as purported promises of in-person education. *Id.* at *2. The *Lindner* course catalog "states the days of the week, the times, and the locations (building and room number) of each class." *Id.* Furthermore, a class attendance policy stated that "regular class attendance is expected of all students." *Id.* (original alteration omitted).

The *Lindner* Court rightly dismissed plaintiffs' implied contract claim—and dismissed it with prejudice as futile. *See id.* at *7–9 (contract analysis), *10 n.5 (dismissing with prejudice). The *Lindner* Court reasoned that the *Lindner* plaintiffs "failed to identify any specific language in the 2019–2020 Catalog or any other publication from [the school] that promises in-person instruction." *Id.* at *8. Although the course catalog mentioned the locations of each class, the course catalog "d[id] not promise in-person instruction or that the courses will always meet in the specific rooms stated." *Id.* Similarly, a policy of "regular class attendance" is "possible during

10

1    both in-person and virtual instruction." *Id.*

2          Here too, Plaintiffs rely on on-campus class locations in a course catalog—and a policy of

3    "regular and punctual class attendance," FAC ¶ 21—to plead breach of implied contract. Opp'n at

4    7. Likewise, the course catalog and policy fail to promise in-person instruction. *See* FAC ¶¶ 29, 21

5    (quoting catalog and policy). Thus, just as in *Lindner*, the breach of implied contract claim here

6    fails. *Accord Hassan v. Fordham Univ.*, No. 20-CV-03265-KMW, 2021 WL 293255, at *6

7    (S.D.N.Y. Jan. 28, 2021) (adopting *Lindner* and dismissing implied contract claim based on

8    similar statements).

9          The last case that underscores the inadequacy of Plaintiffs' implied contract claim is

10   *Regents of University of California v. Superior Court*, 193 Cal. Rptr. 3d 447, 471 (Ct. App. 2015),

11   *rev'd on other grounds*, 4 Cal. 5th 607, 634 n.8 (2018).[3] There, a California Court of Appeal

12   rejected a student's implied-in-fact contract claim against the University of California, Los

13   Angeles ("UCLA")'s failure to protect her from another, mentally ill student who UCLA knew

14   had "ideations of harming others." *Id.* at 452 (background), 471–72 (analyzing implied contract

15   claim). The *Regents* plaintiff was "violently attacked and almost murdered." *Id.* at 455. She thus

16   alleged that UCLA had breached an implied contract to protect her.

17         As sources of implied contractual duties, the *Regents* plaintiff specifically cited statements

18   in two UCLA publications and UCLA's imposition of "an individual surcharge to pay for student

19   mental health services." *Id.* at 471–72. The first publication, titled "'Preventing and Responding to

20   Violence in the UCLA Community' stat[ed] that the school is 'committed to providing a safe work

21   environment for all faculty, staff and students—one that is free from violence or threats of harm.'"

22   *Id.* at 471. The other publication was the Student Conduct Code. It provided that "any individual

23   who 'commits an act of violence or has threatened to commit such an act' may be suspended from

24   the university and barred from its property." *Id.* at 472 n.12. As for the surcharge, it presumably

25   _____

26   [3] Despite reversing the Court of Appeal's ruling on another issue, the California Supreme Court
     expressly "d[id] not address [plaintiff]'s alternate theories of duty based on an implied-in-fact

27   contract." *Regents of Univ. of California v. Superior Ct.*, 4 Cal. 5th 607, 634 (2018).

28
     Case No. 20-CV-04045-LHK
     ORDER GRANTING MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

1   would have paid for the very mental health services that had failed to prevent the mentally ill

2   student from attacking the *Regents* plaintiff.

