**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Joel D. Smith (State Bar No. 244902)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
          jsmith@bursor.com

**BURSOR & FISHER, P.A.**
Sarah N. Westcot (State Bar No. 264916)
701 Brickell Ave., Suite 1420
Miami, FL 33131
Telephone: (305) 330-5512
Facsimile: (305) 676-9006
E-Mail: swestcot@bursor.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LILAS ABUELHAWA, KELLY WYNNE, and LEONARDO KIM, individually and on behalf of all others similarly situated,<br><br>                                        Plaintiffs,<br><br>      v.<br><br>SANTA CLARA UNIVERSITY,<br><br>                                        Defendant. | Case No. 5:20-cv-04045-LHK<br><br>**SECOND AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Lilas Abuelhawa, Kelly Wynne, and Leonardo Kim bring this action individually and on behalf of all others similarly situated against Defendant Santa Clara University (hereinafter, "SCU" or "Defendant").  Plaintiffs make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to the allegations specifically pertaining to themselves, which are based on personal knowledge.

## NATURE OF THE ACTION

1.      This is a class action lawsuit on behalf of all people who paid tuition and fees for the Spring 2020 Semester at SCU, and who, because of Defendant's response to the Novel Coronavirus Disease 2019 ("COVID-19") pandemic, lost the benefit of the education for which they paid, and/or the services for which their fees were paid.

2.      SCU is a private Jesuit university that offers more than 50 majors, minors, and special programs for law, medicine, and teaching.  Its graduate programs span business, engineering, education, counseling psychology, law, theology, and pastoral ministries.

3.      SCU operates on an academic quarter system, except for the law school, which operates on a semester system.  For purposes of this Complaint, "semester" also encompasses "quarter" and means any academic period for which Plaintiffs and putative class members paid fees but experienced a loss of service because of COVID-19.

4.      Beginning March 10, 2020, SCU suspended in-person classes and moved "to a virtual format" (i.e., online classes).  On March 16, 2020, SCU announced that classes and exams would continue to be held online until the end of the spring quarter (or in the case of law students, the spring semester).  Shortly afterwards, SCU closed all residence halls, closed campus facilities, and cancelled all on-campus events.

5.      As a result of the closure of SCU's facilities, SCU has not delivered the educational services, facilities, access and/or opportunities that Plaintiffs and putative class members paid for.

6.       SCU also failed to refund all parking fees when it closed its campus.  Thus, SCU obtained a windfall by keeping fees for parking that students could not use.

7.     SCU also has breached the implied covenant of good faith and fair dealing by denying SCU law students access to buildings and facilities at SCU's law school, while making those same law school buildings and facilities available to undergraduate students.  SCU law students are paying, through their tuition, for undergraduate students to use the law school's buildings and facilities that SCU law students are not permitted to use.

### PARTIES

8.     Plaintiff Lilas Abuelhawa is a California citizen, resides in San Jose, California, and is a full-time law student at SCU.  Plaintiff has paid substantial tuition for the Spring 2020 semester out of pocket.  Plaintiff did not choose to attend another institution of higher learning, or seek an online degree, but instead chose to attend SCU's institution and enroll on an in-person basis.

9.     Plaintiff Kelly Wynne is a California citizen, resides in San Jose, California, and is a full-time law student at SCU.  Plaintiff has paid substantial tuition for the Spring 2020 semester by utilizing student loan financing.  Plaintiff did not choose to attend another institution of higher learning, or seek an online degree, but instead chose to attend SCU's institution and enroll on an in-person basis.

10.     Plaintiff Leonardo Kim is a California citizen, resides in Santa Clara, California, and is a full-time law student at SCU.  Plaintiff has paid substantial tuition for the Spring 2020 semester either out of pocket or by utilizing student loan financing.  Plaintiff did not choose to attend another institution of higher learning, or seek an online degree, but instead chose to attend SCU's institution and enroll on an in-person basis.

11.     Defendant Santa Clara University is a private university with its principal place of business located at 500 El Camino Real, Santa Clara, CA 95053.

### JURISDICTION AND VENUE

12.     The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because at least one member of the Class, as defined below, is a citizen of a different state than Defendant, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interest and costs.

13.     This Court has personal jurisdiction over Defendant because Defendant maintains its principal place of business in this District.

