1   KAREN G. JOHNSON-MCKEWAN (STATE BAR NO. 121570)
    kjohnson-mckewan@orrick.com
2   SARAH K. MULLINS (STATE BAR NO. 324558)
    sarahmullins@orrick.com
3   ORRICK, HERRINGTON & SUTCLIFFE LLP
    The Orrick Building, 405 Howard Street
4   San Francisco, CA  94105-2669
    Telephone:     +1 415 773 5700
5   Facsimile:     +1 415 773 5759

6   Attorneys for Defendant
    SANTA CLARA UNIVERSITY

7

8

9

10                      UNITED STATES DISTRICT COURT

11                   NORTHERN DISTRICT OF CALIFORNIA

12

13   LILAS ABUELHAWA, KELLY WYNNE,          Case No. 5:20-cv-04045-LHK
     and LEONDARDO KIM, individually and on
14   behalf of all others similarly situated,   **DEFENDANT SANTA CLARA**
                                                 **UNIVERSITY'S NOTICE OF MOTION &**
                    Plaintiffs,                  **MOTION TO DISMISS PLAINTIFFS'**
15                                               **SECOND AMENDED COMPLAINT;**
            v.                                   **MEMORANDUM OF POINTS AND**
16                                               **AUTHORITIES IN SUPPORT THEREOF**

17   SANTA CLARA UNIVERSITY,                 Date: October 14, 2021
                                             Time: 1:30 pm
18                  Defendant.               Courtroom: 8

19                                           Action Filed: June 1, 2020

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES ................................................................................................. ii

I.      INTRODUCTION ................................................................................................. 2

II.     FACTUAL AND PROCEDURAL BACKGROUND ........................................... 2

        A.      Procedural History ................................................................................... 3

        B.      Relevant Facts ......................................................................................... 4

                1.      Applicable Restrictions On On-Campus Activities In Spring 2020 .......... 4

                2.      Applicable "No Refund" Language ............................................ 5

                3.      Parking Refunds And Credits Issued To Students Who Had Parking
                        Permits In Spring 2020 ................................................................ 6

III.    LEGAL STANDARD .......................................................................................... 9

IV.     ARGUMENT ....................................................................................................... 9

        A.      Plaintiffs' Recycled Breach Of Contract Claim Must Be Dismissed. ................... 9

        B.      Plaintiffs' Parking-Related Breach Of Contract Claim Must Be Dismissed. ....... 12

                1.      Plaintiffs' Parking-Related Breach Of Contract Claim Is Moot. ............. 12

                2.      Plaintiffs Have Failed To State A Claim For Breach Of An Implied
                        Parking Contract ........................................................................ 14

        C.      Plaintiffs Have Failed To State A Claim For Breach Of The Implied
                Covenant Of Good Faith And Fair Dealing. ........................................ 15

                1.      Plaintiffs' Good Faith And Fair Dealing Claim Is Duplicative Of Its
                        Breach Of Contract Claim ............................................................ 15

                2.      Plaintiffs Have Failed To Plead Facts Establishing That SCU
                        Unfairly Interfered With Plaintiffs' Rights To Receive Contractual
                        Benefits. .................................................................................... 16

        D.      Plaintiffs Have Failed To State A Claim For A Violation Of The UCL. .............. 19

        E.      Further Amendment Would Be Futile And Cause Prejudice To SCU ................. 20

V.      CONCLUSION .................................................................................................. 21

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*AIIRAM LLC v. KB Home*,
   No. 19-CV-00269-LHK, 2019 WL 3779185 (N.D. Cal. Aug. 12, 2019)...................................15

*Am. Diabetes Ass'n v. United States Dep't of the Army*,
   938 F.3d 1147 (9th Cir. 2019).....................................................................................................6

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).....................................................................................................................9

*Beck v. Manhattan Coll.*,
   No. 20 CIV. 3229 (XLS), 2021 WL 1840864 (S.D.N.Y. May 7, 2021)...................................11

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).....................................................................................................................9

*Brodsky v. Apple Inc.*,
   445 F. Supp. 3d 110 (N.D. Cal. 2020) .........................................................................................9

*Chen v. Allstate Ins. Co.*,
   819 F.3d 1136 (9th Cir. 2016)...................................................................................................12

*Church of Scientology of Cal. v. United States*,
   506 U.S. 9 (1992).......................................................................................................................12

*Crawford v. Presidents & Dirs. of Georgetown Coll.*,
   No. 20-CV-1141 (CRC), 2021 WL 1840410 (D.D.C. May 7, 2021) .......................................11

*Forest Guardians v. Johanns*,
   450 F.3d 455 (9th Cir. 2006)......................................................................................................12

*Giron v. Wells Fargo Bank, N.A.*,
   No. 2-14-cv-02437-ODW(VBKx), 2014 WL 12589628 (C.D. Cal. May 27,
   2014) ..........................................................................................................................................17

*Goldberg v. Pace Univ.*,
   No. 20 CIV. 3665 (PAE), 2021 WL 1565352 (S.D.N.Y. Apr. 21, 2021)..................................11

*Hadley v. Kellogg Sales Co.*,
   No. 16-CV-04955-LHK, 2019 WL 3804661 (N.D. Cal. Aug. 13, 2019)..................................10

*Hadley v. Kellogg Sales Co.*,
   No. 16-CV-04955-LHK, 2020 WL 3246335 (N.D. Cal. May 28, 2020) ..................................10

*Hall v. City of Los Angeles*,
  697 F.3d 1059 (9th Cir. 2012)..................................................................................10

*Hamilton v. General Mills, Inc.*,
  No. 6:16-cv-382-MC, 2016 WL 6542840 (D. Or. Nov. 2, 2016)............................13

*Hernandez v. Illinois Inst. of Tech.*,
  No. 20-CV-3010, 2021 WL 1600171 (N.D. Ill. Apr. 23, 2021) ..............................11

*Hickey v. Univ. of Pittsburgh*,
  No. 2:20-CV-690, 2021 WL 1630579 (W.D. Pa. Apr. 27, 2021)..............................11

*Larson v. Cate*,
  No. C 12-3773 LHK PR, 2013 WL 1502024 (N.D. Cal. Apr. 11, 2013) ...................2

*Lepkowski v. CamelBak Prods., LLC*,
  No. 19-CV-04598-YGR, 2019 WL 6771785 (N.D. Cal. Dec. 12, 2019) ..................12

*Main v. Gateway Genomics, LLC*,
  No. 15CV2945 AJB (WVG), 2016 WL 7626581 (S.D. Cal. Aug. 1, 2016) ..............13

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
  519 F.3d 1025 (9th Cir. 2008)....................................................................................9

*Nance v. Miser*,
  No. CV 14-00500-PHX-SMM, 2018 WL 10667052 (D. Ariz. Apr. 3, 2018),
  *aff'd*, 768 F. App'x 742 (9th Cir. 2019).....................................................................6

*Robinson v. Nationstar Mortg.*,
  No. CV 14-8282 PSG (ASX), 2015 WL 13651767 (C.D. Cal. Apr. 16, 2015)........16

*Rosenfeld v. JPMorgan Chase Bank, N.A.*,
  732 F. Supp. 2d 952 (N.D. Cal. 2010) ...............................................................16, 18

