1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

LILAS ABUELHAWA, et al.,

Plaintiffs,

v.

SANTA CLARA UNIVERSITY,

Defendant.

Case No. 20-CV-04045-LHK

**ORDER GRANTING MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT WITH PREJUDICE**

Re: Dkt. No. 58

Plaintiffs, on behalf of themselves and others similarly situated, allege that Defendant Santa Clara University ("SCU") violated California law by halting in-person education in response to the COVID-19 pandemic.  Plaintiffs specifically claim that SCU (1) breached an implied-in-fact contract; and (2) violated the "unfair" and "unlawful" prongs of California's Unfair Competition Law, Cal. Bus. & Profs. Code §§ 17200 *et seq*.  ECF No. 52.  Before the Court is SCU's motion to dismiss Plaintiffs' second amended complaint.  ECF No. 58.  Having considered the parties' submissions, the relevant law, and the record in this case, the Court GRANTS SCU's motion to dismiss with prejudice.

I.     **BACKGROUND**

1

### A. Factual Background

On February 7, 2020, a woman in Santa Clara County died of COVID-19, becoming the first known COVID-19 death in the United States. *See Abuelhawa v. Santa Clara University*, 529 F. Supp. 3d 1059, 1061 (N.D. Cal. 2021) (hereafter "*Abuelhawa I*"). On March 4, 2020, Governor Gavin Newsom declared a state of emergency in California. *Id.* at 1061-62. Thus, on March 10, 2020, SCU temporarily suspended in-person classes and moved to online instruction. *See* Second Am. Compl. ("SAC") ¶ 4, ECF No. 52.

Days later, on March 16, 2020, the Santa Clara County Health Officer issued a shelter-in-place order. *Abuelhawa I*, 529 F. Supp. 3d at 1062. Under the order, schools such as SCU could open only "for purposes of facilitating distance learning or performing essential functions," not in-person instruction. Request for Judicial Notice ("RJN") No. 10 at §10(f)(xi), ECF No. 59. To follow the order, SCU announced on March 16, 2020 that its educational experience would remain online for the Spring 2020 term. SAC ¶ 4. SCU's announcement preceded the March 30, 2020 start of SCU's Spring 2020 Quarter for all SCU schools except SCU's Law School and SCU's Jesuit School of Theology. Those two schools operate on the semester system rather than the quarter system. Thus, except for students of the Law School and the Jesuit School of Theology, SCU students had over two-weeks' notice that the Spring 2020 Quarter would be held remotely.

Plaintiffs are three SCU law students who bring a putative class action against SCU for SCU's temporary suspension of in-person instruction. Specifically, Plaintiffs Lilas Abuelhawa, Kelly Wynne, and Leonardo Kim seek to represent the following class: "all SCU law students who paid SCU Spring 2020 Semester tuition and/or fees for in-person educational services that SCU failed to provide, and whose tuition and fees have not been refunded."[1] SAC ¶ 46.

---

[1] "Specifically excluded from the Class are Defendant, Defendant's officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint ventures, or entities controlled by Defendant, and their heirs, successors, assigns, or other persons or entities related to or affiliated with Defendant and/or Defendant's officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family." SAC ¶ 48.

2

United States District Court
Northern District of California

1    At first, Plaintiffs sought to represent all SCU students, not just those on the semester

2    system.  *See id.* ¶ 3 (defining "semester" to include "quarter" and "any academic period").

3    However, Plaintiffs abandoned their claims on behalf of all SCU students after SCU moved to

4    dismiss the first amended complaint.  Instead, Plaintiffs sought to represent a class and subclass of

5    only "those students on the semester system"—that is, students of the Law School and the Jesuit

6    School of Theology.  ECF No. 33 at 11 n.3.  Now, in the SAC that class definition is further

7    narrowed to include only students of the Law School.  SAC ¶ 46.

8    Plaintiffs do not challenge the allegedly "inferior learning experience" of online classes.

9    SAC ¶ 46.  The "gravamen of this action" is instead that Plaintiffs "paid SCU for in-person classes

10   and the availability of on-campus facilities and experiences, and did not receive what they paid

11   for."  *Id.*  Under this theory of the case, Plaintiffs assert two claims: (1) breach of an alleged

12   implied-in-fact contract; and (2) violation of California's Unfair Competition Law ("UCL"), Cal.

13   Bus. & Profs. Code §§ 17200 *et seq.*, as the result of SCU's alleged "unfair" or "unlawful"

14   practices.  *Id.* ¶¶ 56-67, 68-74.  The breach of implied-in-fact contract claim is based on three

15   theories: (i) SCU broke its alleged promises to provide in-person instruction, SAC ¶¶ 59-61; (2) a

16   breach of the implied covenant of good faith and fair dealing based on SCU denying law students

17   access to on-campus facilities while allowing undergraduate students to use the same facilities, *id.*

18   ¶ 62; and (3) a breach of an implied parking contract, *id.* ¶¶ 6, 63.  The UCL claim in turn is based

19   on two theories: (i) violation of the "unfair prong" due to SCU breaking its alleged promises to

20   provide in-person instruction, *id.* ¶ 71; and (ii) violation of the "unfair" and "unlawful" prongs due

21   to SCU violating California Education Code § 94897(d).

22   Plaintiffs allege that SCU promised in-person instruction in its course materials, student

23   bulletins, and website.  *See id.* at ¶¶ 17, 21-34.  Course materials allegedly promised in-person

24   instruction by distinguishing between in-person and online instruction.  If SCU offered a course in

25   person, SCU allegedly identified the on-campus location of the course and sometimes required a

26   "mandatory in-person class session" to confirm a student's enrollment in the class.  *Id.* ¶¶ 21, 31.

27

28   Case No. 20-CV-04045-LHK
     ORDER GRANTING MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT WITH
     PREJUDICE

United States District Court
Northern District of California

1    Student bulletins allegedly "refer to the in-person nature of the Spring 2020 semester." *Id.*

2    ¶ 23.  Plaintiffs specifically cite certain statements in the law student bulletin.  That bulletin

3    notifies students that they must complete 64 credit hours "at the law school" and that teachers

4    "may utilize class attendance" in grading.  *Id.*  The law student bulletin also mentions certain on-

5    campus facilities.  *Id.*

6    Lastly, SCU's website advertises SCU's on-campus experience.  *Id.* ¶ 24.  Specifically,

7    the website praises SCU's faculty, libraries, and campus life.  As for faculty, the website touts

8    SCU's "connected & engaged faculty."  *Id.*  As for libraries, SCU's website describes libraries as

9    "much more than book repositories; they're inspiring spaces for research, collaboration, and

10   reflection." *Id.* ¶ 25.  As to campus life, the website advertises "special places on campus" and

11   "organization[s] on campus."  *Id.* ¶¶ 26-28.

12   In sum, Plaintiffs' claims rely on these statements in course materials, student bulletins,

13   and SCU's website.  Plaintiffs allege that these statements constitute SCU's promises to either

14   (1) hold in-person instruction; or (2) to refund Plaintiffs' tuition. FAC ¶¶ 35-46.

15   Yet Plaintiffs fail to mention other statements in SCU's course materials or student

16   bulletins. As for course materials, the "online course portal" that Plaintiffs allege viewing contains

17   financial terms and conditions.  SAC ¶ 17.  "Students are required to accept the financial terms

18   and conditions outlined by the University in order to continue their enrollment at SCU."  RJN No.

19   2.  These terms and conditions specifically provide that SCU's hyperlinked "tuition refund

20   schedule" governs refunds:

21           I accept full responsibility to pay all tuition, room and board, fees, and
             other associated costs as a result of enrollment at Santa Clara
22           University . . . . I have reviewed the published tuition refund schedule
             at www.scu.edu/bursar/refund and understand that if I drop or
23           withdraw from some or all of the classes for which I enroll, *I will be
             responsible for paying all or a portion of tuition and fees in*
24           *accordance with the University's tuition refund schedule*. . . . I have
             read the above and agree to assume all financial responsibility
25           associated with my enrollment at Santa Clara University.

26   RJN No. 2 (emphasis added).  As for student bulletins, all bulletins except for the Jesuit School of

27                                                        4

Theology's bulletin state that "*[n]o tuition refunds* are made because of curtailed services resulting from strikes, *acts of God*, civil insurrection, riots or threats thereof, *or other causes beyond the control of the University*."  RJN No. 4 (emphasis added).  Thus, this language is in the law student bulletin.

### B.  Procedural History

Plaintiffs filed their initial complaint on June 17, 2020.  ECF No. 1.  On September 28, 2020, SCU moved to dismiss that complaint.  ECF No. 21.

On October 12, 2020, Plaintiffs filed the first amended complaint.  The parties then stipulated to SCU filing a new motion to dismiss the first amended complaint, and on October 23, 2020, the Court granted that stipulation.  ECF No. 27.