3         The *Regents* Court, applying *Kashmiri*, rejected plaintiff's implied contract claim. The

4   *Regents* Court analyzed each purported contractual promise in turn. First, the statements in

5   "Preventing and Responding to Violence in the UCLA Community" were "not a 'specific

6   promise' that the university would undertake a legal duty to protect its students from third party

7   misconduct." *Id.* at 471. Rather, these statements were "in the nature of a general declaration

8   expressing the importance the university places on the issue of campus safety." *Id.* (citing

9   *Kashmiri*, 156 Cal. App. 4th. At 833). Second, the Student Conduct Code's penalties for violence

10  "merely permits the university to take certain conduct in response to violent behavior; it does not

11  qualify as a specific promise to undertake a legal duty." *Id.* at 472 n.12. Lastly, the mental health

12  services surcharge also failed to "qualif[y] as a contractual obligation to protect students from

13  third party misconduct." *Id.*

14        The purported promises that Plaintiffs cite here are vaguer than those found inadequate in

15  *Regents*. In *Regents*, UCLA had (1) published a brochure titled "Preventing and Responding to

16  Violence" that "committed" UCLA to providing a safe environment for "all" students; and (2) set

17  penalties for violence or threatened violence. *Id.* at 471–72 & n.12. Still, the California Court of

18  Appeal held that UCLA's statements were not specific enough to create an implied contract. *Id.*

19  Here, Plaintiffs cite (1) classroom locations in a course catalog; (2) website advertisements about

20  "campus life"; and (3) a questionnaire asking students "whether [their] learning style is a good fit

21  for online." Opp'n at 7. None of these statements are as specific as UCLA's. None "commit" SCU

22  to in-person education; nor appear in a dedicated brochure such as "Preventing and Responding to

23  [Disruptions to In-Person Education]"; nor penalize disruptions to in-person education. At most,

24  SCU's statements are merely "a general declaration expressing the importance the university

25  places on [in-person education]." *Regents*, 193 Cal. Rptr. 3d at 471.

26        In sum, the case law shows that Plaintiffs inadequately plead a specific promise. Plaintiffs'

27  unpersuasive response relies on two inapposite district court cases. Opp'n at 6–8. In the first case,

28

United States District Court
Northern District of California

a Florida district court applying Florida contract law found plaintiff's allegations sufficient "*especially* because Florida law recognizes that the college/student contract is *typically implied* in the [school]'s publications." *Salerno v. Florida Southern College*, 2020 WL 5583522, at \*5 (M.D. Fla. Sept. 16, 2020) (emphasis added) (citing Florida law cases). By contrast, California contract law is not so expansive. An implied-in-fact contract in California requires "*specific* promises," not "general and vague declarations or promises in university publications." *Kashmiri*, 156 Cal. App. 4th at 832 (emphasis in original).[4]

The other case on which Plaintiffs rely is *Saroya v. University of the Pacific*, No. 5:20-CV-03196-EJD, 2020 WL 7013598 (N.D. Cal. Nov. 27, 2020). There, the district court did not dismiss an implied contract claim similar to the one here. *See id.* at \*5 (citing course catalogue). Yet two reasons counsel against extending *Saroya* to the instant case.

First, in *Saroya*, the parties failed to brief—and thus the court's order did not address—*Regents*, which held insufficient statements that "committed" UCLA to student safety and expressly penalized violence. *Regents*, 193 Cal. Rptr. 3d at 471; *see Saroya*, No. 5:20-CV-03196-EJD, ECF No. 31 (motion to dismiss). Moreover, *Saroya* could not have addressed *Lindner* because *Lindner* was decided after *Saroya*. *See Lindner*, 2020 WL 7350212, at \*7–9 (dismissing claim). The *Saroya* parties' briefing thus failed to highlight that "*specific* promises" must underlie implied contracts. *Kashmiri*, 156 Cal. App. 4th at 832 (emphasis in original). This failure may have shaped *Saroya*'s disposition because "[i]n our adversarial system of adjudication, we follow the principle of party presentation." *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020). By contrast, the briefing here highlights *Regents*' and *Lindner*'s applications of *Kashmiri*'s

---

[4] Because *Salerno* is inapposite, so is *Verlanga v. University of San Francisco*, a San Francisco Superior Court case cited in Plaintiffs' briefing on educational malpractice. Pls. RJN No. 1 (No. CGC-20-584829 (Nov. 12, 2020)). The *Verlanga* Superior Court relied on *Salerno* and Florida law to deny the University of San Francisco's motion to dismiss plaintiffs' implied contract claim. *Id.* at 5. As explained above, Salerno is inapposite because California law, unlike Florida law, requires "*specific* promises" for implied contracts. *Kashmiri*, 156 Cal. App. 4th at 832 (emphasis in original).