14.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because many of the acts and transactions giving rise to this action occurred in this District, and because Defendant is a resident of this District.

## FACTUAL ALLEGATIONS

15.     There are hundreds, if not thousands, of institutions of higher learning in this country.

16.     Some institutions of higher learning provide curriculum and instruction that is offered on a remote basis through online programming which do not provide for physical attendance by the students.

17.     SCU's institution offers an in-person, hands-on curriculum.

18.     Plaintiffs and SCU entered into a contractual agreement where Plaintiffs would provide payment in the form of tuition and fees; and in exchange, SCU would provide in-person educational services, experiences, opportunities, and other related services.  The terms of the contractual agreement were set forth in publications from SCU, including the course catalog, online course registration portal, and registration materials listing each course a student enrolled in for Spring 2020.

19.     Except in instances where courses are assigned to first-year law students, when Plaintiffs and class members sought to enter into a contractual agreement with SCU for the provision of educational services, they viewed the online course portal to make specific course selections prior to registering and paying for selected courses.

20.     The course portal provided Plaintiffs with information regarding the courses offered, the instructor, the days and times during which the courses would be held, and the location (including the building and room number) in which courses would be held.

21.     Also, when students register for courses, they receive a course schedule, which identifies many details about the course.  If SCU offered the course on an in-person basis, the

schedule identifies the building and room number where the course is to be held.  An example of such a course schedule is shown below:

### LAW 101B - Legal Res & Writing 2

| Status | | Units | Grading | Grade | Requirement Designation | Deadlines |
|---|---|---|---|---|---|---|
| Enrolled | | 2.00 | Pass/No Pass | P | Law Core (Taken) | |

| Class Nbr | Section | Component | Days & Times | Room | Instructor | Start/End Date |
|---|---|---|---|---|---|---|
| 10198 | 05 | Lecture | TF 9:00AM - 10:15AM | Charney Hall 206 | Joan Bohl | 01/13/2020 - 04/29/2020 |

### LAW 102B - Contracts 2

| Status | | Units | Grading | Grade | Requirement Designation | Deadlines |
|---|---|---|---|---|---|---|
| Enrolled | | 3.00 | Pass/No Pass | P | Law Core (Taken) | |

| Class Nbr | Section | Component | Days & Times | Room | Instructor | Start/End Date |
|---|---|---|---|---|---|---|
| 10186 | 03 | Lecture | TTh 10:30AM - 11:45AM | Panelli Courtroom/Charney 102 | Gary Neustadter | 01/13/2020 - 04/29/2020 |

### LAW 104S - Property

| Status | | Units | Grading | Grade | Requirement Designation | Deadlines |
|---|---|---|---|---|---|---|
| Enrolled | | 4.00 | Pass/No Pass | P | Law Core (Taken) | |

| Class Nbr | Section | Component | Days & Times | Room | Instructor | Start/End Date |
|---|---|---|---|---|---|---|
| 10205 | 02 | Lecture | MTTh 1:10PM - 2:25PM | Charney Hall 104 | David Sloss | 01/13/2020 - 04/29/2020 |

22.     Hence, for example, when Plaintiff Abuelhawa enrolled in Property for the Spring Semester 2020, the course was offered on an in-person basis at room 104 of Charney Hall.  All of the other courses Ms. Abuelhawa enrolled in for Spring 2020 were designated as in-person courses, and the same holds true for Plaintiffs Wynne and Kim.  By contrast, none of the classes Plaintiffs enrolled in were identified as online courses in their class schedules.

23.     Other publications refer to the in-person nature of the Spring 2020 semester course offerings.  The SCU School of Law Student Bulletin for 2019-2020 (the "Bulletin") details policies, procedures, and expectations of the students.  That document states that "[s]tudents must

complete at least 64 credit hours in regularly scheduled class sessions *at the law school*." (Emphasis added). The Bulletin also emphasizes that "[r]egular and punctual class attendance is required of all students in all classes. Individual faculty members may utilize class attendance and punctuality in assessing grades or granting credit for a course." In addition, the Bulletin highlights the availability of certain on-campus facilities, such as the Mabie Grand Atrium (where students can reserve tables "for the sale of event tickets or to promote other activities"), and the Charney Hall Community Lounge and Terrace (which "is intended for use by law students, staff and faculty only"). SCU's cell phone policy likewise forbids bringing cell phones in classrooms or libraries unless placed in silent mode, and students are prohibited from speaking on cellphones "in either the library or classrooms."