*Ryan v. Microsoft Corp.*,
  147 F. Supp. 3d 868 (N.D. Cal. 2015) ......................................................................20

*Safe Air for Everyone v. Meyer*,
  373 F.3d 1035 (9th Cir. 2004).....................................................................................9

*Snapkeys, Ltd. v. Google LLC*,
  442 F. Supp. 3d 1196 (N.D. Cal. 2020) ....................................................................15

*Telesaurus VPC, LLC v. Power*,
  623 F.3d 998 (9th Cir. 2010)....................................................................................20

*Tosh-Surryhne v. Abbott Labs. Inc.*,
  No. CIV S-10-2603 KJM, 2011 WL 4500880 (E.D. Cal. Sept. 27, 2011) ..............13

*Vavak v. Abbott Labs. Inc.*,
   No. SACV 10-1995 JVS (RZx), 2011 WL 10550065 (C.D. Cal. June 17, 2011) ...................13

*Washington v. Sandoval*,
   No. C 10-0250 LHK PR, 2011 WL 2039687 (N.D. Cal. May 24, 2011) ...............................10

*White v. Lee*,
   227 F.3d 1214 (9th Cir. 2000) .................................................................................................9

**State Cases**

*Berryman v. Merit Property Mgmt., Inc.*,
   152 Cal. App. 4th 1544 (2007).............................................................................................19

*Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*,
   222 Cal. App. 3d 1371 (1990).............................................................................................15

*Jenkins v. JPMorgan Chase Bank, N.A.*,
   216 Cal. App. 4th 497 (2013), *disapproved of on other grounds by, Yvanova v.
   New Century Mortg. Corp.*, 62 Cal. 4th 919 (2016) ...................................16, 17, 18

*Kashmiri v. Regents of Univ. of California*,
   156 Cal. App. 4th 809 (2007).............................................................................................18

*Pasadena Live v. City of Pasadena*,
   114 Cal. App. 4th 1089 (2004).............................................................................................16

**Statutes**

Cal. Bus. & Profs. Code §§ 17200 et seq. ............................................................... passim

Cal. Civ. Code § 1636 .....................................................................................................18

Cal. Educ. Code § 66010(b) ............................................................................................20

Cal. Educ. Code § 94874(g) ............................................................................................19

Cal. Educ. Code § 94874.2 ..............................................................................................20

Cal. Educ. Code § 94897 ....................................................................................................4

Cal. Educ. Code § 94897(d) ...............................................................................18, 19, 20

**Rules**

Fed. R. Civ. P. 12(b)(1).............................................................................1, 6, 9, 12

Fed. R. Civ. P. 12(b)(6).................................................................................................1, 9

N.D. Cal. Civil Local Rule 7-9 ........................................................................................10

MOTION TO DISMISS 2ND AMENDED COMPLAINT
5:20-cv-04045-LHK

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# NOTICE OF MOTION AND MOTION

TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA AND TO ALL PARTIES AND THEIR COUNSEL OF RECORD: PLEASE TAKE NOTICE that on October 14, 2021 at 1:30 pm in Courtroom 8 at 280 South 1st Street, 4th Fl., San Jose, CA 95113, Defendant Santa Clara University ("SCU") will and hereby does move to dismiss all claims in the Second Amended Complaint ("SAC") filed in this action by Plaintiffs Lilas Abuelhawa, Kelly Wynne, and Leonardo Kim ("Plaintiffs").  This Motion is based on this Notice, the following Memorandum of Points and Authorities, the Declarations of Sarah Mullins, Millicent Kenney, Shannon Wang, and Suzette Calderon, SCU's prior motion to dismiss submissions, and the Request for Judicial Notice filed herewith, any further argument as may be submitted in connection with this Motion, and any other material the Court deems proper and just.

Plaintiffs' claims must be dismissed because they (1) are identical to claims this Court has previously dismissed; (2) are moot because the Plaintiffs and the proposed class have already received the relief they are requesting; or (3) fail to state a cognizable claim for relief.  SCU thus asks this Court for an order, under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, dismissing all claims filed in this action by Plaintiffs against SCU in their entirety, with prejudice.

1    **I.    INTRODUCTION**

2    By granting Defendant Santa Clara University's ("SCU") motion to dismiss with leave to

3    amend, this Court invited Plaintiffs to identify a specific promise to provide in-person services.

4    ECF 49 at 14.  Plaintiffs have declined the Court's invitation.  Rather than fill the factual gaps the

5    Court identified in Plaintiffs' original claims, the Second Amended Complaint ("SAC") rehashes

6    nearly all of Plaintiffs' old allegations.  The new allegations pertain to new theories.  Specifically,

7    Plaintiffs now take issue with parking refunds that they have already received, assert a duplicative

8    good faith and fair dealing claim, and bring a new Unfair Competition Law ("UCL") claim based

9    on a statute from which SCU is exempt.

10    Plaintiffs' new claims are either moot or fail to state a claim upon which relief can be

11    granted.  Plaintiffs' parking-related claim is moot because they already have the credits and

12    refunds they seek.  Even if the claims were not moot, they are barred by SCU's Parking &

13    Transportation Plan.  That Plan precludes any refunds more than 30 days after purchase.  The

14    refunds SCU provided were voluntary, and not a contractual obligation.  Plaintiffs' claim for

15    breach of the implied covenant of good faith and fair dealing should be dismissed because it is

16    duplicative of their breach of contract claim and because Plaintiffs have failed to tie the claim to a

17    specific contractual provision or purpose.  And Plaintiffs' new UCL claim fails because it is

18    based on a violation of a statute from which SCU is exempt.

19    In short, the Plaintiffs' complaint should be dismissed again, this time without leave to

20    amend.  Having failed to identify allegations that can support their claims for a second time,

21    "further leave to amend would be futile."  *Larson v. Cate*, No. C 12-3773 LHK PR, 2013 WL

22    1502024, at *1 (N.D. Cal. Apr. 11, 2013).

23    **II.    FACTUAL AND PROCEDURAL BACKGROUND**

24    Much of the relevant factual background regarding the COVID-19 pandemic, state and

25    local public health emergency orders, and SCU's actions in response to the pandemic is already

26    detailed in SCU's previous motion to dismiss and this Court's order granting that motion.  *See*

27    ECF 32 at 3-6; ECF 49 at 1-5.  SCU discusses the procedural history of this case and facts

28    relevant to Plaintiffs' new allegations below.

MOTION TO DISMISS 2ND AMENDED COMPLAINT
                                                                       5:20-cv-04045-LHK

### A.     Procedural History

Plaintiffs allege they are three law students who were enrolled at SCU in the Spring 2020 semester.  They originally filed their complaint in June 2020, seeking to represent a class of all Spring 2020 SCU students, alleging that SCU (1) breached an implied-in-fact contract between SCU and its students; (2) violated California's UCL, Cal. Bus. & Profs. Code §§ 17200 et seq.; (3) converted Plaintiffs' and the Class's "ownership right to … in-person educational services"; and (4) was unjustly enriched by retaining tuition and fees for services that it was required to provide but had not provided.  ECF 1 at ¶¶ 46-75.  After SCU filed its first motion to dismiss, Plaintiffs filed the First Amended Complaint ("FAC").  ECF 25.  The FAC retained the same causes of action as the original complaint but added some factual allegations.  *Compare* ECF 1 *with* ECF 25.