On November 9, 2020, SCU again moved to dismiss.  ECF No. 32.  Plaintiffs filed their opposition on December 14, 2020.  ECF No. 33.  On January 8, 2021, SCU filed its reply.  ECF No. 35.  On March 29, 2021, the Court granted SCU's motion, but gave Plaintiffs leave to amend the breach of implied-in-fact contract and UCL claims.  *See Abuelhawa I*, 529 F. Supp. 3d at 1072.

On April 27, 2021, Plaintiffs filed the SAC.  ECF No. 52.  SCU filed the instant motion to dismiss and an unopposed request for judicial notice on May 28, 2021.  ECF Nos. 58 ("Mot."), 59 ("RJN").  On June 25, 2021, Plaintiffs filed their opposition to the instant motion to dismiss.  ECF No. 60 ("Opp'n").  In their opposition, Plaintiffs requested judicial notice of a state court decision.  Opp'n at 1 n.1.  SCU filed its reply supporting the instant motion, and another unopposed request for judicial notice on July 12, 2021.  ECF Nos. 61 ("Reply"), 62 ("Reply RJN").  SCU also filed a statement of recent decision on August 2, 2021.  ECF No. 66.

## II.    LEGAL STANDARD

### A.  Motion to Dismiss under Rule 12(b)(1)

A defendant may move to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. While lack of statutory standing requires dismissal for failure to state a claim under Rule 12(b)(6), lack of Article III standing requires

Case No. 20-CV-04045-LHK
ORDER GRANTING MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT WITH PREJUDICE

1   dismissal for want of subject matter jurisdiction under Rule 12(b)(1). *See Maya v. Centex Corp.*,

2   658 F.3d 1060, 1067 (9th Cir. 2011).

3       "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v.*

4   *Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the

5   allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction."

6   *Id.* The court "resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6):

7   Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's

8   favor, the court determines whether the allegations are sufficient as a legal matter to invoke the

9   court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). "[I]n a factual

10  attack," on the other hand, "the challenger disputes the truth of the allegations that, by themselves,

11  would otherwise invoke federal jurisdiction." *Safe Air for Everyone*, 373 F.3d at 1039. "In

12  resolving a factual attack on jurisdiction," the court "may review evidence beyond the complaint

13  without converting the motion to dismiss into a motion for summary judgment." *Id.* The court

14  "need not presume the truthfulness of the plaintiff's allegations" in deciding a factual attack. *Id.*

15  Once the defendant has moved to dismiss for lack of subject matter jurisdiction under Rule

16  12(b)(1), the plaintiff bears the burden of establishing the court's jurisdiction. *See Chandler v.*

17  *State Farm Mut. Auto Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

18      **B.  Motion to Dismiss Under Rule 12(b)(6)**

19      Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a

20  short and plain statement of the claim showing that the pleader is entitled to relief."  A complaint

21  that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure

22  12(b)(6).  The United States Supreme Court has held that Rule 8(a) requires a plaintiff to plead

23  "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v.*

24  *Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads

25  factual content that allows the court to draw the reasonable inference that the defendant is liable

26  for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility

27

28
    Case No. 20-CV-04045-LHK
    ORDER GRANTING MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT WITH
    PREJUDICE

standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a

defendant has acted unlawfully." *Id*. (internal quotation marks omitted).  For purposes of ruling on

a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and

construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St.

Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  The Court, however, need not

"assume the truth of legal conclusions merely because they are cast in the form of factual

allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (internal quotation

marks omitted).  Additionally, mere "conclusory allegations of law and unwarranted inferences are

insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

### C.  Leave to Amend

If a court determines that a complaint should be dismissed, it must then decide whether to

grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend

"shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule

15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v.

Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations and internal quotation marks

omitted).  When dismissing a complaint for failure to state a claim, "a district court should grant

leave to amend even if no request to amend the pleading was made, unless it determines that the

pleading could not possibly be cured by the allegation of other facts." *Id*. at 1130 (internal

quotation marks omitted).

Accordingly, leave to amend generally shall be denied only if allowing amendment would

unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has

acted in bad faith.  *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).  At

the same time, a court is justified in denying leave to amend when a plaintiff "repeated[ly] fail[s]

to cure deficiencies by amendments previously allowed." *See Carvalho v. Equifax Info. Servs.,

LLC*, 629 F.3d 876, 892 (9th Cir. 2010).  Indeed, a "district court's discretion to deny leave to

amend is particularly broad where plaintiff has previously amended the complaint." *Cafasso, U.S.*

Case No. 20-CV-04045-LHK
ORDER GRANTING MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT WITH
PREJUDICE

United States District Court
Northern District of California

1   *ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1058 (9th Cir. 2011) (quotation marks

2   omitted).

3   **III.    JUDICIAL NOTICE**

4          SCU requests judicial notice of materials from SCU's website, government orders on the

5   COVID-19 pandemic, and court filings.  ECF Nos. 59, 62 ("RJNs").  Plaintiffs request judicial

6   notice of a state court decision, *Grant v. Chapman Univ.*, Orange Cty. Superior Ct. Case No. 30-

7   2020-01146699, Jan. 22, 2021.  Opp'n at 1 n.1.  All requests for judicial notice are unopposed.

8   The Court previously granted SCU's request for judicial notice for RJN Nos. 1-4, ECF No. 59.

9   *See Abuelhawa v. Santa Clara University*, 529 F. Supp. 3d 1059, 1061 n.1 (N.D. Cal. 2021).  The

10   Court may take judicial notice of matters that are either "generally known within the trial court's

11   territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy

12   cannot reasonably be questioned."  Fed. R. Evid. 201(b).  Moreover, courts may consider

13   materials referenced in the complaint under the incorporation by reference doctrine, even if a

14   plaintiff failed to attach those materials to the complaint.  *Knievel v. ESPN*, 393 F.3d 1068, 1076

15   (9th Cir. 2005).  Documents on "publicly available websites" and public records are proper

16   subjects of judicial notice.  *See, e.g.*, *Calhoun v. Google LLC*, No. 20-CV-05146-LHK, 2021 WL

17   1056532, at *5 (N.D. Cal. Mar. 17, 2021) (collecting cases).

18          Accordingly, the Court GRANTS the parties' unopposed requests for judicial notice.

19   **IV.    DISCUSSION**

20          Plaintiffs allege two causes of action in the Second Amended Complaint against SCU: (1)

21   breach of implied-in-fact contract and (2) violation of California's Unfair Competition Law

22   ("UCL") under the "unfair" and "unlawful" prongs.  SCU moves to dismiss the SAC because SCU

23   contends the claims (1) are identical to claims this Court has previously dismissed and thus either

24   the law of the case applies or the claims should again be dismissed for the same reasons; (2) are

25   moot because the Plaintiffs and the proposed class have already received the relief they are

26   requesting; or (3) fail to state a cognizable claim for relief.  Mot. at 1.  The Court first considers

27

28   Case No. 20-CV-04045-LHK
    ORDER GRANTING MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT WITH
    PREJUDICE

United States District Court
Northern District of California

8

1    whether the law of the case doctrine applies and then considers in turn whether Plaintiffs' breach

2    of contract claim and UCL claim survive SCU's motion to dismiss.

3        **A. The Law of the Case Doctrine Does Not Apply**

4        SCU moves to dismiss because "[t]he vast majority of the SAC realleges the very same

5    allegations that this Court previously rejected as insufficient to state a claim for breach of contract

6    or for a violation of the UCL."  Mot. at 9.  SCU argues that "this Court's prior decision is law of

7    the case and none of the factors that would warrant departure from that decision apply here."  Mot.

8    at 10.  In opposition, Plaintiffs argue the law of the case doctrine is inapplicable here under Ninth

9    Circuit law.  Opp'n at 1-2.  On reply, SCU contends that Plaintiffs "mischaracterize SCU's

10   position" on law of the case doctrine and argues that Plaintiff's opposition is a stealth motion for

11   reconsideration and should be rejected.  Reply at 2-4.  Although SCU appears to abandon its law

12   of the case argument on reply, the Court briefly addresses whether the law of the case doctrine

13   applies before analyzing whether the standard for a motion for reconsideration applies.

14       "Under the law of the case doctrine, a court will generally refuse to reconsider an issue that

15   has already been decided by the same court or a higher court in the same case."  *Gonzalez v.*

16   *Arizona*, 677 F.3d 383, 390 n.4 (9th Cir. 2012), *aff'd sub nom. Arizona v. Inter Tribal Council of*

17   *Arizona, Inc.*, 570 U.S. 1 (2013) (citing *Jeffries v. Wood*, 114 F.3d 1484, 1488–89 (9th Cir.