Case No. 20-CV-04045-LHK
ORDER GRANTING MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

1    "specific promises" requirement.

2        Second, in analyzing the *Saroya* plaintiff's implied contract claim, the *Saroya* Court found

3    that "[p]laintiff does not identify any express or specific promise that was breached." *Saroya*, 2020

4    WL 7013598, at *5. That lack of a "*specific* promise" is fatal to implied contract claims under

5    *Kashmiri* and its progeny. *Kashmiri*, 156 Cal. App. 4th at 832 (emphasis in original); *accord*

6    *Regents*, 193 Cal. Rptr. 3d at 471 (holding same). However, *Saroya* did not dismiss plaintiff's

7    implied contract claim. Nor did *Saroya* explain why it did not follow *Kashmiri*'s "specific

8    promise" requirement.

9        Here, the Court respectfully disagrees. California contract law provides that the lack of a

10   "specific promise" defeats Plaintiffs' implied contract claim. *Kashmiri*, 156 Cal. App. 4th at 832.

11   Thus, the Court follows California contract law and finds that Plaintiffs have not stated an implied

12   contract claim. *E.g.*, *Compania Engraw Com'l E. Ind. v. Schenley Dist. Corp.*, 181 F.2d 876, 878

13   (9th Cir. 1950) (holding, in a contract case under diversity jurisdiction, that "the rights of the

14   parties are measured according to the standards of applicable California law").

15       Accordingly, the Court GRANTS SCU's motion to dismiss Plaintiffs' breach of implied-

16   in-fact contract claim. However, the Court allows Plaintiffs leave to amend because amendment

17   would not unduly prejudice the opposing party, cause undue delay, or be futile, and Plaintiffs have

18   not acted in bad faith. *See Leadsinger*, 512 F.3d at 532.

**B.  Plaintiffs' UCL claim fails for the same reasons as their breach of implied-in-fact contract claim.**

20       Plaintiffs' second claim is that SCU violated the "unfair" prong of California's Unfair

21   Competition Law ("UCL"). *See generally Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204, 1214–15

22   (9th Cir. 2020) (describing "unfair" prong). Specifically, Plaintiffs' UCL claim is based on the

23   same facts as Plaintiffs' breach of implied-in-fact contract claim. *See* FAC ¶ 67 ("SCU violated the

24   'unfair' prong of the UCL by charging students full tuition and fees without providing the on-

25   campus services and facilities SCU was required to provide."). SCU thus argues—and Plaintiffs

26   do not dispute—that if Plaintiffs' contract claim fails for lack of a specific promise, so does

27

28   Case No. 20-CV-04045-LHK
     ORDER GRANTING MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

*United States District Court*
*Northern District of California*

1    Plaintiffs' UCL claim. *See* Opp'n at 12 (responding to SCU's argument); Reply at 10 (noting lack

2    of dispute).

3            As discussed in the prior Section, Plaintiffs' contract claim fails because Plaintiffs

4    inadequately plead a specific promise. *See* Section III-A, supra (analyzing breach of implied-in-

5    fact contract). Thus, on the briefs and record here, Plaintiffs' UCL claim fails too.

6            Accordingly, the Court GRANTS SCU's motion to dismiss Plaintiffs' UCL claim.

7    However, the Court allows Plaintiffs leave to amend because amendment would not unduly

8    prejudice the opposing party, cause undue delay, or be futile, and Plaintiffs have not acted in bad

9    faith. *See Leadsinger*, 512 F.3d at 532.