24.     SCU's marketing heavily touts SCU's on-campus experience as a benefit and key component of enrollment. For example, on its website, SCU touts its "connected & engaged faculty," while depicting students and faculty working closely together on campus.

25.     SCU tells prospective students that its "libraries are much more than book repositories; they're inspiring spaces for research, collaboration, and reflection." In this regard, SCU describes its University Library as a "inspiring and groundbreaking place of research and learning," and touts the many facilities and services available at other libraries. SCU also touts its 40,000 square foot law library as a resource for research, conference rooms, computer labs, audio-visual services, and other features. All of that was taken away when SCU closed its campus in March 2020.

26.     An entire portion of SCU's website is titled "Campus Life," and promises that "Santa Clara offers hundreds of opportunities to pursue your interests and encounter new perspectives." SCU emphasizes the opportunity to connect and engage with people in-person, to "have a full social life and supportive network around you," and the ability to "make friends outside of the classroom."

27.     SCU's many clubs and organizations are pitched as key features of SCU's "campus life":

# Clubs & Organizations

Home › Campus Life › Clubs & Organizations

Almost every student at Santa Clara is involved in an organization on campus. Many are in two or three, or even more.

We have poet-programmers, scuba-diving mathematicians, aspiring ministers with great 3-point shots, and urban farmers with bright futures in politics.

Our student organizations give you the freedom to explore anything you're interested in, and to create a college experience that's uniquely yours:

- If student-run media is your thing—writing, reporting, reviewing, publishing—there are lots of groups you might check out, like our campus radio station, the student newspaper, and our annual literary magazine.
- If you like to exercise your body alongside your mind, you can find a recreational club or class that moves at your pace, whether you're a varsity-level athlete or just a beginner.
- Our Campus Ministry programs offer many opportunities for you to deepen your faith and connect with SCU's spiritual community.
- And if you're in a hurry to start making the world a better place, Santa Clara Community Action Program and our Thriving Neighbor's Initiative give you the chance to use your talents for good in the local community.

There are hundreds of ways to get involved at SCU, and your first stop should be the Center for Student Involvement, where you can find a group that's just right for you.

28.     SCU is a Jesuit college, and emphasizes the many on-campus opportunities for students interested in religious or spiritual activities to connect with each other:

Spiritual life on campus is something we all build together. When we bring our diverse experiences and beliefs into one place, we grow and learn together.

Santa Clara is a Jesuit, Catholic university that welcomes and celebrates the religious diversity of its students. About half of our undergraduate students are Catholic, with the other half being Protestant, Hindu, Muslim, Jewish, agnostic, students with no religious preference, and more. No matter your religious or spiritual tradition, there's something for you at Santa Clara.

## Getting Involved

Santa Clara students explore their questions and beliefs, as well as build community through popular religious studies courses, student religious clubs, programming in the residence halls, immersion programs, and a variety of Campus Ministry programs. Leadership in many of these activities provides students a space to develop professional skills and prepare for life beyond SCU.

## Sacred Spaces

There are many special places on campus where you can pray, meditate, or quietly reflect on your day, alone or with others. Enjoy a quiet and tranquil moment in any of our various sacred spaces, including the Meditation Room, the historic Mission Church, the Multifaith Sanctuary, or the tucked away St. Clare Garden.

29.     In a similar vein, SCU emphasizes that part of being a SCU student is having access to music concerts and other performing arts events, dining options, sporting events, medical facilities, and top-notch recreational facilities that allow students to participate in "your sport of choice."  Beginning in early March 2020, none of these features were available anymore.

30.     Online courses offered at SCU are distinguished from in-person courses in several ways.  For instance, when deciding what courses to take, SCU students can search for courses by the "Mode of Instruction," including whether a particular course will be given "online" or "in-person."