SCU filed its second motion to dismiss on November 9, 2020.  ECF 32.  In their opposition to SCU's second motion to dismiss, Plaintiffs abandoned all of their claims with respect to SCU students who were on the quarter system in Spring 2020 (approximately 90% of the original proposed class); ECF 33, n.3, their claim for conversion, *id.* at 2, and their claim that SCU's conduct was "unlawful" under the UCL, *id.*  The only members remaining in Plaintiffs' proposed class following the abandonment were law students and graduate students in SCU's Jesuit School of Theology.

This Court subsequently granted SCU's second motion to dismiss on March 29, 2021.  ECF 49.  This Court dismissed Plaintiffs' breach of contract claim, with leave to amend, because Plaintiffs had failed to plead a *specific* promise that SCU breached.  *Id.* at 8-14.  The Court held that the statements Plaintiffs pointed to in SCU's course catalog and the "campus life" pages of its website were, at most, "general promises and expectations."  *Id.* at 8.  None constitutes "a 'definite[], specific[ ], or explicit' promise that SCU would continue on-campus instruction despite a global pandemic."  *Id.*  Because Plaintiffs' unfairness-based UCL claim was predicated entirely on the same facts as Plaintiffs' breach of contract claim, this Court dismissed that claim, with leave to amend.  *Id.* at 14-15.  This Court also dismissed Plaintiffs' unjust enrichment claim with prejudice, because unjust enrichment is not a cause of action under California law.  *Id.* at 15-17.

Plaintiffs filed the SAC on April 27, 2021, narrowing the proposed class again to just law

1   students who attended SCU in Spring 2020.  ECF 52 at ¶ 47.  The allegations in the SAC are nearly

2   identical to those in the FAC—Plaintiffs have added just three paragraphs of new factual

3   allegations.  *See* ECF 53 at ¶¶ 6, 7, 44.  Plaintiffs now bring two claims: breach of contract and

4   violation of the UCL.  ECF 52 at ¶¶ 56-74.

5        Plaintiffs' breach of contract claim is largely based on the same allegations that this Court

6   previously concluded were not "specific" promises that could form the basis of such a claim.

7   However, Plaintiffs now advance two new breach theories.  First, they allege that SCU "breach[ed]

8   the implied covenant of good faith and fair dealing by denying SCU law students access to

9   on-campus law school facilities and buildings, while making those same law school facilities and

10  buildings available to undergraduate students." *Id.* at ¶¶ 7, 45.  Second, Plaintiffs allege that SCU

11  breached an implied contract to provide parking, that SCU "charged students for parking they could

12  not use," and that SCU has not provided students with credits or refunds for Spring 2020 parking

13  permits.  *Id.* at ¶¶ 6, 44.

14       Plaintiffs' UCL claim now has two theories.  First, they repeat their previous allegation that

15  SCU violated the UCL's "unfair" prong by "charging students full tuition and fees without

16  providing the on-campus services and facilities that SCU was required to provide."  *Id.* at ¶ 71.

17  Second, Plaintiffs allege that SCU violated both the "unfair" and "unlawful" prongs of the UCL by

18  violating California Education Code section 94897, which provides that a private postsecondary

19  institution may not "[a]dvertise … without including the fact that the educational programs are

20  delivered by means of distance education if the educational programs are so delivered." *Id.* at ¶ 72.

21       **B.    Relevant Facts**

22            **1.    Applicable Restrictions On On-Campus Activities In Spring 2020**

23       Although some on-campus activities have been able to resume recently, *see* ECF 52 at ¶ 62

24  (referencing undergraduate students having class in the law school building), SCU was not able to

25  hold classes on campus during the Spring 2020 semester following the March 16, 2020 shelter-in-

26  place order issued by the Santa Clara County Health Officer.  The order directed all businesses,

27  government entities, and individuals to cease non-essential activities and operations at physical

28  locations.  RJN No. 10.  Under the terms of the order, educational institutions like SCU could

remain open solely "for purposes of facilitating distance learning or performing essential functions," not engaging in ordinary classroom and campus activities. *Id.* at §10(f)(xi). The order originally expired on April 7, 2020, but was extended twice until May 31, 2020, with the terms prohibiting ordinary classroom and on-campus activities remaining in place. *See* RJN No. 11 §§ 5, 13(f)(xv); RJN No. 12 §§ 5, 16(f)(xiv).

## 2.   **Applicable "No Refund" Language**

The SAC does not address the refund language contained in SCU's financial terms and conditions, the SCU Law School Student Bulletin, or SCU's Parking & Transportation Plan. Plaintiffs again admit that they "sought to enter into a contractual agreement with SCU for the provision of educational services" when they "viewed the online course portal to make specific course selections." ECF 52 at ¶ 19. When students access the course portal, they are "required to accept the financial terms and conditions outlined by the University in order to begin and continue their enrollment at SCU." RJN No. 1. Those "financial terms and conditions" state:

> I accept full responsibility to pay all tuition, room and board, fees, and other associated costs as a result of enrollment at Santa Clara University…. I have reviewed the published tuition refund schedule at www.scu.edu/bursar/refund and understand that if I drop or withdraw from some or all of the classes for which I enroll, I will be responsible for paying all or a portion of tuition and fees in accordance with the University's tuition refund schedule…. I have read the above and agree to assume all financial responsibility associated with my enrollment at Santa Clara University.

RJN No. 2. Plaintiffs also cite the SCU School of Law Student Bulletin in the SAC, without acknowledging the section that provides that "[n]o tuition refunds are made because of curtailed services resulting from strikes, acts of God, civil insurrection, riots or threats thereof, or other causes beyond the control of the University." RJN No. 4.

Plaintiffs further ignore relevant language in SCU's Parking & Transportation Plan (the "Parking Plan"). Students who choose to buy a parking permit must agree to abide by the Parking Plan. The Parking Plan makes clear what students are buying when they purchase a permit: "permission to park in designated areas on campus and on University lands." RJN No. 5 § 2.4. Parking permits are "not a guarantee that [students] will always be able to find a space in a specific

MOTION TO DISMISS 2ND AMENDED COMPLAINT
5:20-cv-04045-LHK

location."  *Id.*  Further, SCU expressly "reserves the right to change the parking regulations at any time" in the Parking Plan.  *See id.* at § 6.7.

Annual parking permits cost $400 and are valid July 1 through June 30th.  *See id.* § 4.1.1. Section 4.9 of the Parking Plan provides, "No refunds of any parking permit fees will be granted after 30 days from the date of purchase.  If the refund is deemed appropriate, the refund will be based on time used and the published fee schedule."  *Id.* at § 4.9.