18   1997) (en banc)).  Under this standard, the prior decision should be followed unless: (1) "the

19   decision is clearly erroneous and its enforcement would work a manifest injustice;" (2)

20   "intervening controlling authority makes reconsideration appropriate"; or (3) "substantially

21   different evidence was adduced at a subsequent trial."  *Id.* (quoting *Jeffries*, 114 F.3d at 1489).

22   Put another way, "the law of the case doctrine allows the court to impose a heightened burden on

23   the plaintiff—to show clear error, changed law, new evidence, changed circumstances, or manifest

24   injustice."  *Atkins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035, 1043 (9th Cir. 2018)

25       However, the law of the case doctrine is inapplicable when the district court dismisses a

26   claim without prejudice.  *See id.* ("The amended complaint is a new complaint, entitling the

27

28   Case No. 20-CV-04045-LHK
     ORDER GRANTING MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT WITH
     PREJUDICE

United States District Court
Northern District of California

9

plaintiff to judgment on the complaint's own merits."). In these circumstances, "[t]he district court is not . . . bound by any law of the case." *Id.* Although the district court is not so bound, if it "determines the amended complaint is substantially the same as the initial complaint, the district court is free to follow the same reasoning and hold that the amended claims suffer from the same legal insufficiencies." *Id.* Doing so allows "the district court . . . to correct any errors or misunderstandings without having to find that its prior decision was "clearly erroneous.'" *Id.* (quoting *United States v. Cuddy*, 147 F.3d 1111, 1114 (9th Cir. 1998)).

Here, the Court is not bound "by any law of the case" because, like the district court in *Atkins*, the Court dismissed Plaintiff's breach of implied-in-fact contract and UCL claims without prejudice. *Abuelhawa I*, 529 F. Supp. 3d at 1072; *Atkins*, 899 F.3d 1043. SCU's arguments that Plaintiffs have submitted a stealth motion for reconsideration are similarly unavailing because viewing the Plaintiff's opposition through that lens would similarly impose "a heightened burden on the plaintiff," contrary to the Ninth Circuit's directive in *Atkins*. *Id.*

As such, the Court will review the SAC and Plaintiff's opposition without imposing a "heightened burden on the plaintiff," but mindful that it may "follow the same reasoning and hold that the amended claims suffer from the same legal insufficiencies." *Id.*

**B. Plaintiffs Fail to State a Breach of Implied-in-Fact Contract Claim**

Plaintiffs allege a single breach of implied-in-fact contract claim under three distinct theories: (1) SCU broke its alleged promises to provide in-person instruction, SAC ¶¶ 59-61; (2) a breach of the implied covenant of good faith and fair dealing based on SCU denying law students access to on-campus facilities while allowing undergraduate students to use the same facilities, *id.* ¶ 62; and (3) a breach of an implied parking contract, *id.* ¶¶ 6, 63. SCU moves to dismiss Plaintiffs' contract claim because the claim inadequately alleges a specific promise, and is mooted, inadequately pled, or duplicative. Mot at 9, 12-18. The Court considers each theory for breach of implied-in-fact contract in turn.

**1. Plaintiffs again inadequately plead a specific promise.**

10

On March 29, 2021, the Court granted SCU's motion to dismiss Plaintiffs' first amended complaint ("March 29, 2021 Order").  *Abuelhawa I*, 529 F. Supp. 3d at 1072.  In the March 29, 2021 Order, the Court held that Plaintiffs' breach of implied-in-fact contract claim failed because Plaintiffs inadequately pled a specific promise by SCU to provide in-person instruction.  *Id.* at 1065-70.  The Court concluded that the statements identified by Plaintiffs were at most "'general promises or expectations,' which do not create contractual obligations."  *Id.* at 1066 (quoting *Kashmiri v. Regents. of the Univ. of Cal.*, 156 Cal. App. 4th 809, 828 (2007)).

SCU moves to dismiss because it argues that Plaintiffs failed to include in the SAC any new factual allegations about specific promises "that SCU made to provide in-person instruction or services."  Mot. at 10.  Because Plaintiffs have merely re-pled the same statements that the Court previously found inadequate, SCU contends the breach of implied-in-fact contract claim should again be dismissed for the same reasons.  *Id*. at 9-10.

Instead of identifying new statements by SCU about in-person instruction in the SAC, Plaintiffs' opposition to the instant motion to dismiss asks for reconsideration of the Court's March 29, 2021 Order in light of new authorities and three alleged errors in the Order.  Opp'n at 1-5 (asking "the Court to review the issue again in light of the additional authorities and arguments briefly presented here.").  Plaintiffs effectively concede that the SAC pleads no new facts that SCU made a specific promise to provide in-person instruction.  Plaintiffs' redline comparison of the SAC to Plaintiffs' first amended complaint also confirms that the SAC contains no new factual allegations to support Plaintiff's theory that SCU made a specific promise to provide in-person instruction.  *See* ECF No. 53.  The Court first determines whether Plaintiffs have adequately pled a specific promise in the SAC, and then addresses Plaintiffs' three claims of error and new authorities.

As with Plaintiffs' first amended complaint, the Court finds that none of the statements identified by Plaintiffs in the SAC "constitutes a 'definite, specific, or explicit' promise that SCU would continue on-campus instruction despite a global pandemic."  *Abuelhawa I*, 529 F. Supp. 3d

11

at 1066 (quoting *Kashmiri*, 156 Cal. App. 4th at 828 (cleaned up)).  "At most, these statements are 'general promises or expectations,' which do not create contractual obligations." *Id.* (quoting *Kashmiri*, 156 Ca. App. 4th at 828).  Plaintiffs thus inadequately plead a specific promise to provide in-person instruction for the same reasons the Court articulated in the March 29, 2021 Order.  *See generally id.* at 1065-70.

Plaintiff's opposition arguments fare no better.  Plaintiffs' unpersuasive opposition to the instant motion to dismiss relies on three purported errors in the March 29, 2021 Order.  Opp'n at 2-5.  Plaintiffs first argue that "the question of whether SCU made a specific promise to provide an on-campus education though its conduct, course of dealings, and custom is a question of fact that cannot be resolved on the pleadings."  Opp'n at 2-3.  Second, Plaintiffs argue that the Court erroneously concluded that Plaintiffs' position leads to absurd results.  *Id.* at 3-4.  Lastly, Plaintiffs contend that the Court misconstrued Plaintiffs' specific promise allegations by concluding that Plaintiffs failed to allege a specific promise by SCU to provide on-campus instruction during a pandemic.  *Id.* at 4-5.

On the first point, "an issue of fact can only arise if Plaintiffs first meet their obligation to plead the terms of the alleged contract." *UC Remote Cases*, No. JCCP5112, at 16-17 (Cal. Super. Ct. Jul. 29, 2021) (slip op.) (collecting state law cases sustaining dismissals for failure to plead breach of implied contract claims).  Here Plaintiffs inadequately pled a specific promise, and thus there is no triable issue of fact.  Plaintiffs moreover misstate the law in arguing that *Kashimiri* "held that 'custom and usages can also become specific terms by implication.'"  Opp'n at 2 (quoting *Kashmiri*, 156 Cal. App. 4th at 828).  In *Kashmiri*, the court stated that "state courts in other jurisdictions," not California, concluded custom and usage may be relevant.  156 Cal. App. 4th at 828, 831-33.  In fact, the *Kashmiri* Court had no occasion to consider any relevant custom and usages.  *Id.*  *Kashmiri* thus does not support Plaintiff's argument that custom and usages can become specific terms under California law.  However, even if custom and usage were relevant here, the custom and usage references Plaintiffs identify "merely memorialize the pre-pandemic

United States District Court
Northern District of California

1    practice; they offer[] no guarantee that it would continue indefinitely," *In re Columbia Tuition*

2    *Refund Action*, 523 F. Supp. 3d 414, 423 (S.D.N.Y. 2021).  As such, no issue of fact exists on

3    these pleadings.

4        Plaintiffs' second argument also misses the mark.  In the March 29, 2021 Order, the Court

5    quoted a portion of SCU's prior motion to dismiss that Plaintiffs *did not contest* in Plaintiffs' prior

6    opposition, *see* ECF No. 33.  The Court explained that "under Plaintiff's contractual theory,

7    'students would have a contractual claim if their course was later reassigned to a different

8    classroom or building' than the one listed in the course catalog." *Abuelhawa I*, 529 F. Supp. 3d at

9    1066 (quoting ECF No. 32 at 16).  Plaintiffs argue this conclusion is erroneous because their

10   position is defensible under "the doctrine that courts do not consider trifling matters." *Id.* at 3.