10   **C.   Because unjust enrichment is not a cause of action under California law, the Court**
         **dismisses Plaintiffs' unjust enrichment claim with prejudice.**

11

12           Plaintiffs' last claim is for unjust enrichment. FAC ¶¶ 79–86. Yet as Defendant correctly

13   argue and this Court has repeatedly held, "California does not recognize a separate cause of action

14   for unjust enrichment." *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 132–33 (N.D. Cal. 2020)

15   (collecting California and federal cases). California law is clear: "Unjust enrichment is not a cause

16   of action." *De Havilland v. FX Networks, LLC*, 21 Cal. App. 5th 845, 870 (2018) (quoting *Hill v.*

17   *Roll Int'l Corp.*, 195 Cal. App. 4th 1295, 1307 (2011)); *accord Bank of New York Mellon v.*

18   *Citibank, N.A.*, 8 Cal. App. 5th 935, 955 (2017), *as modified* (Mar. 1, 2017) (same). Thus, "courts

19   have consistently dismissed stand-alone claims for unjust enrichment." *Brodsky*, 445 F. Supp. 3d

20   at 132.

21           In response, Plaintiffs rely unpersuasively on an unpublished Ninth Circuit opinion, *Bruton*

22   *v. Gerber Products Company*, 703 F. App'x 468 (9th Cir. 2017). There, the Ninth Circuit held that

23   courts should allow an "independent claim for unjust enrichment to proceed in an insurance

24   dispute." *Id.* at 470. The Ninth Circuit then applied that insurance dispute holding to a case

25   challenging the labeling of baby food in alleged violation of Food and Drug Administration

26   ("FDA") regulations. *Id.*

27           To reach its holding, the Ninth Circuit relied on a 2015 California Supreme Court decision,

28

Case No. 20-CV-04045-LHK
ORDER GRANTING MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

United States District Court
Northern District of California

*Hartford Casualty Insurance Co. v. J.R. Marketing, LLC*, 61 Cal. 4th 988, 1000 (2015). *Hartford* "raised a narrow question" limited to "the facts of th[at] case." *Id.* at 996–97. The question in *Hartford* was whether an insurer could seek reimbursement from counsel if counsel had (1) violated a court order (2) which counsel itself had drafted (3) that expressly preserved the insurer's right to reimbursement. *Id.* at 994, 996–97. Specifically, *Hartford* asked:

> May an insurer seek reimbursement directly from counsel when, in satisfaction of its duty to fund its insureds' defense in a third party action against them, the insurer paid bills submitted by the insureds' independent counsel for the fees and costs of mounting this defense, and has done so in compliance with a court order expressly preserving the insurer's post-litigation right to recover "unreasonable and unnecessary" amounts billed by counsel?

*Id.* The California Supreme Court held that "*[u]nder the circumstances*," the insurer could "pursue a *narrow claim* for reimbursement against [counsel] under the terms of the [court] order." *Id.* at 1007–08 (emphasis added). The California Supreme Court "emphasize[d] that this conclusion is a limited one, and a particularly apposite one given the history of this litigation." *Id.* at 1007.

*Bruton* and *Hartford* are inapposite in two respects. First, subsequent California Court of Appeal decisions have recognized *Hartford*'s narrow scope. In 2019, for instance, a California Court of Appeal distinguished *Hartford* and held that plaintiff's claims for restitution were not "cognizable." *A.J. Fistes Corp. v. GDL Best Contractors, Inc.*, 38 Cal. App. 5th 677, 697 (2019), *as modified* (Aug. 13, 2019), *review denied* (Nov. 13, 2019). The *A.J. Fistes* Court recognized that *Hartford*'s unusual facts cabined its holding. Specifically, the *A.J. Fistes* Court held that "*Hartford* is inapposite. There, the [California] Supreme Court held a commercial general liability insurer could seek reimbursement directly from counsel retained to represent the insured under a court order expressly preserving the insurer's postlitigation right to recover 'unreasonable and unnecessary' fees billed by the insured's counsel." *Id.* (quoting *Hartford*, 61 Cal. 4th at 996–97).