31.     Likewise, descriptions for courses offered for the Spring 2020 semester specify whether the courses were to be taught online.  For example, the description of the Spring 2020 course titled "Law Student Co-Op Education B," stated that students were required to attend an initial ninety-minute "in-person class session followed by online instructional sessions:"

| 10163 | 567B | Law Student Co-Op Education B S. Tesconi | 1 | See Notes | See Notes | See Notes- | This class is graded on a CR/NC basis. The course consists of an initial ninety-minute mandatory in-person class session followed by online instructional sessions. The mandatory in-person session will be held: Tuesday, January 21, from 8:30-10:00 a.m., classroom 339. Students must attend the mandatory in-person class session or they will be dropped from the class. No exceptions. After the initial in-person class session the remaining sessions will be held online throughout the spring semester. Only those international students seeking to satisfy work requirements in the United States are eligible for this course. Students must secure a permission number from the Externship Program to register for this class. |

32.     Similarly, SCU offered several "online workshops," such as the example shown here:

| 10118 | 706 | Externship Workshop R. Fletcher, T. Pina | 0 | See Notes | See Notes | See Notes- | Credit/No Credit. All students participating in an externship must register for this class. Students will receive permission numbers from ExPro to register for this online workshop. Course credit will be awarded only on satisfactory completion of both the externship and the workshop. Students must attend assigned meetings with instructor. |

//

//

//

33.     However, SCU cautioned students who were considering voluntarily taking online courses to answer 20 questions to "decide whether or not to enroll in an online course," and "whether your learning style is a good fit for online."[1]

34.     Further distinguishing online from in-person courses, SCU also offers entire degree programs that are specifically designated as "online programs."  Online programs are less expensive than the in-person programs.  For example, during the 2019-2020 year, the in-person MBA program was $21,442 per term, whereas 12 credits of the online program was approximately $13,800.  During the 2019-2020 academic year, SCU's law school offered an online MLS program, whereas the JD program was intended to be primarily in-person, with only a few online elective courses offered in that program.

35.     Before starting the Spring 2020 semester, and before paying tuition and fees, each of the Plaintiffs consulted SCU's course catalog and enrolled in courses for the Spring 2020 semester.  In consulting the course offerings, each Plaintiff understood and believed that every course in which he or she enrolled was to be taught in-person.  That understanding was based on, among other things, the fact that the registration materials specified an on-campus location where the course would be taught, and did not identify any of the courses as online courses.  Thus, the in-person nature of the courses was part of the benefit of the bargain.

36.     In March 2020, SCU closed its facilities and cancelled all in-person classes and on-campus events due to the COVID-19 pandemic.  SCU required all courses to immediately transfer to an on-line format.

37.     Some courses were cut short by up to three weeks, even though the Plaintiffs were charged for an entire semester.

38.     The sudden change to an online format, the cancellation of on-campus events, and the closure of the campus were not what SCU promised its students when it encouraged them to enroll.  These changes also were not what students bargained for when they chose to accept SCU's offers of enrollment and enrolled in classes.  As a result of the closure of Defendant's facilities, Defendant has not delivered the educational services, facilities, access and/or opportunities that

[1] https://www.scu.edu/summer/schedule-of-classes/online-classes/

Plaintiffs and the putative class contracted and paid for.  The remote learning classes were not the equivalent of the in-person education that Plaintiffs and the putative class members contracted and paid for.

39.     The transition to online learning has significantly reduced professor-student interaction and discussion-based instruction.

40.     Student access to SCU facilities, campus offices, and employment used to finance their education has reduced significantly.

41.     Access to facilities such as Charney Hall, various libraries, lockers and printers was cut off, and remains cut off today.

42.     Students asked SCU to refund portions of their tuition in light of the transition to online learning, noting that the closure of facilities and transition to online classes must have reduced the cost of operations to the school.  SCU responded by letter on May 7, 2020.  In that letter, SCU did not deny that one of the consequences of the pandemic and ensuing campus closure was a reduction in overhead costs.  Nor did SCU deny that the students' educational experiences were far from those they had bargained for.

43.     To date, no students at SCU—whether at the law school or elsewhere—have been given any compensation for the admitted loss of services resulting from the COVID-19 pandemic.

44.     All students also have not received refunds or credits for various costs, such as parking fees.  Parking passes at SCU cost $400 per year (roughly $33 per month).  When SCU shut down its campus, it charged students for parking they could not use.  When SCU closed its campus, the value of the remaining period for parking was approximately $150.  SCU told students it would provide credits, but the amounts are not uniform, or complete.  For example, SCU told Plaintiff Abuelhawa she would receive a $117 refund, and told Plaintiff Wynne she would receive a $120 credit.  They have not received these credits.

45.     Furthermore, as of the date of this complaint, SCU's policy has been and continues to be that undergraduate students may enter the campus to use its facilities and attend in-person courses.  Law students must stay at home, even though SCU requires them to pay the full tuition.

46.     Although the move to an online format resulted in inferior learning experience for students (through no fault of the faculty), that is not the basis of Plaintiffs' action.  The gravamen of this action is that Plaintiffs paid SCU for in-person classes and the availability of on-campus facilities and experiences, and did not receive what they paid for.

## CLASS ALLEGATIONS

47.     Plaintiffs seek to represent a class defined as all SCU law students who paid SCU Spring 2020 Semester tuition and/or fees for in-person educational services that SCU failed to provide, and whose tuition and fees have not been refunded (the "Class").

48.     Specifically excluded from the Class are Defendant, Defendant's officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint ventures, or entities controlled by Defendant, and their heirs, successors, assigns, or other persons or entities related to or affiliated with Defendant and/or Defendant's officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

49.     Subject to additional information obtained through further investigation and discovery, the above-described Class may be modified or narrowed as appropriate, including through the use of additional subclasses.

50.     **Numerosity.**  The members of the Class are so numerous that individual joinder is impracticable, and in any event, the Class includes more than forty people.

51.     **Existence and predominance of common questions of law and fact.**  Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual Class members.  These common legal and factual questions include, but are not limited to, the following:

(a)     whether Defendant accepted money from Class members in exchange for the promise to provide services;

(b)     whether Defendant has provided the services for which Class members contracted;

(c)     whether Class members are entitled to damages and/or restitution for services that Defendant did not provide;

52.     **Typicality.**  Plaintiffs' claims are typical of the claims of the other members of the Class in that, among other things, all Class members were similarly situated and were comparably injured through Defendant's wrongful conduct as set forth herein.  Further, there are no defenses available to Defendant that are unique to Plaintiffs.

53.     **Adequacy of Representation.**  Plaintiffs will fairly and adequately protect the interests of the Class.  Plaintiffs have retained counsel that is highly experienced in complex consumer class action litigation, and Plaintiffs intend to vigorously prosecute this action on behalf of the Class.  Plaintiffs have no interests that are antagonistic to those of the Class.

54.     **Superiority.**  A class action is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual Class members are relatively small compared to the burden and expense of individual litigation of their claims against Defendant.  It would, thus, be virtually impossible for the Class to obtain effective redress for the wrongs committed against them on an individual basis.  Furthermore, even if Class members could afford such individualized litigation, the court system could not.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

55.     In the alternative, the Class may also be certified because:

(a)     the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the Defendant;

(b)     the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

(c)     Defendant has acted or refused to act on grounds generally applicable to the Class as a whole, thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

## COUNT I
### Breach Of Contract

56.     Plaintiffs hereby incorporate by reference all allegations herein.

57.     Plaintiffs bring this claim individually and on behalf of the members of the Class against Defendant.

58.     An implied-in-fact contract is created by the students' conduct when they accept SCU's offer of enrollment.  Since a formal contract with all material terms is not prepared between the student and the institution of higher learning, the general nature and terms of the agreement are implied, with specific terms to be found in other publications promulgated by SCU.  The implied contractual terms at issue here stand on equal footing with express terms.

59.     Plaintiffs and class members on the one hand, and SCU on the other, entered into a contractual relationship where Plaintiffs and class members would provide payment in the form of tuition and fees, and SCU, in exchange, would provide in-person educational services, experiences, opportunities, and other related services.

60.     Plaintiffs and class members fulfilled their end of the bargain when they paid monies due for Spring 2020 tuition and other fees.  Tuition and fees for Spring 2020 was intended to cover in-person educational services.  In exchange for monies paid, Plaintiffs and class members were entitled to in-person educational services through the end of the 2019-2020 academic year.

61.     SCU materially breached the parties' contractual agreement by failing to provide in-person services as set forth above.  Defendant has retained monies paid by Plaintiffs and class members for their Spring 2020 tuition and fees, without providing them the benefit of their bargain.

62.     SCU also has breached and continues to breach the implied covenant of good faith and fair dealing by denying SCU law students access to on-campus law school facilities and buildings, while making those same law school facilities and buildings available to undergraduate students.  This policy prevents Plaintiffs and Class members from receiving the full benefits of

their contract and is unfair because the facilities and buildings that Plaintiffs and Class members pay for are made available to non-law students.

63. SCU also breached an implied contract to provide parking. When SCU shut down its campus, students who paid for a $400 parking pass were denied the benefit of their bargain. Plaintiffs Abuelhawa and Wynne paid $400 for a year-long parking pass. In exchange, SCU was to provide a year of on-campus parking. As a result of closure, SCU did not provide a year of on-campus parking.

64. Plaintiffs and class members have suffered damage as a direct and proximate result of Defendant's breach, including but not limited to being deprived of the in-person education, experience, and services to which they were promised and for which they have already paid.

65. As a direct and proximate result of SCU's breach, Plaintiffs and class members are entitled to damages, to be decided by the trier of fact in this action, to include but not be limited to reimbursement of certain tuition, fees, and other expenses that were collected by SCU for services that SCU failed to deliver. SCU should return the pro-rated portion of any Spring 2020 tuition and fees for education services not provided from the time that SCU discontinued in-person classes and shut down its facilities, as well as for later semesters.

66. SCU's performance under the contract is not excused due to COVID-19. Even if performance was excused or impossible, SCU would nevertheless be required to return the funds received for services it did not provide.

67. Plaintiffs seek damages for SCU's breach of contract.

## COUNT II
### Violation of Business and Professions Code
### §§ 17200 et seq.

68. Plaintiffs hereby incorporate by reference all allegations contained herein.

69. Plaintiffs bring this claim individually and on behalf of the members of the Class against Defendant.

70. The conduct of SCU, as herein alleged, constitutes an unfair business practice within the meaning of Bus. & Prof. Code §§ 17200, et seq. ("UCL")

71.     SCU violated the "unfair" prong of the UCL by charging students full tuition and fees without providing the on-campus services and facilities SCU was required to provide.  The utility of refusing tuition and fee reimbursements is significantly outweighed by the gravity of the harm that policy imposes on students.  By refusing to reimburse students, SCU has been unjustly enriched.  SCU's refusal to provide partial tuition or fee reimbursements also violates the "unfair" prong of the UCL because it is oppressive, unscrupulous or substantially injurious to students.

72.     SCU also violated the "unlawful" and "unfair" prongs of the UCL by violating Cal. Education Code § 94897(d), which provides that an institution of postsecondary education shall not "[a]dvertise, or indicate in promotional material, without including the fact that the educational programs are delivered by means of distance education if the educational programs are so delivered."  In deciding to accept SCU's offer of enrollment and in selecting courses for Fall 2020, each Plaintiff relied on SCU's representations that on-campus training would be provided.

73.     Plaintiffs and class members have suffered an injury in fact resulting in the loss of money or property as a result, inter alia, of paying full tuition for SCU enrollment, and any related fees, without receiving the benefits of in-class learning, campus facilities, and on-campus events.

74.     Plaintiffs seek all available relief under the UCL.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

A.     For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as the representatives for the Class and Plaintiffs' attorneys as Class Counsel;

B.     For an order declaring the SCU's conduct violates the statutes and common law claims referenced herein;

C.     For an order finding in favor of Plaintiffs and the Class on all counts asserted herein;

D.     For compensatory damages and/or restitution in amounts to be determined by the Court and/or jury;

E.     For prejudgment interest on all amounts awarded;

F.   For injunctive relief as pleaded or as the Court may deem proper; and

G.   For an order awarding Plaintiffs and class members their reasonable attorneys' fees and expenses and costs of suit.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable of right.

Dated:  April 27, 2021                  **BURSOR & FISHER, P.A**.

By:  ___*/s/ Joel D. Smith*_____
                          Joel D. Smith

L. Timothy Fisher (State Bar No. 191626)
Joel D. Smith (State Bar No. 244902)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: ltfisher@bursor.com
          jsmith@bursor.com

**BURSOR & FISHER, P.A.**
Sarah N. Westcot (State Bar No. 264916)
701 Brickell Ave., Suite 1420
Miami, FL 33131
Telephone: (305) 330-5512
Facsimile:  (305) 676-9006
E-Mail: swestcot@bursor.com

*Attorneys for Plaintiffs*