### 3.  Parking Refunds And Credits Issued To Students Who Had Parking Permits In Spring 2020

Despite the unambiguous language in the Parking Plan providing that students are not entitled to refunds for parking permits more than 30 days after purchase, SCU decided to issue credits to students who requested one.  Kenney Decl. ¶ 4-7; Wang Decl. ¶¶ 5-6.  Plaintiffs' parking-related breach of contract claim is thus moot, allowing for consideration of the declarations that accompany this motion to dismiss.  *See Am. Diabetes Ass'n v. United States Dep't of the Army*, 938 F.3d 1147, 1151 (9th Cir. 2019) (holding that when a "defendant brings a factual jurisdictional attack under Rule 12(b)(1) [arguing a claim is moot], the court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment" (internal quotation marks omitted)); *Nance v. Miser*, No. CV 14-00500-PHX-SMM, 2018 WL 10667052, at *3 (D. Ariz. Apr. 3, 2018), *aff'd*, 768 F. App'x 742 (9th Cir. 2019) ("Because a mootness defense equates to a lack of subject-matter jurisdiction defense under Federal Rule 12(b)(1), … the Court is 'free to weigh the evidence and satisfy itself as to the existence of its power to hear the case' so long as the evidence it considers does not implicate the merits of the underlying claim.").

The cost of a parking permit at SCU varies depending on the length of the permit, the time of day when it is valid, and the parking lots it permits a student to park in.  The table below contains information about the cost of SCU's parking permits in Spring 2020:

|  | **Annual Permit**<br>(Valid from July 1-June 30) | **Semi-Annual Permit**<br>(Valid for two quarters) |
|---|---|---|
| **Full Fee** | $400 | $280 |
| **Reduced Fee & Residential** | $260 | $185 |
| **Evening Only** | $200 | $140 |
| **Motorcycle** | $95 | n/a |

1    *Id.* ¶ 5.

2         Beginning in April 2020, SCU allowed students who purchased a parking permit for use in

3    Spring 2020 to submit a form to request a credit.  *Id.* ¶ 6.  SCU's Parking & Transportation office

4    then issued credits for use toward a future parking permit to all students who had requested one.

5    *Id.* ¶ 7.   The credits were calculated based on the date the permit was purchased and SCU's

6    published parking permit fee schedule.  *Id.*  The table below shows the credit amounts based on the

7    amount of time students held their permits when SCU closed campus facilities on March 16, 2020:

| Permit | Time Held | Amount of Credit |
|---|---|---|
| **Annual Full Fee Permit** | Less than 6 months | $120 |
| | 6-8 months | $50 |
| | More than 8 months | $0 |
| **Annual Reduced Fee Permit** | Less than 6 months | $75 |
| | 6-8 months | $35 |
| | More than 8 months | $0 |
| **Annual Evening Permit** | Less than 6 months | $60 |
| | 6-8 months | $25 |
| | More than 8 months | $0 |
| **Semi-Annual Full Fee Permit** | Less than 3 months | $100 |
| | More than 3 months | n/a |
| **Semi-Annual Reduced Fee Permit** | Less than 3 months | $65 |
| | More than 3 months | n/a |
| **Semi-Annual Evening Permit** | Less than 3 months | $50 |
| | More than 3 months | n/a |
| **Motorcycle Permit** | n/a | $15 |

26   *Id.*  Students who purchased an annual, full-fee permit for $400 who held the permit for six months

27   or less received a credit of $120, equal to the amount paid in excess what they would have paid for

28   a $280 semi-annual, full-fee permit.  *Id.*

Motion to Dismiss 2ND Amended Complaint
5:20-cv-04045-LHK

Law students who submitted the credit/refund request form in Spring 2020 were notified regarding the amount of the credit they would be receiving on June 11, 2020. *Id.* at ¶ 8. Plaintiffs Abuelhawa and Wynne submitted credit/refund requests and both received notifications on June 11, 2020. *Id.* Plaintiff Kim did not have a parking permit during Spring 2020 and thus did not receive any credits or refunds. *Id.* at ¶ 10. Abuelhawa received a credit of $50 because she had purchased her parking permit on August 7, 2019 and Wynne received a credit of $120 because she had purchased her parking permit on September 21, 2019. *Id.* at ¶ 8. If a student has a credit in her Parking & Transportation account upon graduation, the amount of the credit gets transferred to her student financial account, administered by the bursar's office, and ultimately refunded to the student if she does not have a balance due on her bursar account. *Id.* at ¶ 9; Calderone Decl. at ¶ 3.

SCU's law school later decided to give students who had received less than a full pro rata credit an additional credit. Wang Decl. ¶ 5. This additional credit was designed to make up the difference between the amount students had received from Parking & Transportation and a full, pro-rata refund for the period from mid-March (when campus facilities were closed) to the end of June (when the permits expired). *Id.* The law school calculated the total amount of the credit for permit holders as follows: $Cost\ of\ Permit \times \frac{3.5\ mo}{Permit\ Length\ (mo)} = Amount\ of\ Refund$. *Id.* It then determined the difference between that amount and the amount of the credits students had received from Parking & Transportation, and issued credits to students' financial accounts maintained by the bursar's office to make up the difference. *Id.* at ¶ 6. Plaintiff Abuelhawa received a $67 credit. *Id.* at ¶ 7. She had purchased a $400 parking permit and thus the amount of a full, prorated refund was $117 ($400 \times \frac{3.5\ mo}{12\ mo}$). *Id.* The $67 credit she received from the law school made up the difference between that amount and the $50 credit she had already received from Parking & Transportation. *Id.* Plaintiff Wynne did not receive an additional credit from the law school because she had already received a $120 credit from SCU's Parking & Transportation Office. *Id.* at ¶ 8. The law school's credits were issued on March 25, 2021 and students, including Abuelhawa, were notified via email about the credits on April 23, 2021, several days before they filed the SAC. *Id.* at ¶¶ 6-7. When a student has a credit in his or her bursar account, he or she can request a refund of that amount via check or direct deposit by following the instructions on the

MOTION TO DISMISS 2ND AMENDED COMPLAINT
5:20-cv-04045-LHK

1  bursar's website.  Calderone Decl. ¶ 3.  Abuelhawa's $67 credit has since been applied to her

2  summer 2021 tuition charges.  *Id.* at ¶ 5.

3  **III.   LEGAL STANDARD**

4        To survive a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must plead sufficient

5  factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*,

6  550 U.S. 544, 570 (2007); *accord Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 121 (N.D. Cal. 2020).

7  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw

8  the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*,

9  556 U.S. 662, 678 (2009); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th

10  Cir. 2008).  However, "the tenet that a court must accept as true all of the allegations contained in

11  a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of

12  action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

13        Under Rule 12(b)(1), a party may move to dismiss a complaint for lack of subject-matter

14  jurisdiction based either on the face of the complaint or as a factual matter.  "In resolving a factual

15  attack on jurisdiction, the district court may review evidence beyond the complaint without

16  converting the motion to dismiss into a motion for summary judgment….  The court need not

17  presume the truthfulness of the plaintiff's allegations." *Safe Air for Everyone v. Meyer*, 373 F.3d

18  1035, 1039 (9th Cir. 2004).  Once the party seeking to dismiss a complaint has presented evidence

19  disputing the allegations in the complaint under Rule 12(b)(1), "the party opposing the motion must

20  furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter

21  jurisdiction." *Id.* (citation omitted).  Because mootness pertains to a federal court's subject-matter

22  jurisdiction, mootness arguments "are properly raised in a motion to dismiss under Federal Rule of

23  Civil Procedure 12(b)(1)." *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).

24  **IV.   ARGUMENT**

25        **A.   Plaintiffs' Recycled Breach Of Contract Claim Must Be Dismissed.**

26        The vast majority of the SAC realleges the very same allegations that this Court previously

27  rejected as insufficient to state a claim for breach of contract or for a violation of the UCL.  ECF

28  49.  The allegations in paragraphs 1-5, 8-43, 46, 56-61, 64-71, and 73-74 of the SAC are carried

Motion to Dismiss 2ND Amended Complaint
5:20-cv-04045-LHK

1    over from the FAC without any material changes.  *See* ECF 53.  Plaintiffs have not identified *any*

2    additional promises that SCU made to provide in-person instruction or services.  Instead, they have

3    alleged new breach of contract theories based on an agreement to provide on-campus parking and

4    on an alleged breach of the covenant of good faith and fair dealing.  *See* ECF 52 at ¶¶ 6-7, 44-45,

5    62-63.  Plaintiffs' recycled allegations should be dismissed for the same reasons laid out in SCU's

6    motion to dismiss the FAC and its reply brief (both of which are incorporated by reference).  *See*

7    ECF 32, 35.  This Court should decline to revisit its previous decision that these allegations do not

8    state a claim for breach of contract.

9    The law of the case doctrine "generally precludes a court from reconsidering an issue

10   decided previously by the same court or by a higher court in the identical case."  *Hall v. City of Los*

11   *Angeles*, 697 F.3d 1059, 1067 (9th Cir. 2012).  Under the doctrine, courts typically depart from a

12   prior decision on an identical issue only where "(1) the decision is clearly erroneous and its

13   enforcement would work a manifest injustice; (2) intervening controlling authority makes

14   reconsideration appropriate; or (3) substantially different evidence was adduced at a subsequent

15   trial."  *Hadley v. Kellogg Sales Co.*, No. 16-CV-04955-LHK, 2019 WL 3804661, at *14 (N.D. Cal.

16   Aug. 13, 2019) (citation and internal quotation marks omitted).  Courts consider nearly identical

17   factors when determining whether to grant a motion for reconsideration.  *Washington v. Sandoval*,

18   No. C 10-0250 LHK PR, 2011 WL 2039687, at *1 (N.D. Cal. May 24, 2011) ("[T]he major grounds

19   that justify reconsideration involve an intervening change of controlling law, the availability of new

20   evidence, or the need to correct a clear error or prevent manifest injustice." (citation omitted)).

21   Here, this Court's prior decision is law of the case and none of the factors that would warrant

22   departure from that decision apply here.  The decision was not clearly erroneous.  This Court

23   correctly concluded that Plaintiffs failed to point to a specific promise to "continue on-campus

24   instruction despite a global pandemic" and found that Plaintiffs' theories would improperly "freeze

25   the academic relationship into a rigid mold."  ECF 49 at 8.  If Plaintiffs believed this Court's order

26   dismissing the FAC was clearly erroneous, they could have sought leave to file a motion for

27   reconsideration.  *See Hadley v. Kellogg Sales Co.*, No. 16-CV-04955-LHK, 2020 WL 3246335, at

28   *1 (N.D. Cal. May 28, 2020) ("Under Local Rule 7-9, leave of the Court is required before a party

MOTION TO DISMISS 2ND AMENDED COMPLAINT
5:20-cv-04045-LHK

may file a motion for reconsideration of an interlocutory order."). They did not do so. Accordingly, on their own, the recycled allegations supply no basis for concluding the court's earlier order was clearly erroneous.

Nor is there any intervening controlling authority that would make reconsideration appropriate. SCU is not aware of any recent California Supreme Court case law addressing the specificity required for a promise to form the basis of a cognizable breach of contract claim. Instead, this Court's decision comports with numerous decisions that have issued across the country recognizing that materials like course schedules and webpages describing life on campus create, at most, general expectations that do not rise to the level of specificity required to constitute a contractual promise. *See, e.g.*, *Crawford v. Presidents & Dirs. of Georgetown Coll.*, No. 20-CV-1141 (CRC), 2021 WL 1840410, at *6 (D.D.C. May 7, 2021) ("While the pleadings indicate that both universities made references to on-campus instruction in their written materials, these references do not include promissory language, and no individual statement rises to the level of specificity required to communicate a definite promise."); *Beck v. Manhattan Coll.*, No. 20 CIV. 3229 (XLS), 2021 WL 1840864, at *2 (S.D.N.Y. May 7, 2021) ("Ms. Beck similarly cannot derive an implied promise to hold in-person classes — whether from general educational customs, course attendance requirements, the College offering Ms. Beck's classes in person before March 2020, or the College's 30% discount of tuition for its online summer 2020 session—as none of these circumstances amount to a written promise to provide specified services."); *Hickey v. Univ. of Pittsburgh*, No. 2:20-CV-690, 2021 WL 1630579, at *2 (W.D. Pa. Apr. 27, 2021) ("Plaintiffs' claim fails because it does not identify any specific contractual promise that the University allegedly breached with respect to in-person instruction, tuition, fees, or any other costs."); *Hernandez v. Illinois Inst. of Tech.*, No. 20-CV-3010, 2021 WL 1600171, at *5 (N.D. Ill. Apr. 23, 2021) ("Nothing in the class registration materials evinces a concrete promise by IIT that instruction would be in-person."); *Goldberg v. Pace Univ.*, No. 20 CIV. 3665 (PAE), 2021 WL 1565352, at *8 (S.D.N.Y. Apr. 21, 2021) ("The statements on which [plaintiff] relies, although tacitly presupposing and almost certainly envisioning the familiar norm of in-person instruction, do not contain or constitute a specific promise of such."); *see also* ECF 40, 42-44, 47-48.

Because there is no reason for this Court to reconsider its prior decision,[1] the Court should again dismiss Plaintiffs allegations that SCU breached an implied-in-fact contract to provide in-person instruction and services.

### B.   Plaintiffs' Parking-Related Breach Of Contract Claim Must Be Dismissed.

In the SAC, Plaintiffs bring a new species of their breach of contract claim which has nothing to do with manner of instruction or campus life in general.  Instead, Plaintiffs allege that "SCU … breached an implied contract to provide parking" because it did not provide "a year of on-campus parking" to students who had purchased a $400 annual parking permit.  ECF 52 at ¶ 63. Plaintiffs further allege that "SCU told students it would provide credits" but Plaintiffs claim "[t]hey have not received these credits."  *Id.* at ¶ 44.  Plaintiffs' parking-related breach of contract claim must be dismissed for two reasons:  (1) these fees have been refunded and the claim is therefore moot; and (2) even if the allegations are not moot, Plaintiffs cannot allege a breach where they agreed to terms that expressly precluded refunds.

### 1.   Plaintiffs' Parking-Related Breach Of Contract Claim Is Moot.

Plaintiffs' parking-related breach of contract claim must be dismissed under Rule 12(b)(1) because it is moot.  "Federal courts lack jurisdiction to consider 'moot questions ... or to declare principles or rules of law which cannot affect the matter in issue in the case before it.'"  *Forest Guardians v. Johanns*, 450 F.3d 455, 461 (9th Cir. 2006) (quoting *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992)).  "[A]n individual claim … becomes moot when a plaintiff actually receives all of the relief he or she could receive on the claim through further litigation." *Chen v. Allstate Ins. Co.*, 819 F.3d 1136, 1144 (9th Cir. 2016).

When a defendant provides a full refund for a product or service, and the plaintiff is entitled to no other relief, courts dismiss the plaintiff's claims as moot.  In *Lepkowski v. CamelBak Prods., LLC*, another court in this district dismissed a case where the defendant had provided the plaintiff with a full refund for the water bottle at issue in the case and sent a replacement bottle.  No. 19-CV-04598-YGR, 2019 WL 6771785, at *2, 4 (N.D. Cal. Dec. 12, 2019).  Other district courts have

---

[1] There has been no trial so the third circumstance for deviating from the law of the case does not apply here.

MOTION TO DISMISS 2ND AMENDED COMPLAINT
5:20-cv-04045-LHK

reached the same result.  *See Hamilton v. General Mills, Inc.*, No. 6:16-cv-382-MC, 2016 WL 6542840, at *1-2 (D. Or. Nov. 2, 2016) (dismissing plaintiff's claims for lack of standing because plaintiff's "only alleged injury is the economic loss of $15.98, an alleged injury that has been dispelled through defendant's voluntary recall program"); *Main v. Gateway Genomics, LLC*, No. 15CV2945 AJB (WVG), 2016 WL 7626581, at *4 (S.D. Cal. Aug. 1, 2016) (concluding that plaintiff lacked standing to pursue restitution claim because she "requested and received a full refund of the purchase price of the SneakPeek test on or about November 10, 2015, approximately two months before she filed the original complaint"); *Tosh-Surryhne v. Abbott Labs. Inc.*, No. CIV S-10-2603 KJM, 2011 WL 4500880, at *5 (E.D. Cal. Sept. 27, 2011) (finding defendant's full refund offer mooted plaintiff's claims, depriving the court of jurisdiction); *Vavak v. Abbott Labs. Inc.*, No. SACV 10-1995 JVS (RZx), 2011 WL 10550065, at *3 (C.D. Cal. June 17, 2011) (dismissing plaintiff's request for restitution as moot because defendant "offered a full refund to consumers who purchased infant formula from the affected lots").

Here, Plaintiffs have received what they are requesting: a refund for the fees they paid for parking they "could not use" due to SCU's compliance with government shelter-in-place orders *See* ECF 52 ¶¶ 6, 44, 63.  Although Plaintiffs assert that SCU has not provided students with any credits or refunds related to fees paid for parking during the Spring 2020 semester,  *id.* at ¶¶ 6, 44, Plaintiffs Abuelhawa and Wynne, and members of the proposed class, have received the requested refunds.[2]  They have been provided credits greater than or equal to a full pro rata refund of the parking fees they paid for the period of mid-March to the end of June 2020.  *See* Kenney Decl ¶ 7-8; Wang Decl. ¶¶ 5-6.  Plaintiffs were notified about the credits before they filed the SAC.  *See* Kenney Decl ¶ 8; Wang Decl. ¶¶ 6-7.  Plaintiffs have not alleged there is a continuing issue with parking requiring injunctive relief and have not sought any other relief in connection with their breach of contract claim.  *See* ECF 52 at ¶¶ 56-67, 65 (seeking "reimbursement" for a "pro-rated portion" of Spring 2020 tuition and fees).  Because Plaintiffs have received the refund they

---

[2] SCU notified Plaintiffs' counsel on May 21, 2021 that these allegations are false and requested that they be withdrawn.  Mullins Decl. ¶ 14.  Plaintiffs declined to withdraw the allegations before SCU filed this motion. *Id.*

requested and have sought no other relief for their breach of contract claim, the claim is moot and this Court must dismiss it for lack of subject matter jurisdiction.

## 2. **Plaintiffs Have Failed To State A Claim For Breach Of An Implied Parking Contract.**

Even assuming that Plaintiffs' parking-related breach of contract claim was not moot, the claim must still be dismissed. It is barred by SCU's Parking Plan and Plaintiffs have failed to plead facts establishing that there was a contractual breach.

First, Plaintiffs' claim is barred by the express language in SCU's Parking Plan, which provides that, "[n]o refunds of any parking permit fees will be granted after 30 days from the date of purchase." RJN No. 5 at § 4.9. Students purchase parking permits through their eCampus accounts and agree to abide by the terms of the Parking Plan when they do so. *See id.* Plaintiffs Abuelhawa and Wynne purchased annual parking permits for the 2019-2020 academic year. ECF 52 at ¶ 63. SCU did not suspend in-person classes and close campus facilities until mid-March 2020—several months after Plaintiffs purchased their annual permits. *Id.* at ¶ 3. Because Plaintiffs seek a refund of parking permit fees for events that occurred well over 30 days from the date they purchased their permits, they are not entitled to a refund.

Second, Plaintiffs' parking-related breach of contract claim should be dismissed because they have failed to plead facts indicating that SCU breached its agreement with students by revoking their permission to park on campus. The Parking Plan is clear that when students buy a parking permit they are purchasing "permission to park in designated areas on campus and on University lands." RJN No. 5 § 2.4. SCU's Parking Plan makes no promises about what kinds of services will be offered or what events will occur on campus. To breach the promise to provide permit holders with permission to park, SCU would have to revoke that permission in contravention of the Parking Plan. Plaintiffs do not allege that they were not permitted to park on campus. Instead, Plaintiffs state that "SCU closed all residence halls, closed campus facilities, and cancelled all on-campus events" in March 2020 and, as a result of those closures, they "could not use" their passes. ECF 52 at ¶¶ 4, 6, 44. But there is a difference between not being *permitted* to park on campus, which is what Plaintiffs were promised, and no longer *needing* to park on campus because

MOTION TO DISMISS 2ND AMENDED COMPLAINT
5:20-cv-04045-LHK

1   the activities that you normally would travel to campus for are not occurring in person.   That

2   Plaintiffs did not need to or choose to park on campus for part of the Spring 2020 semester does

3   not establish that SCU breached its agreement to provide them with permission to park in

4   designated areas.

5       Because Plaintiffs' parking-related breach of contract claim is barred by the Parking Plan

6   and because there was no breach, Plaintiffs have failed to state a cognizable claim.

7   **C.      Plaintiffs Have Failed To State A Claim For Breach Of The Implied Covenant Of Good Faith And Fair Dealing.**

8

9       Plaintiffs allege that SCU breached the implied covenant of good faith and fair dealing "by

10  denying SCU law students access to on campus law school facilities and buildings, while making

11  those same law school buildings and facilities available to undergraduate students."   ECF 52 at ¶

12  62.   The claim should be dismissed for at least two reasons.

13      **1.      Plaintiffs' Good Faith And Fair Dealing Claim Is Duplicative Of Its Breach Of Contract Claim.**

14

15      First, Plaintiffs' claim for breach of the covenant of good faith and fair dealing should be

16  dismissed because it is duplicative of Plaintiffs' breach of contract claim.   Where a claim for breach

17  of the implied covenant of good faith and fair dealing "do[es] not go beyond the statement of a

18  mere contract breach, [and] simply seek[s] the same damages or other relief already claimed in a

19  companion contract cause of action," courts dismiss the claim as "superfluous."   *Snapkeys, Ltd. v.*

20  *Google LLC*, 442 F. Supp. 3d 1196, 1211 (N.D. Cal. 2020) (quoting *Careau & Co. v. Sec. Pac.*

21  *Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1395 (1990); *see also AIIRAM LLC v. KB Home*, No. 19-

22  CV-00269-LHK, 2019 WL 3779185, at *8 (N.D. Cal. Aug. 12, 2019).   Plaintiffs claim for breach

23  of the implied covenant is based entirely on the same facts as their breach of contract claim.   The

24  crux of Plaintiffs' breach claim is that they bargained for on-campus instruction and have been

25  denied that experience without receiving compensation. ECF 52 at ¶ 46.   Their good faith and fair

26  dealing claim is nothing more than allegations in support of that fundamental contention.   They

27  assert as evidence of the improper deprivation of their alleged contractual right to in-person

28  instruction that undergraduate students have been permitted to access law school facilities.   *Id.* ¶

MOTION TO DISMISS 2ND AMENDED COMPLAINT
5:20-cv-04045-LHK

62.  Plaintiffs also seek the same relief for both claims.  *See* ECF 52 at ¶ 67.  The fact that Plaintiffs have not sought leave of this court to plead breach of the implied covenant as a separate cause of action and instead have incorporated it into their breach of contract claim is further evidence that the claim is superfluous and should be dismissed.  *See* ECF 49 at 18 (requiring leave of the court to add new claims).

### 2. Plaintiffs Have Failed To Plead Facts Establishing That SCU Unfairly Interfered With Plaintiffs' Rights To Receive Contractual Benefits.

Second, Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing should be dismissed because Plaintiffs have not plausibly alleged that SCU unfairly interfered with Plaintiffs' rights to receive contractual benefits.  The elements of a cause of action for breach of the covenant of good faith and fair dealing are: "(1) the parties entered into a contract; (2) the plaintiff fulfilled his obligations under the contract [or was excused from nonperformance]; (3) any conditions precedent to the defendant's performance occurred; (4) the defendant unfairly interfered with the plaintiff's rights to receive the benefits of the contract; and (5) the plaintiff was harmed by the defendant's conduct."  *Rosenfeld v. JPMorgan Chase Bank, N.A.*, 732 F. Supp. 2d 952, 968 (N.D. Cal. 2010).  "[T]he scope of conduct prohibited by the implied covenant is confined by the 'purposes and express terms' of the agreement."  *Jenkins v. JPMorgan Chase Bank, N.A.*, 216 Cal. App. 4th 497, 528 (2013), *disapproved of on other grounds by, Yvanova v. New Century Mortg. Corp.*, 62 Cal. 4th 919 (2016).  "[A]n action alleging a breach of the implied covenant cannot be used by a plaintiff to try to extend existing, or to create new, obligations that were not contemplated by the parties when the contract was executed."  *Id.*  Instead, plaintiffs "must allege a reasonable relationship between the defendant's allegedly wrongful conduct and the express terms or underlying purposes of the contract."  *Id.*; *see also Pasadena Live v. City of Pasadena*, 114 Cal. App. 4th 1089, 1094 (2004) ([T]he covenant of good faith and fair dealing is limited to assuring compliance with the express terms of the contract.").

Courts routinely dismiss claims for breach of the implied covenant of good faith and fair dealing where plaintiffs have failed to tie the claim to the underlying contractual provision or purpose that is implicated.  *See, e.g., Robinson v. Nationstar Mortg.*, No. CV 14-8282 PSG (ASX),

1    2015 WL 13651767, at *11 (C.D. Cal. Apr. 16, 2015) (dismissing breach of the implied covenant

2    claim where "Plaintiffs do not tie the allegations to the terms or underlying purposes of the

3    [contract]"); *Giron v. Wells Fargo Bank, N.A.*, No. 2-14-cv-02437-ODW(VBKx), 2014 WL

4    12589628, at *3 (C.D. Cal. May 27, 2014) ("Not only has Giron failed to adequately plead what

5    existing contractual right Wells Fargo allegedly breached via the implied covenant, but as a matter

6    of logic she could not plead such a right.").   For example, in *Jenkins*, 216 Cal. App. 4th at 528, the

7    California Court of Appeal affirmed the superior court's sustaining of a demurrer as to a claim for

8    breach of the implied covenant where the plaintiff's cause of action contained only "conclusory

9    and vague allegations of wrongful conduct."   The Court noted that the plaintiff had failed to

10   "identify an express term or underlying purpose of the two contracts that was breached or frustrated

11   … and [failed] to assert any actions [defendant] failed to perform that were reasonably

12   contemplated by the terms of the contract in order to accomplish the agreement's purpose."   *Id.*

13        Here, Plaintiffs have not drawn and cannot draw any relationship between their claim for

14   breach of the implied covenant and the express terms or purposes of the alleged implied in fact

15   contract between SCU and its students.   This Court has already rejected Plaintiffs' contention that

16   SCU has a contract with its students that requires it to provide them with access to certain on-

17   campus facilities during a global pandemic.   *See* ECF 49.   Plaintiffs have identified no contractual

18   promises that SCU has made to provide law students with access to specific facilities that was

19   frustrated by allowing undergraduates to use those facilities.   Nor have Plaintiffs connected their

20   claim to the purpose of the alleged implied-in-fact contract between SCU and its students.

21        Furthermore, Plaintiffs cannot tie and have not tied the breach they have identified—

22   allowing undergraduate students to use law school classroom facilities, ECF 52 at ¶ 62—to any

23   provisions of an implied-in-fact contract Plaintiffs had with SCU *in Spring 2020*.   Plaintiffs' cause

24   of action pertains to Spring 2020.   Each of the Named Plaintiffs alleges that he or she "paid

25   substantial tuition for the Spring 2020 semester," ECF 52 at ¶¶ 8-10, and they "seek to represent a

26   class defined as all SCU law students who paid SCU Spring 2020 Semester tuition and/or fees for

27   in-personal educational services," ECF 52 at ¶ 47.   Nowhere however do they allege that use of law

28   school classrooms by undergraduate students occurred in Spring 2020.   Nor can they.   Shelter-in-

place orders in Santa Clara County prevented SCU from holding *any* classes in person from mid-March 2020 until the end of the Spring 2020 semester or quarter.  *See* RJN Nos 10-12. Plaintiffs can only then be referring to activities that post-date the relevant time period.  But they fail to explain how, for example, conduct that occurred in Fall 2020 or Spring 2021 "unfairly interfered with the plaintiff's rights to receive the benefits of [a] contract" from Spring 2020 or that they were "harmed [in Spring 2020] by the defendant's conduct [in Fall 2020 or Spring 2021]." *Rosenfeld*, 732 F. Supp. 2d at 968 (N.D. Cal. 2010).  Because Plaintiffs have not even attempted to tie the alleged breach to a contractual benefit (or even to the applicable contract), they have failed to state a cognizable claim.

Even if Plaintiffs were to add additional facts about a more recent implied-in-fact contract between SCU and its students, they could not state a claim for breach of the covenant of good faith and fair dealing.  It is well-established that the terms of a contract must be interpreted as of the time the contract is formed.  *See, e.g.*, *Kashmiri v. Regents of Univ. of California*, 156 Cal. App. 4th 809, 831 (2007) ("In interpreting the contract, we must 'give effect to the mutual intention of the parties as it existed' at the time the contract was executed." (quoting Cal. Civ. Code § 1636)).  During the 2020-2021 academic year, Plaintiffs and any members of the proposed class who are still SCU students knew that their classes and other traditionally on-campus activities would not be taking place in person.  Plaintiffs do not dispute that SCU did not promise to provide them with in-person instruction or access to specific on-campus facilities during the 2020-2021 academic year: they have not alleged in *any* of their three complaints that SCU breached a promise to provide in person instruction or access to specific facilities during that time frame.  *See* ECF 1, 25, 52.  SCU could not have denied Plaintiffs the right to receive contractual benefits that were undisputedly not part of the parties' bargain.  *See Jenkins*, 216 Cal. App. 4th at 528.

Because Plaintiffs' claim for breach of the implied covenant is duplicative of their breach of contract claim and Plaintiffs have failed to plead facts sufficient to establish that SCU "unfairly interfered with the [Plaintiffs'] rights to receive the benefits of [their] contract," the claim should be dismissed. *Rosenfeld*, 732 F. Supp. 2d at 968.

1

### D.     <u>Plaintiffs Have Failed To State A Claim For A Violation Of The UCL.</u>

Plaintiffs allege that SCU violated the UCL by "charging students full tuition and fees without providing the on-campus services and facilities that SCU was required to provide" and by violating Cal. Educ. Code § 94897(d).  ECF 52 at ¶¶ 71-72.  Plaintiffs' first theory is identical to the one that this Court previously dismissed.  *See* ECF 49 at 14-15.  Because Plaintiffs have again based their first UCL theory on the same facts as their breach of contract claim, if this Court dismisses the breach of contract claim, it should dismiss this portion of the UCL claim as well.  *See id.*

Plaintiffs new UCL theory—that SCU violated the UCL by violating California Education Code section 94897(d)—also fails because that statute does not apply to SCU and thus cannot form the basis of a UCL claim.[3]  Although the UCL "borrows" violations from other statutes and makes them independently actionable under the UCL, plaintiffs must plead facts to demonstrate an actual violation of that borrowed statute.  *See, e.g.*, *Berryman v. Merit Property Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1554-55 (2007) (holding that demurrer was properly sustained as to UCL claim where "the SAC … fails to plead facts to support its allegations that [defendant] has violated each of [the cited] statutes").  Section 94987(d), part of the California Private Postsecondary Education Act of 2009 (the "CPPEA"), provides that an institution of postsecondary education shall not "[a]dvertise, or indicate in promotional material, without including the fact that the educational programs are delivered by means of distance education if the educational programs are so delivered."  Cal. Educ. Code § 94897(d).  The CPPEA includes several exemptions, two of which are applicable here.  The CPPEA exempts both "law school[s] that [are] accredited by the Council of the Section of Legal Education and Admissions to the Bar of the American Bar Association [the 'ABA']" and "institution[s] that [are] accredited by the Accrediting Commission for Senior Colleges and Universities, Western Association of Schools and Colleges ['WASC']" from its provisions.  Cal. Educ. Code § 94874(g), (i).  SCU is accredited by both the ABA's Section of Legal Education and Admissions to the Bar and WASC's Senior College and University

---

[3] SCU notified Plaintiffs' counsel on May 21, 2021 that there appeared to be no legal basis for Plaintiffs to assert this claim against SCU and requested that Plaintiffs withdraw the claim.  Mullins Decl. ¶ 14.  Plaintiffs declined to withdraw the claim before SCU filed this motion.  *Id.*

1  Commission and is thus exempt.  RJN Nos. 6-7.

2        The CPPEA has one carveout from its list of exemptions: institutions that are approved to

3  participate in certain veterans' financial aid programs that are "not … independent institution[s] of

4  higher education, as defined in subdivision (b) of Section 66010" are not exempt.  *See* Cal. Educ.

5  Code § 94874.2.  But SCU is an "independent institution of higher education," so the carveout does

6  not apply.  Independent institutions of higher education are "nonpublic higher education institutions

7  that grant undergraduate degrees, graduate degrees, or both, and that are formed as nonprofit

8  corporations in this state and are accredited by an agency recognized by the United States

9  Department of Education."  Cal. Educ. Code § 66010(b).  SCU is a private university granting both

10  undergraduate and graduate degrees, formed as a California nonprofit corporation, and is accredited

11  by WASC, an agency recognized by the U.S. Department of Education.  *See* RJN Nos. 6, 8, 9.

12  Because SCU is exempt from the CPPEA, its UCL theory based on a violation of section 94897(d)

13  should also be dismissed.

14        **E.**      **<u>Further Amendment Would Be Futile And Cause Prejudice To SCU.</u>**

15        Because Plaintiffs have failed to identify any cognizable claims—despite having two

16  opportunities to amend their complaint and nearly a year since their complaint was first filed—the

17  SAC should be dismissed with prejudice.  This Court already warned Plaintiffs that "failure to

18  cure the deficiencies identified in this order or SCU's motion to dismiss will result in dismissal of

19  the deficient claims with prejudice."  ECF 49 at 18.  Rather than cure any of the deficiencies,

20  Plaintiffs added entirely new theories and left unchanged their core allegations, *viz*., that SCU

21  breached a promise to provide in-person education and services.   Allowing Plaintiffs to continue

22  to amend their complaint would be futile.  *See Telesaurus VPC, LLC v. Power*, 623 F.3d 998,

23  1003 (9th Cir. 2010) ("A district court may deny a plaintiff leave to amend … if the plaintiff had

24  several opportunities to amend its complaint and repeatedly failed to cure deficiencies ….").

25  Plaintiffs have had nearly a year to comb through SCU's website for specific promises to support

26  their breach of contract claim.  They have found none.  Similarly, after nearly a year of searching

27  for a statute that SCU may have violated that could form the basis of a UCL claim, the best

28  Plaintiffs have found is a statute from which SCU is exempt.  Allowing further amendments

would also cause significant prejudice to SCU by causing it to have to file a fourth motion to dismiss.  *See Ryan v. Microsoft Corp.*, 147 F. Supp. 3d 868, 896–97 (N.D. Cal. 2015) (dismissing complaint with prejudice where "[g]iving Plaintiffs an additional opportunity to amend their complaint … would unduly prejudice Microsoft by requiring Microsoft to file repeated motions to dismiss on timeliness grounds").

## V.     **CONCLUSION**

For the foregoing reasons, this Court should dismiss the SAC with prejudice.


Dated: May 28, 2021                                           KAREN G. JOHNSON-MCKEWAN
                                                              SARAH K. MULLINS
                                                              Orrick, Herrington & Sutcliffe LLP


                                                              By: */s/ Karen G. Johnson-McKewan*
                                                              Karen G. Johnson-McKewan
                                                              Attorneys for Defendant
                                                              Santa Clara University