11   Setting aside that Plaintiffs did not raise this argument in response to SCU's prior motion to

12   dismiss, Plaintiffs' argument fails to cure the central flaw identified by the Court in Plaintiffs'

13   pleadings—a failure to identify a *specific* promise about in-person instruction by SCU.

14       Even if the Court should not consider trifling matters, the breach of implied-in-fact

15   contract claim must still be anchored in a *specific* promise SCU breached. *Abuelhawa I*, 529 F.

16   Supp. 3d at 1065 (noting the parties agree the breach of implied-in-fact contract claim "must

17   identify a *specific* promise that SCU breached.")  Plaintiffs failed to identify such a promise in the

18   first amended complaint.  Lacking any new factual allegations, Plaintiffs again fail to identify such

19   a promise in the SAC.  At best, the statements on which Plaintiffs rely merely show SCU's general

20   expectation that in-person classes are the norm. *See In re Columbia*, 523 F. Supp. 3d at 423

21   (explaining school statements about in-person instruction "merely memorialize the pre-pandemic

22   practice") Furthermore, Plaintiffs' attempt to rely on these statements is what the California

23   Supreme Court cautioned against—an "attempt to use catalogues or similar published material to

24   freeze the academic relationship into a rigid mold.'" *Paulsen v. Golden Gate Univ.*, 25 Cal. 3d

25   803, 812 (1979).  Thus, even if Plaintiffs' position does not lead to absurd results, Plaintiffs still

26   fail to identify any specific promises that unequivocally promise in-person instruction.

27

28   Case No. 20-CV-04045-LHK
     ORDER GRANTING MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT WITH
     PREJUDICE

13

United States District Court
Northern District of California

1    Plaintiffs' last argument also fails for similar reasons.  Plaintiffs argue that the "Court erred

2    by framing the issue not simply in terms of whether SCU promised to provide on-campus

3    instruction."  Opp'n at 4.  Plaintiffs read the Court's prior order to hold that Plaintiffs must allege

4    a specific promise by SCU to "continue on-campus instruction *despite a global pandemic*."  *Id.* at

5    4 (quoting *Abuelhawa I*, 529 F. Supp. 3d at 1066).  Not so.  The flaw the Court previously

6    identified in Plaintiffs' first amended complaint is that the statements Plaintiffs rely on "are

7    'general promises or expectations' which do not create contractual obligations."  *Abuelhawa I*, 529

8    F. Supp. 3d at 1066.  Or said another way, "the statements Plaintiffs cite are too general to impose

9    contractual duties on SCU."  *Id.*  These statements impose *no* contractual duties, including for in-

10   person instruction.  Moreover, the Court's March 29, 2021 Order specifically concluded that the

11   statements Plaintiffs identify in the "course catalog and policy *fail to promise in-person*

12   *instruction*."  *Id.* at 10-11 (emphasis added).  The Court did not condition this conclusion on the

13   existence of a global pandemic.

14   In addition, the Court explained that the "purported promises that Plaintiffs cite here are

15   vaguer than those found inadequate in" *Regents of University of California v. Superior Court*, 193

16   Cal. Rptr. 3d 447, 471 (Ct. App. 2015), *rev'd on other grounds*, 4 Cal. 5th 607, 634 n.8 (2018).

17   *Abuelhawa I*¸ 529 F. Supp. 3d at 1068.  In *Regents*, the California Court of Appeal found

18   statements made by the University of California, Los Angeles ("UCLA") about on-campus student

19   safety to be insufficient to support an implied-in-fact contract between a UCLA student and

20   UCLA.  *Abuelhawa I*, 529 F. Supp. 3d at 1068.  The UCLA student relied on two UCLA

21   statements and a surcharge as the sources of the implied-in-fact contractual duties.  *Id.*  The

22   student alleged that UCLA had: (1) stated in a school publication that the school was "committed

23   to providing a safe work environment for all faculty, staff and students—one that is free from

24   violence or threats of harm."  *Id.* (quoting *Regents*, 193 Cal. Rptr. 3d at 471); (2) stated in the

25   Student Conduct Code that "any individual who commits an act of violence or has threatened to

26   commit such an act may be suspended from the university and barred from its property."  *Id.*

27

28

14

Case No. 20-CV-04045-LHK
ORDER GRANTING MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT WITH
PREJUDICE

United States District Court
Northern District of California

1    (quoting *Regents*, 193 Cal. Rptr. 3d at 471 n.12); and (3) imposed "an individual surcharge to pay

2    for student mental health services." *Id.* (quoting *Regents*, 193 Cal. Rptr. 3d at 471-72).  The

3    *Regents* Court, applying *Kashmiri*, analyzed each source and rejected the implied-in-fact contract

4    claim.  *Id.*

5         In the March 29, 2021 Order, the Court compared the alleged statements made by SCU to

6    the statements made by UCLA in *Regents* and found that "[n]one of [SCU's] statements are as

7    specific as UCLA's."  *Id.*  Plaintiffs fail to distinguish, or even address, *Regents* in their opposition

8    to the instant motion.

9         To avoid any doubt, the Court construes the SAC to allege that SCU made a specific

10   promise to provide in-person instruction for the Spring 2020 semester.  *See* SAC ¶ 47 (defining the

11   class as "all SCU law students who paid SCU Spring 2020 Semester tuition and/or fees for in-

12   person educational services that SCU failed to provide, and whose tuition and fees have not been

13   refunded").  However, this construction is substantially similar to the Court's construction of the

14   allegations in the first amended complaint.  *See* ECF No. 25 ¶ 45 (Plaintiffs sought to represent

15   students, including law students, "who paid SCU Spring 2020 Semester tuition and/or fees for in-

16   person educational services that SCU failed to provide.").  As such, the Court follows its prior

17   reasoning in the March 29, 2021 Order to conclude that Plaintiffs again inadequately plead a

18   specific promise by SCU to provide in-person instruction.  *See Abuelhawa I*, 529 F. Supp. 3d at

19   1065-70.  Plaintiffs' argument thus lacks merit.

20        Lastly, Plaintiffs also argue that the "weight of authority" points in favor of "students on

21   12(b)(6) motions or demurrers" and string cite several California district court and state court

22   decisions, including cases the Court already found unpersuasive in its prior order, as well as one

23   out-of-state decision.  Opp'n at 1.  SCU in turn points to a state court decision that agreed with the

24   Court's prior order, as well as multiple out-of-state decisions ruling against students in Covid-19

25   tuition related cases.  Reply at 3, 3 n.2.  The Court's view remains unchanged.  None of the

26   California district or state court cases Plaintiffs discuss *Regents of University of California v.*

27

28
     Case No. 20-CV-04045-LHK
     ORDER GRANTING MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT WITH
     PREJUDICE

1   *Superior Court*, 193 Cal. Rptr. 3d 447 (Ct. App. 2015), or even the Court's March 29, 2021 Order.

2   For all the above reasons, Plaintiffs' theory of breach of implied-in-fact contract fails.

3   **2.   Plaintiffs Fail to Plead a Breach of the Implied Covenant of Good Faith and Fair Dealing.**

5   Plaintiffs' second theory for breach of implied-in-fact contract flows from the covenant of

6   good faith and fair dealing.  Plaintiffs allege that SCU "breach[ed] the implied covenant of good

7   faith and fair dealing by denying SCU law students access to on-campus law school facilities and

8   buildings, while making those same law school facilities and buildings available to undergraduate

9   students."  *Id.* ¶¶ 7, 45.  SCU moves to dismiss this theory for two reasons.  First, SCU argues the

10  "claim for breach of covenant of good faith and fair dealing should be dismissed because it is

11  duplicative of Plaintiffs' breach of contract claim."  Mot. at 15-16.  Second, SCU argues that

12  Plaintiffs fail to plead "that SCU unfairly interfered with Plaintiffs' rights to receive contractual

13  benefits."  Mot. at 16-18.  Because the Court agrees with SCU that Plaintiffs fail to plead a breach

14  of the covenant of good faith and fair dealing, the Court need not determine whether this theory is

15  duplicative.

16  Under California law, "[e]very contract imposes on each party a duty of good faith and fair

17  dealing in each performance and in its enforcement."  *Carson v. Mercury Ins. Co.*, 210 Cal. App.

18  4th 409, 429 (Ct. App. 2012) (internal quotation marks and citations omitted). "The covenant 'is

19  based on general contract law and the long-standing rule that neither party will do anything which

20  will injure the right of the other to receive the benefits of the agreement.'"  *Rosenfeld v. JPMorgan*

21  *Chase Bank, N.A.*, 732 F. Supp. 2d 952, 968 (N.D. Cal. 2010) (*quoting Waller v. Truck Ins.*

22  *Exchange, Inc.*, 11 Cal. 4th 1, 36 (1995)).  To establish a breach of the covenant of good faith and

23  fair dealing, a plaintiff must show: "(1) the parties entered into a contract; (2) the plaintiff fulfilled

24  his obligations under the contract; (3) any conditions precedent to the defendant's performance

25  occurred; (4) the defendant unfairly interfered with the plaintiff's rights to receive the benefits of

26  the contract; and (5) the plaintiff was harmed by the defendant's conduct."  *Rosenfeld*, 732 F.

27  Supp. 2d at 968 (citing Judicial Council of California Civil Jury Instruction 325).

16

United States District Court
Northern District of California

In the SAC Plaintiffs allege that SCU "breached and continues to breach the implied covenant of good faith and fair dealing by denying SCU law students access to on-campus law school facilities and buildings while making those same law school facilities and buildings available to undergraduate students." SAC ¶ 62. Effectively, Plaintiffs allege that SCU breached the covenant by treating law and undergraduate students unequally. Not so. Plaintiffs fail to plead any facts in the SAC showing that SCU treated undergraduate and law school students unequally during the Spring 2020 semester—the relevant period of time that SCU Law Students paid "SCU Spring 2020 Semester tuition and/or fees for in-person educational services that SCU failed to provide." *Id.* ¶ 47 (defining representative class). In fact, the SAC contains no allegations that undergraduate students used campus facilities during Spring 2020.

SCU explains why. During Spring 2020 shelter-in-place orders "prevented SCU from holding *any* classes in person from mid-March 2020 until the end of the Spring 2020 semester or quarter." Mot at 18. Accordingly, during the relevant period, neither law students nor undergraduate students used on-campus facilities. With no factual allegations that such unequal treatment occurred, Plaintiffs' theory lacks merit.

To salvage their claim, Plaintiffs argue in their opposition to the instant motion to dismiss that SCU misconstrues Plaintiffs' breach of the implied covenant of good faith and fair dealing theory. Plaintiffs point to the SAC's allegation that SCU "*continues* to breach the implied covenant of good faith and fair dealing" and thus contend the SAC sufficiently alleges that Plaintiffs' breach of the implied covenant of good faith and fair dealing theory is not limited to the Spring 2020 term. Opp'n at 8-9 (citing SAC ¶ 62). However, this argument also lacks factual support because Plaintiffs fail to plead any factual allegations for the Fall 2020 and Spring 2021 terms. For example, Plaintiffs fail to plead that they "entered into a contract" with SCU for the Fall 2020 or Spring 2021 semesters and that they "fulfilled [their] obligations under the contract" for the Fall 2020 and Spring 2021 semesters, such as paying the required fees. Reply at 10. Both are necessary elements to establish that defendant breached the covenant of good faith and fair

17

dealing.  *See Rosenfeld*, 732 F. Supp. 2d at 968 (plaintiff in part must show that "the parties entered into a contract" and that "the plaintiff fulfilled his obligations under the contract").  SCU again explains why.  For Fall 2020 and Spring 2021 semesters, SCU expressly specified that courses would take place online.  Reply at 10; Reply RJN No. 13-14.  As such, there could be no unequal treatment when SCU made no promise to law students about on-campus facility use for these semesters.  Moreover, Plaintiffs limit the class definition in the SAC to law students who paid the Spring 2020 semester tuition and in exchange did not receive the allegedly promised in-person services during the Spring 2020 semester.  SAC ¶ 47.  The SAC does not allege that SCU made any promises for Fall 2020 or Spring 2021 to law students who paid Spring 2020 tuition fees.

Because Plaintiffs fail to plead the necessary elements of a claim for breach of the covenant of good faith and fair dealing, Plaintiffs' theory of breach of the covenant of good faith and fair dealing must fail.

### 3.  Plaintiffs' parking claim is inadequately pled.

Plaintiffs' third theory for breach of implied-in-fact contract focuses on parking permit fees.  Plaintiffs allege that SCU breached "an implied contract to provide parking" by denying "Plaintiffs Abuelhawa and Wynne [who paid $400 for a year-long parking pass]" the benefit of their bargain.  SAC ¶¶ 44; *see also id.* ¶ 6.  Plaintiff Kim did not buy a parking permit during the relevant time period, ECF No. 58-2 ("Kenney Decl.") ¶ 10, and thus cannot allege this breach of implied-in-fact contract theory.  SCU moves to dismiss because: (1) the claim is moot because Plaintiffs Abuelhawa and Wynne received a refund for Spring 2020; (2) the refund policy bars the claim; and (3) Plaintiffs fail to plead a breach because they do not allege they were prohibited from parking on campus during Spring 2020.  Mot. at 12-14.  The Court first addresses mootness, and concludes on this record that the claims are not moot.  Because the Court ultimately concludes that Plaintiffs failed to plead a breach of implied-in-fact contract for the parking fees, the Court need not decide whether SCU's refund policy bars the claim.

18

Case No. 20-CV-04045-LHK
ORDER GRANTING MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT WITH PREJUDICE

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

### a.  Plaintiffs' parking claims are not moot.

SCU moves to dismiss for lack of federal court jurisdiction under Federal Rule of Civil Procedure 12(b)(1) because the parking claim is moot.  *See Nance v. Miser*, No. CV 14-00500-PHX-SMM, 2018 WL 10667052, at *3 (D. Ariz. Apr. 3, 2018), *aff'd*, 768 F. App'x 742 (9th Cir. 2019) (explaining that "a mootness defense equates to a lack of subject-matter jurisdiction defense under Federal Rule 12(b)(1)").  SCU argues the parking claim is moot because "Plaintiffs have received what they are requesting: a refund for the fees they paid for parking they 'could not use.'"  Mot at 13.  Plaintiffs disagree.  Opp'n at 5-6 (arguing that Plaintiffs did not obtain "a full refund of parking fees paid.").

To show that Plaintiffs have received a refund for the parking fees and the claim is moot, SCU submits evidence challenging the factual allegations in the SAC that Plaintiffs did not obtain a full refund.  SCU thus brings a factual attack on jurisdiction.  *See Safe Air for Everyone*, 373 F.3d at 1039 (explaining that in a factual attack "the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction.").  "In resolving a factual attack on jurisdiction," the court "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment."  *Id.*  The court "need not presume the truthfulness of the plaintiff's allegations" in deciding a factual attack.  *Id.*  The Court first explains when a claim is moot, then briefly summarizes the parties' relevant allegations and evidence, and finally discusses the parties' legal arguments.

"A case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party."  *Knox v. Serv. Employees Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012) (internal quotation marks omitted).  "As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot."  *Chafin v. Chafin*, 568 U.S. 165, 173 (2013) (internal quotation marks and citations omitted).  "If an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit, at any point during litigation, the action can no longer proceed and must be dismissed as moot."  *Genesis Healthcare*

19

1   *Corp. v. Symczyk*, 569 U.S. 66, 72 (2013) (internal quotation marks omitted).  Put another way, "a

2   claim becomes moot when a plaintiff *actually receives* complete relief on [a] claim."  *Chen v.*

3   *Allstate Ins. Co.*, 819 F.3d 1136, 1138 (9th Cir. 2016) (emphasis added).  Complete relief includes

4   "requested interest, attorney's fees, or costs."  *T.K. v. Adobe Sys. Inc.*, No. 17-CV-04595-LHK,

5   2018 WL 1812200, at *10-12 (N.D. Cal. Apr. 17, 2018) (collecting cases).

6        Plaintiffs' allegations are simple.  In the SAC Plaintiffs allege that: (1) "Plaintiffs

7   Abuelhawa and Wynne paid $400 for a year-long parking pass"; (2) "SCU told Plaintiff

8   Abuelhawa she would receive a $117 refund, and told Plaintiff Wynne she would receive a $120

9   credit"; and (3) Plaintiffs Abuelhawa and Wynne "have not received those credits."  SAC ¶¶ 63,

10  44.  Plaintiffs also seek money damages for the breach of implied-in-fact contract claim, *id.* ¶¶ 64,

11  67 and also "prejudgment interest" and "attorney's fees and expenses and costs of suit," *id.* at 14-

12  15 ("Prayer For Relief").

13       SCU's evidence and explanation of its parking permit refund and credit policy is more

14  complicated.  SCU seeks to show that Plaintiffs Abuelhawa and Wynne obtained a full refund of

15  the parking fees, thus mooting the breach of implied-in-fact contract claim based on the parking

16  permits.  SCU's evidence shows that two types of credits were provided by SCU and the Law

17  School at different times.  The key issue is when these credits were provided to Plaintiffs and

18  whether the credits constituted a full refund.

19       As relevant here, SCU first provided students a credit based on the length of time students

20  held the parking permit, and the type of permit owned (e.g. annual). Mot. at 7.  Based on this

21  formula, Plaintiff Abuelhawa received a $50 credit and Plaintiff Wynne received a $120 credit,

22  and both were notified of their credits on June 11, 2020.  Kenney Decl. ¶ 8.  These credits could

23  be used "toward a future parking permit." Mot. at 7.  These credits would also be refunded to the

24  student upon graduation.  Kenney Decl. ¶ 9.  The Court will refer to these credits as "parking

25  credits."

26       SCU's Law School later provided additional credits to law students because some law

27

28  Case No. 20-CV-04045-LHK
    ORDER GRANTING MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT WITH
    PREJUDICE

United States District Court
Northern District of California

students were unhappy with the amount of parking credit they received from SCU.  ECF No. 58-3 ("Wang Decl.") ¶ 4.  The Court will refer to these credits as "pro-rata credits."  As relevant here, using a different formula than SCU, the Law School determined that law students with annual permits, like Plaintiffs Abuelhawa and Wynne, were entitled to a credit value of up to $117. Wang Decl. ¶ 5-6.  Thus, Plaintiff Abuelhawa received a $67 pro-rata credit on top of the $50 parking credit she already obtained.  *Id.* ¶ 7.  Plaintiff Wynne did not receive a pro-rata credit because her $120 parking credit was more than the Law School's $117 credit value.  *Id.* ¶ 8. Unlike the parking credits, the pro-rata credits were posted to a student's financial account and would be immediately paid to the student upon the student's request.  *Id.* ¶¶ 6-7, 10.  The Law School notified Plaintiff Abuelhawa of her pro-rata credit on April 23, 2021.  *Id.* ¶ 6-7.

To further complicate matters, in early June 2021, SCU's Law School effectively converted all law students' parking credits to pro-rata credits.  ECF No. 61-2 ("Kenney Reply Decl.") ¶ 4.  Plaintiffs Abuelhawa and Wynne received their converted pro-rata credits on June 17, 2021.  ECF No. 61-1 ("Calderone Decl.") ¶ 6-7.  This meant that as of June 17, 2021, Plaintiffs Abuelhawa and Wynn could immediately seek a refund of the full $117 and $120 credit amounts in their financial accounts, rather than wait upon graduation to seek a refund of the parking credits.

To sum up, on June 17, 2021, Plaintiffs Abuelhawa and Wynne each received a $117 and $120 pro-rata credit, respectively, in their financial accounts.  This credit amount would be immediately paid to the student upon the student's request.  The Court now turns to the parties' legal mootness arguments.

SCU's mootness argument fails because the record does not show that Plaintiffs have obtained complete relief.  Here, Plaintiffs seek not just damages for the breach of implied-in-fact contract, SAC ¶ 67, but also at minimum, "prejudgment interest" and "attorney's fees and expenses and costs of suit," *id.* at 14-15 ("Prayer For Relief").  SCU has not "paid the requested interest, attorney's fees, or costs" and thus have not offered Plaintiffs "complete relief." *Adobe Sys. Inc.*, 2018 WL 1812200, at *12.  Plaintiffs' parking claims are therefore not moot based on

1    evidence in the record.

2          SCU's argument to the contrary lacks merit because SCU relies on inapplicable case law.

3    SCU argues that "[w]hen a defendant provides a full refund for a product or service, and the

4    plaintiff is entitled to no other relief, courts dismiss the plaintiff's claims as moot." Mot. at 12.

5    True, but irrelevant. SCU relies on case law where the defendant provided the refund *prior* to

6    plaintiff filing suit. *See, e.g.*, *Lepkowski v. CamelBak Prods., LLC*, No. 19-CV-04598-YGR, 2019

7    WL 6771785, at *2-4 (N.D. Cal. Dec. 12, 2019) (finding plaintiff "was fully compensated . . .

8    prior to the initiation of any lawsuit"). However, the inquiry changes when a refund is provided

9    after the lawsuit is filed. In these circumstances, courts look to the complaint to determine what

10   relief Plaintiff is seeking beyond simply damages. *See, e.g.*, *Adobe Sys. Inc.*, 2018 WL 1812200,

11   at *11 (finding a claim was not mooted in part because plaintiff sought interest, attorney's fees, or

12   costs).

13         Here the record shows that SCU did not provide a full refund of the parking fees until

14   Plaintiffs Abuelhawa and Wynne obtained the converted pro-rata credits on June 17, 2021. Prior

15   to that date, Plaintiffs Abuelhawa and Wynne had $50 and $120 in parking credits that SCU

16   concedes could not be immediately paid to the Plaintiffs. Mot. at 7. Accordingly, the record

17   shows that at best Plaintiffs received a full refund almost two months after Plaintiffs filed the

18   SAC, and at worst a full year after Plaintiffs initially filed their lawsuit. ECF Nos. 53, 1. Either

19   date renders the cases on which SCU relies inapplicable.

20         The Court thus cannot conclude on this record that Plaintiffs' parking claims are moot.

21         **b.  Plaintiffs inadequately plead a breach of implied parking contract
            claim.**

22

23         Although Plaintiffs' parking claims are not moot, the claims are inadequately pled. SCU

24   moves to dismiss because it argues that Plaintiffs "have failed to plead facts indicating that SCU

25   breached its agreement with students by revoking their permission to park on campus." Mot. at

26   14-15. Plaintiffs have no reply and thus implicitly concede this point. Instead, Plaintiffs argue

27   that "[t]his argument defies common sense" because "[t]he only rational reason to buy on-campus

28   Case No. 20-CV-04045-LHK
     ORDER GRANTING MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT WITH
     PREJUDICE

22

United States District Court
Northern District of California

United States District Court
Northern District of California

1    parking is to use it while on the campus" and contend that Plaintiffs "have been deprived of the

2    benefits of the parking contract" because "Plaintiffs and other law students have been singled out

3    from the rest of the student body for continued remote learning."   Opp'n at 7.

4         "In order to state a claim for breach of contract, a plaintiff must plead the existence of a

5    contract, his performance of the contract or excuse for nonperformance, the defendant's breach

6    and resulting damages."  *Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 930 (N.D. Cal. 2012)

7    (citing *Otworth v. Southern Pac. Transp. Co.*, 166 Cal. App. 3d 452, 458 (Ct. App. 1985)).  In

8    addition, "[t]he complaint must identify the specific provision of the contract allegedly breached

9    by the defendant." *Id.* (citing *Progressive West Ins. Co. v. Superior Court*, 135 Cal.App.4th 263,

10   281, 37 Cal.Rptr.3d 434 (2005)).

11        Plaintiffs fail to identify any specific provisions of the contract in the SAC, only alleging

12   that Plaintiffs Abuelhawa and Wynne entered into an implied parking contract with SCU and paid

13   "$400 for a year-long parking pass."  SAC ¶ 63.  SCU includes relevant provisions of the parking

14   contract, which is entitled the Parking & Transportation Plan ("Parking Plan"), with its motion to

15   dismiss.[2]  The Court finds the Parking Plan is incorporated by reference because Plaintiffs'

16   parking claim relies on Plaintiffs' purchase of a parking permit, which is governed by the Parking

17   Plan.  *See Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998) (explaining that the purpose of

18   the incorporation by reference doctrine is to "[p]revent[] plaintiffs from surviving a Rule 12(b)(6)

19   motion by deliberately omitting references to documents upon which their claims are based.").

20        In the Parking Plan SCU explains that "Parking at [SCU] and on lands owned or controlled

21   by the University is regulated by this Parking and Traffic Plan and is enforced through the

22   issuance of parking permits."  RJN No. 5 ("Chapter 2: Parking Permits" heading).  The Plan

23   further explains that "[a]n SCU parking permit is just that; permission to park in designated areas

24   on campus and on University lands."  ECF No. 58-1 at 132.  SCU argues that Plaintiffs failed to

---

[2] The Court granted SCU's unopposed request for judicial notice of this document. *See* Section III, *supra*.

Case No. 20-CV-04045-LHK
ORDER GRANTING MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT WITH
PREJUDICE

1  allege that SCU revoked permission to park on campus, "in contravention of the Parking Plan."

2  Mot. at 14.  SCU points out that allegations that "SCU closed all residence halls, closed campus

3  facilities and cancelled all on-campus events" do not allege that SCU prohibited Plaintiffs from

4  parking on campus.  *Id.*

5          Plaintiffs do not contest this characterization or cite any factual allegation in the SAC

6  showing that SCU prohibited students from parking on campus after classes shifted to remote

7  instruction.  Rather, Plaintiffs argue the "only rational reason to buy on-campus parking is to use it

8  while on the campus."  Opp'n at 7.  Maybe so, but under California law Plaintiffs must plead that

9  SCU breached the parking contract.  Here, Plaintiffs allege in the SAC that "SCU . . . breached an

10  implied contract to provide parking" because "SCU was to provide a year of on-campus parking"

11  and "[a]s a result of closure, SCU did not provide a year of on-campus parking."  SAC ¶ 63.

12  Plaintiffs also allege in the SAC that "[w]hen SCU shut down its campus, it charged students for

13  parking they could not use."  *Id.* ¶ 44.  However, the Plan, which Plaintiffs do not contest governs

14  the contract between Plaintiffs and SCU, does not make such guarantees or promises,  ECF No.

15  58-1 at 132.  *See Herskowitz v. Apple Inc.*, 940 F. Supp. 2d 1131, 1141 (N.D. Cal. 2013) ("Under

16  California contract law, 'if the language [of a contract] is clear and explicit, and does not involve

17  an absurdity,' the language must govern the contract's interpretation.").  The permit merely allows

18  Plaintiffs to park on SCU property.  *Id.*  Plaintiffs have not alleged that SCU prohibited Plaintiffs

19  from parking, or interfered with Plaintiffs' ability to park, on-campus.

20          Lastly, Plaintiffs attempt to save the parking claim by alleging in their opposition to the

21  instant motion to dismiss that SCU violated "the duty of good faith and fair dealing" regarding the

22  parking permit fees.  Opp'n at 7.  But this allegation does not appear in the SAC.  Plaintiffs only

23  plead in the SAC that SCU breached the implied covenant of good faith and fair dealing "by

24  denying SCU law students access to buildings and facilities at SCU's law school."  SAC ¶¶ 7, 62.

25  The SAC makes no mention of parking fees when alleging SCU's breach of the implied covenant.

26  The Court cannot look beyond the pleadings.  *See Schneider v. Cal. Dep't of Corrs.*, 151 F.3d

27

28  Case No. 20-CV-04045-LHK
ORDER GRANTING MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT WITH
PREJUDICE

United States District Court
Northern District of California

1    1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court

2    may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in

3    opposition to a defendant's motion to dismiss.").

4         Accordingly, Plaintiffs fail to state a breach of implied-in-fact contract based on the

5    parking permit fees.

6    **C.  Plaintiffs Fail to Plead a UCL Claim**

7         Plaintiffs allege that SCU violated the "unfair" and "unlawful" prongs of California's

8    Unfair Competition Law ("UCL").  *See* SAC ¶¶ 71-72.  "The UCL prohibits 'unlawful, unfair or

9    fraudulent business act[s] or practices[s].'"  *Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204, 1214 (9th

10   Cir. 2020) (quoting Cal. Bus. & Prof. Code § 17200).  Each adjective, or prong, "captures a

11   separate and distinct theory of liability."  *Id.* (internal quotation marks and citation omitted).  The

12   "unlawful" prong "borrows violations of other laws and treats them as unlawful practices

13   independently actionable."  *Id.* (cleaned up).  The "unfair" prong is more complicated, consisting

14   of three distinct tests: "(1) whether the challenged conduct is tethered to any underlying

15   constitutional, statutory or regulatory provision, or that it threatens an incipient violation of an

16   antitrust law, or violates the policy or spirit of an antitrust law; (2) whether the practice is

17   immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers; or (3)

18   whether the practice's impact on the victim outweighs the reasons, justifications and motives of

19   the alleged wrongdoer."  *Id.* at 1214-15 (cleaned up).

20        Plaintiffs contend SCU violated the "unfair" prong of UCL by "charging students full

21   tuition and fees without providing the on-campus services and facilities SCU was required to

22   provide," SAC ¶ 71, and by "violating Cal. Education Code § 94897(d)," *id.* ¶ 72.  Plaintiffs also

23   allege that SCU violated the UCL "unlawful" prong by "violating Cal. Education Code §

24   94897(d)."  *Id.* ¶ 72.  SCU moves to dismiss the UCL claim because the Court already dismissed

25   this claim previously and because SCU is exempted from California Education Code § 94897(d).

26   Mot. at 19-20.  The Court addresses each UCL prong below.

27

28

United States District Court
Northern District of California

**1. Plaintiffs fail to plead an "unfair" practice.**

Plaintiffs allege a violation of the "unfair" prong of the UCL under two distinct theories: (1) failure to provide in-person instruction, and (2) violation of California Education Code § 94897(d), which requires certain educational entities to disclose if the "educational programs are delivered by means of distance education" in their advertising and promotional materials.  SCU argues the first theory is identical to the one dismissed by the Court in the March 29, 2021 Order and the second theory fails because SCU is exempt from California Education Code § 94897(d).  Mot. at 19-20.  The Court agrees.

In the March 29, 2021 Order, the Court dismissed Plaintiffs' failure to provide in-person instruction theory under the UCL because Plaintiffs failed to allege a specific promise by SCU to provide such instruction.  *Abuelhawa I*, 529 F. Supp. 3d at 1070.  Here, the Court has again found that Plaintiffs inadequately pled a specific promise by SCU to provide in-person instruction.  *See* Section IV-B *supra*.  Accordingly, Plaintiffs once again fail to plead a violation of the UCL under the failure to provide on-campus instruction theory.

Plaintiffs have no response and effectively concede that lack of a specific promise dooms their UCL claim based on the same theory.  Plaintiffs instead contend that a breach of contract claim is sufficient to support a claim under the "unfairness" prong of the UCL.  Opp'n at 12-13 (quoting *In re Facebook PPC Advertising Litig.*, 2010 WL 3341062, at *8 (N.D. Cal. Aug. 25, 2010).  However, Plaintiffs' UCL claim fails here precisely because Plaintiffs have failed to state a breach of implied-in-fact contract claim.  *See* Section IV-B *supra*.

Plaintiff's second theory, premised on a violation of California Education Code § 94897(d), also fails.  Plaintiffs argue that the statute prohibits the behavior that "occurred here."  Opp'n at 12.  Plaintiffs further contend that under the "tethering test" of the UCL "unfair prong" Plaintiffs need not plead any direct violations of the statute.  Opp'n at 11-12.  According to Plaintiffs, they "need merely show that the effects of [defendant]'s conduct are comparable to or the same as a violation of the law, or otherwise significantly threaten or harm competition."  *Id.*

26

1  (quoting *In re Zoom Video Comms. Inc. Privacy Litig.*, 2021 WL 930623, at *23 (N.D. Cal. Mar.

2  11, 2021)).

3       SCU argues that SCU is exempt from the California Private Postsecondary Education Act

4  of 2009, which includes California Education Code § 94897(d), because SCU falls within two

5  exemptions in the Act.  Mot. at 19-20 (noting the Act exempts accredited law schools and

6  accredited post-secondary institutions); RJN Nos. 6-9.  As such, SCU contends that it cannot

7  violate the UCL claim "tethered" to the underlying statute because SCU is exempt from California

8  Education Code § 94897(d).  In their opposition brief, Plaintiffs do not dispute that SCU is exempt

9  from Section 94897(d), and thus concede this point.  Accordingly, for the reasons below,

10  Plaintiffs' theory fails because SCU is exempt from Section 94897(d), the "tethered" statute.

11       The California Court of Appeal's analysis in *Lori Rubinstein Physical Therapy*, *Inc. v.*

12  *PTPN, Inc.*, 148 Cal. App. 4th 1130, 1142 (2007), is instructive.  In *Lori Rubenstein*, like here,

13  plaintiffs alleged that defendant's conduct was "unfair" under the UCL because this conduct

14  violated "the policy or spirit of the" relevant statute.  *Id.*  Thus, the *Lori Rubenstein* plaintiffs, like

15  Plaintiffs here, argued that even if their claim under the relevant statute "fails, they have stated an

16  unfair competition claim because the conduct they allege violates the policy and spirit of" the

17  relevant statute and thus is "unfair" under the UCL.  *Id.*  The *Lori Rubenstein* Court rejected this

18  argument.  *Id.*  The *Lori Rubenstein* Court explained that the Legislature may "limit the judiciary's

19  power to declare conduct unfair" under the UCL.  *Id.* at 1142.  Specifically, when "the Legislature

20  has permitted certain conduct or considered a situation and concluded no action should lie, courts

21  may not override that determination."  *Id.*  The *Lori Rubenstein* Court explained that the

22  Legislature exempted the alleged conduct from enforcement under the relevant statute.  *Id.*

23  Accordingly, defendants could not be liable under the "general unfair competition law" because

24  defendant's conduct was expressly exempted from the relevant "tethered" statute.  *Id.*

25       So too here.  Plaintiffs allege that SCU violated the "policy or spirit of" California

26  Education Code § 94897(d) and thus have adequately pled that SCU violated the "unfair" prong of

27

28  Case No. 20-CV-04045-LHK
ORDER GRANTING MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT WITH
PREJUDICE

27

United States District Court
Northern District of California

1    the UCL. Opp'n at 11-12.  However, just like in *Lori Rubeinstein*, the California Legislature

2    expressly exempted SCU's conduct from the prohibitions in section 94897(d).  Because SCU, like

3    defendants in *Lori Rubenstein*, is exempt from the prohibited conduct in the "tethered" statute,

4    Plaintiffs cannot show that SCU's conduct was "unfair" under the UCL.  *See Lori Rubenstein*, 148

5    Cal. App. 4th at 1142.

6         Plaintiffs' reliance on *In re Zoom Video Comms. Inc. Privacy Litig.*, 525 F. Supp. 3d 1017

7    (N.D. Cal. 2021), and *In re Adobe Systems, Inc. Privacy Litig.*, 66 F. Supp. 3d 1197 (N.D. Cal.

8    2014), is unpersuasive.  Opp'n at 11-12.  In both cases, this Court explained that "Plaintiffs do not

9    need to plead any direct violations of a statute" to successfully allege a claim under the "unfair"

10   prong of the UCL.  *In re Zoom*, 525 F. Supp. 3d at 1047-48 (quoting *In re Adobe*, 66 F. Supp. 3d

11   at 1227).  However, the Court did not hold in either case that plaintiffs can successfully allege a

12   UCL claim under the "unfair" prong when the defendant is expressly exempt from the "tethered"

13   statute.  Neither the *In re Zoom* defendant, nor the *In re Adobe* defendant, argued it was exempt

14   from the relevant statutes and thus the issue was not before the Court.  Accordingly, these cases

15   are inapposite.

16        Moreover, as published Ninth Circuit precedents have long required, this Court sitting in

17   diversity "must follow the decision of the intermediate appellate courts of the state unless there is

18   convincing evidence that the highest court of the state would decide differently." *Daniel v. Ford

19   Motor Co.*, 806 F.3d 1217, 1222 (9th Cir. 2015) (quoting *In re Schwarzkopf*, 626 F.3d 1032, 1038

20   (9th Cir. 2010)); *accord, e.g., Cmty. Nat. Bank v. Fid. & Deposit Co. of Maryland*, 563 F.2d 1319,

21   1321 n.1 (9th Cir. 1977) (same).  Plaintiffs present no evidence that the California Supreme Court

22   would disagree with the *Lori Rubenstein* Court.

23        Plaintiffs thus fail to state a claim under the "unfair" prong of the UCL.

24        **2.   Plaintiffs fail to plead "unlawful" conduct.**

25        Plaintiffs' claim that SCU violated the "unlawful" prong of the UCL similarly fails.

26   Plaintiffs allege that SCU violated the "unlawful" prong of the UCL because SCU violated

27                                                    28

28   Case No. 20-CV-04045-LHK
     ORDER GRANTING MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT WITH
     PREJUDICE

1   California Education Code § 94897(d).  SCU argues that there can be no violation because SCU is

2   exempt from that statute.  Mot. at 19.  Plaintiffs have no rejoinder and have thus abandoned this

3   claim.  *See Diamond S.J. Enter., Inc. v. City of San Jose*, No. 18-CV-01353-LHK, 2018 WL

4   5619746, at *4 (N.D. Cal. Oct. 29, 2018) ("An opposition brief's failure to address a motion to

5   dismiss' challenges to a claim constitutes abandonment of that claim.").

6          Moreover, SCU is correct on the law.  Because the UCL borrows violations from other

7   laws, the "violation of another law is a predicate for stating a cause of action under the UCL's

8   unlawful prong."  *Berryman v. Merit Property Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1554-55 (Ct.

9   App. 2007).  Here, as discussed above, SCU is exempt from California Education Code §

10  94897(d).  Therefore, there can be no predicate violation under section 94897(d), and without such

11  a violation Plaintiffs fail to plead a cause of action under the "unlawful" prong of the UCL.

12         Perhaps realizing the futility of their section 94897(d) arguments, Plaintiffs pivot and

13  instead argue in their opposition brief that a "breach of an implied contract can support a claim

14  under the unlawful prong of the UCL."  Opp'n at 12.  Even if true, Plaintiffs have inadequately

15  pled breach of implied-in-fact contract.  *See* Section IV-B, *supra*.  With no breach of implied-in-

16  fact contract, Plaintiffs cannot show a violation of the UCL under the "unlawful" prong.

17         Plaintiffs also face two additional hurdles.  First, Plaintiffs already abandoned this exact

18  theory in their opposition to SCU's prior motion to dismiss.  Plaintiffs' first amended complaint

19  alleged that SCU violated the "unlawful" prong of the UCL because SCU breached the implied-in-

20  fact contract, and was liable for conversion and unjust enrichment.  *See* ECF No. 25 ¶ 68.

21  However, Plaintiffs then withdrew Plaintiffs' unlawful prong UCL claim in its opposition to

22  SCU's prior motion to dismiss.  *See* ECF No. 33 at 2 (stating that Plaintiffs "withdraw . . . the

23  "claim under the 'unlawful' prong of the UCL.")

24         Second, and more important, Plaintiffs *have not* alleged in the SAC that SCU violated the

25  "unlawful" prong of the UCL by breaching an implied-in-fact contract.  The Court cannot look to

26  the opposition for new allegations.  *See Schneider*, 151 F.3d 1194 at n.1 ("In determining the

27

28  Case No. 20-CV-04045-LHK
ORDER GRANTING MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT WITH
PREJUDICE

United States District Court
Northern District of California

1    propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's

2    moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.").

3          As such, Plaintiffs inadequately plead a UCL claim.

4    **V.    CONCLUSION**

5          Plaintiffs' three complaints have all alleged the same two claims: (1) SCU breached an

6    implied-in-fact contract; and (2) SCU violated the UCL under the "unfair" and "unlawful" prongs.

7    *See* ECF Nos. 1, 25, 52.  Prior to the Court's March 29, 2021 Order, SCU twice pointed out the

8    deficiencies in Plaintiff's breach of implied-in-fact contract and UCL claims in two separate

9    motions to dismiss.  *See* ECF Nos. 21, 32.  Subsequently, in the March 29, 2021 Order, the Court

10   dismissed Plaintiff's first amended complaint with leave to amend the breach of implied-in-fact

11   contract and UCL claims.  *See Abuelhawa I*, 529 F. Supp. 3d at 1072.  However, the Court warned

12   Plaintiffs that "failure to cure the deficiencies identified in this order or SCU's motion to dismiss

13   will result in dismissal of the deficient claims with prejudice."  *Id.*

14         SCU's third motion to dismiss persuasively points out that the SAC, which is Plaintiffs'

15   third complaint, fails to cure the deficiencies identified in the Court's March 29, 2021 Order.  In

16   the SAC, Plaintiffs made *no* new factual allegations about SCU's specific promises to provide in-

17   person instruction, the only theory Plaintiffs pled in the first amended complaint to support the

18   breach of implied-in-fact contract and UCL claims.  *See* ECF No. 53 (Plaintiffs' redline comparing

19   SAC to prior complaint).  Instead, Plaintiffs' SAC pleads new, unpersuasive theories to support

20   the breach of implied-in-fact contract and UCL claims.  In their opposition to the instant motion to

21   dismiss, Plaintiffs also largely request reconsideration of the March 29, 2021 Order.  Opp'n at 1.

22   However, none of Plaintiffs' new theories cure the deficiencies in the breach of implied-in-fact

23   contract or UCL claims.  Thus far, Plaintiffs have already filed three complaints, and SCU has

24   already filed three motions to dismiss.  Plaintiffs' failure to adequately plead their claims in three

25   attempts shows that further amendment is futile.  *See Carvalho*, 629 F.3d at 892 (courts may deny

26   leave to amend when Plaintiff "repeated[ly] fail[s] to cure deficiencies by amendments previously

27

28

Case No. 20-CV-04045-LHK
ORDER GRANTING MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT WITH
PREJUDICE

United States District Court
Northern District of California

allowed."); *see also Leadsinger*, 512 F.3d at 532 (leave to amend generally shall be denied if further amendment would be futile).  Allowing further amendment would also result in undue delay and prejudice to SCU by making SCU file and litigate a *fourth* motion to dismiss when Plaintiffs effectively failed to allege any new facts in its third complaint, *see* ECF No. 53.  *See Leadsinger*, 512 F.3d at 532 (leave to amend generally shall be denied if allowing further amendment would result undue delay and prejudice to the defendant).

For the foregoing reasons, the Court GRANTS SCU's motion to dismiss Plaintiffs' Second Amended Complaint with prejudice.

**IT IS SO ORDERED.**

Dated: November 29, 2021

_____
LUCY H. KOH
United States District Judge

Case No. 20-CV-04045-LHK
ORDER GRANTING MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT WITH PREJUDICE