Second, published post-*Hartford* decisions by California Courts of Appeal have confirmed that "[u]njust enrichment is not a cause of action." *De Havilland*, 21 Cal. App. 5th at 870 (quoting *Hill*, 195 Cal. App. 4th at 1307). *Hartford* was decided in 2015. As recently as May 2020, a California Court of Appeal flatly held—without objection from the California Supreme Court

16

United States District Court
Northern District of California

1    despite two petitions for review—that "summary adjudication of [an unjust enrichment] claim was

2    proper because California does not recognize a cause of action for unjust enrichment." *Hooked*

3    *Media Grp., Inc. v. Apple Inc.*, 55 Cal. App. 5th 323, 336, *reh'g denied* (June 19,

4    2020), *transferred without decision on review* (Sept. 23, 2020), *publication ordered* (Sept. 30,

5    2020), *review denied* (Dec. 31, 2020). Likewise, in 2018 and 2017, years after the *Hartford*

6    decision in 2015, other California Courts of Appeal held that "unjust enrichment is not a cause of

7    action." *De Havilland*, 21 Cal. App. 5th at 870 (quoting *Hill*, 195 Cal. App. 4th at 1307); *Bank of*

8    *New York Mellon*, 8 Cal. App. 5th at 955 (same).

9            As published Ninth Circuit precedents have long required, this Court sitting in diversity

10   "must follow the decision of the intermediate appellate courts of the state unless there is

11   convincing evidence that the highest court of the state would decide differently." *Daniel v. Ford*

12   *Motor Co.*, 806 F.3d 1217, 1222 (9th Cir. 2015) (quoting *In re Schwarzkopf*, 626 F.3d 1032, 1038

13   (9th Cir. 2010)); *accord, e.g.*, *Cmty. Nat. Bank v. Fid. & Deposit Co. of Maryland*, 563 F.2d 1319,

14   1321 n.1 (9th Cir. 1977) (same). Nothing suggests that the California Supreme Court would

15   extend *Hartford* to the instant case. Thus, this Court must follow the repeated holdings of

16   California Courts of Appeal. Because "[u]njust enrichment is not a cause of action," Plaintiffs'

17   unjust enrichment claim cannot proceed. *De Havilland*, 21 Cal. App. 5th at 870 (quoting *Hill*, 195

18   Cal. App. 4th at 1307).

19           Accordingly, the Court GRANTS SCU's motion to dismiss Plaintiffs' unjust enrichment

20   claim. Moreover, because amendment would be futile under California law, the Court dismisses

21   Plaintiffs' unjust enrichment claim with prejudice. *See Leadsinger*, 512 F.3d at 532.

22   **IV.    CONCLUSION**

23           For the foregoing reasons, the Court GRANTS SCU's motion to dismiss Plaintiffs' First

24   Amended Complaint. Specifically, the Court dismisses with leave to amend Plaintiffs' breach of

25   implied-in-fact contract claim and UCL claim. The Court dismisses with prejudice Plaintiffs'

26   unjust enrichment claim.

27           Should Plaintiffs elect to file a second amended complaint curing the deficiencies

28

United States District Court
Northern District of California

Case No. 20-CV-04045-LHK
ORDER GRANTING MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

identified herein, Plaintiffs shall do so within 30 days of the date of this order. Failure to meet the 30 day deadline to file a second amended complaint or failure to cure the deficiencies identified in this order or SCU's motion to dismiss will result in dismissal of the deficient claims with prejudice. Plaintiffs may not add new causes of action or parties without leave of the Court or stipulation of the parties pursuant to Federal Rule of Civil Procedure 15. Plaintiffs are directed to file a redlined complaint comparing the FAC to any second amended complaint as an attachment to Plaintiffs' second amended complaint.

**IT IS SO ORDERED.**

Dated: March 29, 2021

*Lucy H. Koh*
LUCY H. KOH
United States District Judge

Case No. 20-CV-04045-LHK
ORDER GRANTING MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT